FILED

Oct 16  2 14 PM '03

U.S. DISTRICT COURT
NEW HAVEN, CONN.

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MATTHEW MARCARELLI          :      CIVIL NO.  3:01V02210(JGM)
                            :
VS.                         :
                            :
CITY OF NEW HAVEN AND       :
SHERYL BROADNAX             :      OCTOBER 15, 2003

## MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, as amended; the undersigned moves this Honorable

Court dismiss the plaintiff's claims against the undersigned

contained in Count Two of the plaintiff's Second Amended

Complaint dated September 17, 2003 for their failure to state a

claim for retaliation for exercise of First Amendment rights as

the alleged speech at issue did not touch upon matters of

legitimate public concern and also that the claims of adverse

employment actions in this case are insufficient to rise to the


**ORAL ARGUMENT IS REQUESTED / TESTIMONY IS NOT REQUIRED**

necessary retaliation standard.  In addition, if this Honorable

Court dismisses the Federal claims it should decline to

exercise supplemental jurisdiction over the remaining State

claims.

The undersigned submits the following documentary proof

outside of the pleadings in support of the motion as follows:

I.    Pertinent pages of the Honorable Janet Bond Arterton,

U.S.D.J.'s ruling on the undersigned's summary judgment

(consisting of eight (8) pages);

II.   Pertinent pages of the plaintiff's responses to the

undersigned's discovery request complied with under oath on May

9, 2003 (consisting of twenty-five (25) pages).

A Memorandum of Law is also appended and made a part

hereof as though fully set forth herein.

WHEREFORE, all of the aforesaid reasons the undersigned

moves this Honorable Court dismiss the claim against the

undersigned.

RESPECTFULLY SUBMITTED ON BEHALF OF
THE DEFENDANT,
SHERYL BROADNAX


BY _____
RENE GERARD MARTINEAU
DEL SOLE & DEL SOLE, L.L.P.
46 SOUTH WHITTLESEY AVENUE
WALLINGFORD, CT 06492
(203) 284-8000
FEDERAL BAR NO. ct07680

1  UNITED STATES DISTRICT COURT

2  DISTRICT OF CONNECTICUT

3  *    *    *    *    *    *    *

4  MATTHEW MARCARELLI              *

5                                  * Case No 01CV2210 (JBA)

6          VS.                     *

7  CITY OF NEW HAVE, ET AL    * MAY 9, 2003

8  *    *    *    *    *    *    *    *

9

10  TRANSCRIPT OF STATUS CONFERENCE & RULING ON

11  SUMMARY JUDGMENT MOTION

12

13  B E F O R E:

14         THE HON. JANET BOND ARTERTON, U.S.D.J.

15  APPEARANCES:

16      FOR THE PLAINTIFF:
        R. EDWARD PHILLIPS, ESQ.
17      One Union Plaza
        New London, Ct.  06510
18
        FOR THE DEFENDANT SHERYL BROADNAX:
19      DEL SOLE & DEL SOLE
        46 S. Whittlesey Avenue
20      Wallingford, Ct.
        BY:  RENE MARTINEAU, ESQ.
21
        FOR THE DEFENDANT CITY OF NEW HAVEN:
22      Office of the Corporation Counsel
        165 Church Street
23      New Haven, Ct.
        BY:  MARTIN ECHTER, ESQ.

24

25                      Sharon Montini
                   Official Court Reporter

```
 1                    THE COURT: Good morning, counsel, ladies
 2       and gentlemen.  Please be seated.  I apologize for
 3       the delay, something unexpected had come up.
 4                    All right, this is Marcarelli v. City of
 5       New Haven, 01 cv2210.  May I have your appearances,
 6       please.
 7                    MR. PHILLIPS: Attorney Edward Phillips
 8       for the plaintiff Matthew Marcarelli.
 9                    MR. ECHTER: Martin Echter for the city
10       of New Haven.
11                    MR. MARTINEAU: Rainy Martineau for the
12       defendant Sidney Broadnax.
13                    THE COURT: Tell me how to pronounce your
14       name again.
15                    MR. MARTINEAU: Rene Martineau.
16                    THE COURT: Rene?
17                    MR. MARTINEAU: Like the weather, your
18       Honor.
19                    THE COURT: All right, I have some
20       questions that are preliminary to what we will
21       accomplish today at this calendar call.
22                    Mr. Phillips, with respect to your
23       claim, do I -- is it correct that his hostile work
24       environment on the basis of sex and race is the
25       posting of the photograph and showing the photograph?
```

1    THE COURT: I don't know what you mean by

2  the latest.   I didn't see anything that predated that

3  in your complaint.   .

4    MR. PHILLIPS: That is correct, your

5  Honor.   Mr. Marcarelli would testify to previous

6  incidents that are not related to that December 7th

7  incident, but what he still considered to be a

8  hostile work environment.

9    THE COURT: But in his answer to

10  interrogatories, which is found in the defendant

11  Broadnax's motion for summary judgment, he is asked

12  to describe in complete detail any act of admission

13  -- it should be omission, or commission which you

14  contend the undersigned defendant caused or

15  contributed to the claims of sexual harassment.   I'm

16  assuming, but this is why I'm saying it so you can

17  tell me whether my assumption is correct, that sexual

18  harassment and hostile work environment are the same

19  claim.   Let me ask it differently.   Are there any

20  allegations that are different for sex harassment or

21  hostile work environment?

22    MR. PHILLIPS: Your Honor, I would have

23  to say no.

24    THE COURT: Except that you add race to

25  the hostile work environment.

1                    MR. PHILLIPS: Yes.

2                    THE COURT: But we've discussed that

3     that's the same factual predicate.

4                    MR. PHILLIPS: Yes, your Honor.

5                    THE COURT: And your answer to the

6     interrogatory references the December 7th business.

7                    MR. PHILLIPS: Yes, your Honor.

8                    THE COURT: Of intentionally exposing him

9     to the sexually lewd and racially offensive

10    photograph and derogatory language and the said

11    photograph was later displayed in various fire

12    stations further humiliating the plaintiff, but

13    you've further clarified for me because it's posted

14    with his complaint, that that's what you're claiming

15    is the retaliation.

16                    MR. PHILLIPS: And the filing of the

17    charge of absent without leave, your Honor.

18                    THE COURT: Okay.

19                    MR. PHILLIPS: Yes.

20                    THE COURT: So that it's the December 7

21    -- exposing him and using the derogatory language is

22    what creates the hostile work environment and is the

23    sex harassment.

24                    MR. PHILLIPS: Yes, your Honor.

25                    THE COURT: All right, with that

1  in various firehouses, that may be demonstrative of

2  retaliation for filing his complaint, which can be

3  actionable even if the conduct was, in fact, not

4  sexual or racial harassment, but was considered to be

5  so by the complainant at the time he complained in

6  good faith.

7  　　　　The remainder of Broadnax's motion for

8  summary judgment must be denied.  The motion does not

9  address significant aspects of the complaint,

10 specifically retaliation.  Broadnax's motion for

11 summary judgment attempts to show that the

12 allegations have been limited to the showing of a

13 single photograph, but cites to an interrogatory

14 asking the plaintiff to particularize each incident

15 of sexual harassment.  Plaintiff's complaints of

16 retaliation is, thus, left unaddressed by the motion.

17 　　　　For this reason, the motion for summary

18 judgment is granted in part and denied in part with

19 the Court concluding as a matter of law that Broadnax

20 is entitled to judgment in her favor on Marcarelli's

21 claim of having been sexually harassed and there

22 being a sexually or racially hostile environment.

23 The remainder of the claims of the motion is denied

24 and the plaintiff's claim of retaliation as to

25 Broadnax will proceed.

1  transfer to a lesser position.

2           THE COURT: The only act that I thought

3  you told me about was posting his complaint with the

4  photographs and complaining and filing an AWOL

5  complaint against him.

6           MR. PHILLIPS: But --

7           THE COURT: Is there anything more than

8  that?

9           MR. PHILLIPS: I believe Sheryl Broadnax

10 also claimed or made reference to telephone calls to

11 his supervisors.

12          THE COURT: I thought that was combined

13 with the complaint of AWOL.

14          MR. PHILLIPS: I don't know, your Honor.

15 But with respect to the photograph, your Honor has

16 ruled on the sexual harassment, hostile work

17 environment as it pertains to the photograph.  The

18 actions of December 8th on were not addressed by the

19 city.

20          THE COURT: And that's all the

21 retaliation --

22          MR. PHILLIPS: Yes, your Honor.

23          THE COURT: -- part.  And that's all the

24 First Amendment retaliation part if the substance of

25 his memo is found a matter of public concern.

1  mean, if you don't have any evidence of unequal

2  protection, it seems to me your claim is a

3  retaliation claim that they retaliated against him by

4  not investigating his Title VII complaints, you claim

5  motivated by a desire to handle Ms. Broadnax with kid

6  gloves, and a First Amendment claim that he's

7  speaking out on a matter of public concern and was

8  retaliated for that reason, although I think you've

9  clarified that the First Amendment claim really goes

10  to just Broadnax, though I'm not sure I understood

11  that.

12          MR. ECHTER: Your Honor, may I comment?

13          THE COURT: The distinction I'm trying to

14  draw is a distinction between retaliating by posting

15  the pictures and the complaint, and the AWOL and

16  calling the chief and so forth, and this other claim

17  that seems to be retaliation by not investigating

18  this.  It's the latter one of not investigating that

19  I have some questions about the viability of.

20          But Mr. Echter?

21          MR. ECHTER: This is really not to argue

22  against Mr. Phillips, just to indicate, at least from

23  my perspective, obviously I did not move for summary

24  judgment on any of the claims, and your Honor's

25  ruling today may have muddied the waters a little

1  we do that.  All right, I think that narrows and

2  focuses this claim as much as I can do.  Anything

3  else that you can think of that we could address at

4  this time?

5              MR. ECHTER: Just, if I understand, will

6  jury selection still be on the 9th?

7              THE COURT: No, this will now be her

8  panel and her jury selection.  So, it may be that you

9  need to work that scheduling out with her, and that

10 may be able to accommodate your trial with Judge

11 Eginton quite easily.  I really do dislike imposing

12 on a colleague, so this works out nicely.  And in

13 fact, I would have been happy to have accepted no

14 from him as an answer.

15             All right then, I will then refer this

16 matter to -- transfer this matter to Judge Margolis

17 for trial with direct appeal to the Second Circuit.

18             All right then, thank you very much.

19 Have a pleasant weekend.

20

21 I certify that the foregoing is a correct transcript
   from the record of proceedings in the above-entitled
22 matter.

23                              _____
                                    Date

24

25                              Official Reporter

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT.

MATTHEW MARCARELLI
              Plaintiff

V.

CITY OF NEW HAVEN AND
SHERYL BROADNAX
              Defendants

:
:
:
:
:
:
:
.

CASE NUMBER
3:01CV02210(JBA)



MARCH 21, 2002

PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO PLAINTIFF MATTHEW MARCARELLI

The undersigned defendant incorporates by reference the

definitions and rules instructions for discovery requests set

forth in Rule 39 of the Local Rules of Civil Procedure as well

as Local Rule 9(d) with respect to claims of privilege and immunity. In

addition, the undersigned defendant incorporates the following Definitions

and Instructions:

A.    DEFINITIONS

    1.    Governmental Agency - When used in these Interrogatories, the
term "Governmental Agency" shall mean any local, state or federal agency or
organization whatsoever, or anyone acting on their behalf, including
without limitation fire department, police department, fire marshal,
Consumer Product Safety Commission or similar local or state agency.

attorney, insurance company, investigator, independent adjusting company, or other person or entity.

B.    **INSTRUCTIONS**

1.    In the event you object to any Interrogatory in whole or in part, state in complete detail in your response the nature of your objection, and comply with any part of the request to which you do not object.

2.    These Interrogatories require you to provide information within your knowledge, and the knowledge of anyone over whom you have control, including, without limitation any officer, agent, servant, employee, attorney, insurance company, investigator or independent adjusting company.

3.    These interrogatories are continuing in character so as to require you to promptly supplement your response if you obtain further  or different information after filing your response, in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## INTERROGATORIES

1.    Describe in complete detail any act of omission or commission by which you contend the undersigned defendant caused or contributed to the claims of sexual harassment.

ANSWER:  *On or about December 7, 1998, the individual defendant, Sheryl Broadnax, acting under color of state law and within the scope of her employment for the defendant City as Drillmaster at the New Haven Fire Training Academy, created a hostile work environment wherein the plaintiff was sexually harassed by virtue of intentionally exposing him to a sexually lewd and racially offensive photograph and derogatory language.  The said photograph was later displayed in various fire stations further humiliating the plaintiff.*
     *On or about December 7 and 8, 1998, the defendant, Sheryl Broadnax, acted under color of law, deprived the plaintiff of his rights to enforce contractual employment relationship, between the plaintiff and the City of New Haven, in violation of 42 U.S.C. §1981(b) when the defendant retaliated and failed to investigate, take corrective action or otherwise  remedy sexual harassment and/or a hostile work environment.  On or about December 7 and 8, 1998, the individual defendant, Sheryl Broadnax, intentionally discriminated and/or undertook adverse employment actions against the plaintiff, Matthew Marcarelli, based upon the plaintiff's race.*

2.    Describe in complete detail any act of omission or commission by which you contend the undersigned defendant caused or contributed to the hostile work environment and adverse employment action claimed by the plaintiff.

**ANSWER:**  *See my response to Interrogatory # 1.*

3.    Describe in complete detail any act or omission or commission by which you contend that the undersigned defendant knew or should have known that information was false or misleading suggesting or supporting the contention that the plaintiff was absent without leave from his job at the New Haven Fire Training Academy including the dates such information was known or should have been known.

**ANSWER:**  *On December 9, 1998 at approximately 8:10 a.m., Lt. Broadnax called Chief Daniels at Fire headquarters inquiring as to Lt. Marcarelli's whereabouts.  The plaintiff who was assigned to the telephone at Fire Headquarters by Assistant Wright, answered the call and advised Lt. Broadnax that Chief Daniels was not in.  The call was then transferred to Assistant Wright for explanation regarding Lt. Marcarelli's transfer.*

## II.    Request for Production of Documents

1.    Any documents identified in, or responsive to, your Answers to Interrogatories propounded by the defendants. **See attached copies of the plaintiff's complaint.**

2.    Any insurance policy which may provide coverage for any losses arising from the Incident, including without limitation any declarations page, attachments, endorsements, amendments or other attachments, whether or not in effect at the time of the Incident. **Not applicable.**

3.    Your federal and state tax returns for the five years prior to the Incident and for each year since the Incident. (Authorization attached.) **Tax returns have been requested and will be disclosed upon receipt.**

4.    If you claim to be entitled to lost income or have suffered other detrimental effects of any kind on your employment due to the alleged Incident, any documents that you contend substantiate your claim for lost income or your suffering of other detrimental effects of any kind on your employment, including any documents indicating your past and present employment status, the type and nature of each such employment, your rate of pay at any other employment, and the total amount of income you claim as lost as a result of the Incident, any disciplinary action or change in employment status you may have incurred. (Authorization attached.) **See response to #3.**

5.    Any document (including without limitation any original recording) that contains any statement relative to any of the issues contained in this case, or that relates to any facts surrounding the Incident. **Objection: this request is vague, overbroad and unduly burdensome. The plaintiff will comply and disclose any such document when it comes into his possession and control.**

6.    Any document concerning, involving or in any way related to the investigation by any Governmental Agency or other person of this Incident. **Objection: this request is vague, overbroad and unduly burdensome. The plaintiff is currently awaiting production of these documents from the defendants; therefore, the plaintiff will comply and disclose any such document when it comes into his possession and control.**

7.    Any document prepared by, for, or at the direction of, any person you expect to call as an expert witness at trial or any hearing in this matter, that concerns, involves or in any way relates to the undersigned defendants or the Incident, whether or not prepared in connection with this matter. **Not applicable.**

8.    The curriculum vitae, resume or other summary of the qualifications of any person you expect to call as an expert witness at trial or any hearing in this matter, including without limitation, a list of all publications authored or co-authored by the witness, the amount of and basis for the compensation of the witness, and a list of cases (described by name of case, jurisdiction, case number, and date of testimony) in which the witness has testified over the last 10 years. **Not applicable.**

**DEL SOLE & DEL SOLE, LLP - ATTORNEYS AT LAW**
46 SOUTH WHITTLESEY AVE - P.O. BOX 310 . WALLINGFORD. CT 06492-0310 - JURIS NO. 101674 - (203) 785-8500

9.    Any documents that have been provided to or examined by, or that in any way were relied upon or form the basis for the opinions of, any person you expect to call as an expert witness at trial or hearing in this matter. **Not applicable.**

10.    Copies of any written, signed, or recorded statements or reports concerning any facts relating to the alleged Incident. **See attached affidavit.**

11. Any document concerning, involving or in any way related to any other demands, claims or lawsuits (including without limitation any claim for Workers' Compensation or Social Security benefits, or a claim against any life, health, accident, homeowners, or disability policy) asserted, made or pursued by you for personal injury related to this Incident. **Objection: the information sought is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence in support of: (a)The plaintiff's claims against the defendants, or (b) the defendants defenses.**

12. Any document concerning, involving or in any way related to any other demands, claims or lawsuits (including without limitation any claim for Workers' Compensation or Social Security benefits, or a claim against any life, health, accident, homeowners, or disability policy) asserted, made or pursued by you for personal injury unrelated to this Incident. **Objection: the information sought is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence in support of: (a)The plaintiff's claims against the defendants, or (b) the defendants defenses.**

13.    Any document concerning, involving or in any way related to any personal injury you claim arises from the Incident, including without limitation, any medical record or other document concerning, involving or in any way relating to the injury, treatment for the injury, hospitalization for the injury, reimbursement for any expenses arising from the injury, the present status of the injury, and the permanency of the injury. (Authorization attached.) **The plaintiff will disclose such when it comes into his possession and control.**

14.    Authorization to Del Sole & Del Sole, L.L.P., or its representative, executed by you in a form acceptable to the custodian, permitting the opportunity to inspect and copy records pertaining to psychiatric, psychological and/or counseling visits, treatments and/or examinations. (Authorization attached.) **The plaintiff will disclose such when it comes into his possession and control.**

15.    Any document concerning, involving or in any way related to your medical history other than for any personal injury you claim arises from the Incident, including without limitation any medical record or other document concerning, involving or in any way relating to any illness, injury, hospitalization, treatment by any health care provider, or reimbursement for any expenses related to your medical history. **Objection: the information sought is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence in support of: (a)The plaintiff's claims against the defendants, or (b) the defendants defenses.**

**DEL SOLE & DEL SOLE, LLP ● ATTORNEYS AT LAW**
**46 SOUTH WHITTLESEY AVENUE - P.O. BOX 310 - WALLINGFORD, CT 06492-0310 - JURIS NO. 101674 - (203) 785-8500**

New Haven Fire
Department Division
Of Training

# Memo

**To:**      Director of Training, Captain William Seward

**From:**  Matthew Marcarelli, Assistant Drillmaster

**CC:**      Local 825, EEOC, Chief Daniels, Howard Lawerence

**Date:**   December 7, 1998

**Re:**      Hostile Work Environment

_____

On the above date, I was subjected to an experience in which I feel was extremely humiliating. At approximately 11:00 hours, I other training division staff and the recruit class were working under the supervision of Drillmaster Lt. Broadnax. Our task was to place the net into position on the side of the tower.

Once completed with the framing, tools that were borrowed from shop personnel needed to be returned. I gathered the tools and proceeded to the shop. As I walked to the shop, I passed Drillmaster Lt. Broadnax who was talking with Firefighter Freeman Troche. As I passed Firefighter Troche He pulled an 8 ½ x 11 inch Xerox PhotoCopy from his pocket this picture was in view of both Drillmaster Lt. Broadnax and me. The picture showed an obese, naked white woman on her hands and knees. At this point Firefighter Troche said, "Remember when you looked like this". At this point both Drillmaster Lt. Broadnax and Firefighter Troche laughed. I said "I don't want to look at that, It's inappropriate". At this point, I walked away.

Because of this I was hurt and humiliated. I suffered humiliation of a sexual nature by a peer and a superior that did nothing about it. Further, I feel that the presentation of this picture under this or any other circumstances was an insult to my racial background, and in the aforementioned context questioned my sexuality. It also placed me in an unfair position because this occurred in the presence of my immediate supervisor.

I formally request a meeting to discuss this matter with the Chief of the Department, EEOC, Corporation Counsel and Local 825 at the earliest convenience.

● Page 1

rec'd  12:00p  12/7/98

Exhibit N

**New Haven Fire
Training Academy**

# Memo

**To:**    Captain William Seward, Director of Training

**From:**  Matthew Marcarelli, Assistant Drillmaster

**CC:**    Local 825

**Date:**  12/08/98

**Re:**    Hostile Work Environment

---

It is with much thought that I must ask for an alternate assignment pending the outcome of investigations stemming from the events that occurred 12/2/98 at approximately 11:00 hours.

I feel threatened by my immediate supervisor and because of Lt. Broadax's actions I can no longer work under these hostile conditions.

I am aware that I am the only fire academy staff other than yourself with formal training and certification as a Fire Officer and Fire Service Instructor. I feel a tremendous amount of guilt, because I feel a great injustice will be done to the current recruit class. Given comments made to me by the recruits it is obvious they appreciate and clearly understand the material that I have instructed. This injustice however does not outweigh the concern I have for my personal safety.

I am in no way resigning or forfeiting my current position or civil service title of Assistant Drillmaster.

Please forward this request through your normal chain of command.

Exhibit 7

1843 Middletown Avenue
Northford, Connecticut, 06472

December 9, 1998

Chief Dennis Daniels
City of New Haven
Department of Fire Service
P.O.Box 374
New Haven, CT 06502

cc:Local 825

Dear Sir :

In concert with the Department's General Order # 70 reissued on November 25, 1997, and The City of New Haven's Executive Order March 8, 1983 I am formally requesting in writing my rights to file complaints with state and federal agencies regarding hostile working conditions created by sexual harassment that occurred on December 12, 1998 at approximately 11:00 hours at the training grounds.

I request this information to file complaints with these agencies because of these actions. This occurred on December 7, 1998.

Respectfully Submitted,




Matthew Marcarelli

Assistant Drillmaster


Certified Mail
Return Receipt Requested

Exhibit 8

### NEW HAVEN FIREFIGHTERS LOCAL 825 I.A.F.F.

#### OFFICIAL GRIEVANCE FORM

LOCAL NO. _825_                                    DATE SUBMITTED:  Step 1._____
                                                                          2._____
Municipality _New Haven_                                                  3._____
                                                                          4._____
Local grievance no. _825 - 98 - 25_                                       5._____

Grievant _Matthew Margarilli_          Class action ___✓___

Title _Asst Drillmaster_               Immediate supervisor _Lt Broadnax_


**I authorize NHFF Local 825 as my representative to act for me in the processing of this grievance.**

Date _12/28/98_ Signature of Employee _Matt J. Marc. oll._

Signature of Union Rep. _Kevin McNerny_          Title _PRes._

#### AT EACH STEP MAKE 3 COPIES OF GRIEVANCE
#### 1 TO UNION FILE - 1 TO MANAGEMENT - 1 WORKING COPY

#### STATEMENT OF GRIEVANCE:

**ARTICLES AND SECTIONS of the contract which have been violated:**

_6.1 (Conditions of Employment)_

#### But not limited thereto.

**GRIEVANCE: State the facts (include date/s.) who, when, where, what:**

_Due to an incident which occurred 12/7/98 at the training division between me, Lt Broadnax & Freeman Troche and subsequent request for investigation of incident and the apparent conclusion of this investigation on 12/24/98 continues to place me in a hostile working environment which is a change in working conditions._

**REMEDY:** _Written copy of Corp Counsel investigative report, Fire Chief investigative report & conclusion, written explanation of how my letters were publicly circulated & assurances in writing that this harrasment will stop and there will be no further repercussions._          **and to be MADE WHOLE**

**Matthew Marcarelli**

---

# Memo

---

## Regarding the matter of Lt. Broadnax and Matthew Marcarelli.

On December 9, 1998, Chief Daniels ordered me back to a hostile environment.

Chief Daniels stated that more than one complaint would be required to obtain a formal investigation.

At 08:10 hours I answered the phone as assigned by Assistant Chief Wright. It was Lt. Broadnax asking to speak to Chief Daniels, I advised her that Chief Daniels was not in and put her through to Assistant Wright. Per Assistant Chief Wright she was inquiring about mt whereabouts and under who's authority I was working at Fire Headquarters. She also stated that if I did not want to work at the school I should be immeadiately replaced.

On the advice of Local 825 President Kevin McNerney and Secretary Vincent Landisio, I contacted Phyllis Hardin, Equal Opportunity and Affirmative Action Officer for the Connecticut State Police. Ph # 1-860-685-8010. She stated that under no circumstances was I to be returned to the hostile environment. This conversation occurred at 10:25 hours.

On the same date at 10:35 hours Dan Hunsburger of the UPFFA executive board and Attorney, was contacted by Kevin McNerney.Mr. Hunsburger stated that in no way was I to be returned to this environment and since further complaints were filed against Lt. Broadnax it constituted a second offense.

Chief Daniels returned from the mayor's office at approximately 11:00 hours. Chief Daniels was advised by Kevin McNerney and Secretary Landisio about the conversations that occurred between myself and the individuals named above. Shortly thereafter Chief Daniels and Local 825 officers McNerney and Landisio had a private meeting. Upon the meetings end Chief Daniels asked me for the phone number of CHRO. I stated, "Chief, You are the one who is supposed to provide me with this number", I added, "If the Affirmative Action Officer at City Hall will not provide you with this number, I suggest you document it because it may be a violation of law." I also reffered him to his official department memo dated 11/25/97 restating the 3/8/83 Executive Order on Sexual Harrassment. Chief Daniels aknowledged this.

Chief Daniels convened to his office and after a brief period advised Assistant Drillmaster Colon he would be conducting a meeting with Lt. Broadnax at 14:00 hours. He stated that Lt. Broadnax will not

---

EXHIBIT 9B

be at the Training Academy and that we would report there to continue Recruit Training in the morning of 12/10/98.

At 14:20 hours I was contacted by an Investigator from Corporation Counsel he asked me to attend a meeting on 12/10/98 at 11:30 hours. I stated that I could not attend this meeting without legal counsel or union representation. He stated that he had spoken to President McNerney regarding my complaint and that he was investigating a similar complaint and that I would want to speak to him.

I arranged for union representation with Kevin McNerney.

At 15:45 hours Captain Seward called Fire Headquarters to advise me that Firefighter Troche had called the Academy looking for me.

Also at 15:45 hours Freeman Troche called Fire Headquarters to speak with me. I did not take the call.

I left the office at 16:00 hours.

12/11/98    0848 CONTACTED BY CAPT SEWARD WHO, STATED HE WAS
CONTACTED BY LT T. HINES @ ENG 9. HE STATED THAT
FF TROCHE WAS CIRCULATING IN? LETTER TO CHIEF, REGARDING
12/7/98, FF TROCHE WAS ALSO CIRCULATING PICTURE REFERRED
TO ON 12/7/98. FF TROCHE WAS STATING THAT I WAS A
BABY AND IF I WAS GOING TO BEHAVE LIKE THIS I
SHOULD'NT BE ON THE JOB.

0856 I CONTACTED LT HINES @ ENG 9 TO CONFIRM THIS HE
STATED YES. HE ALSO STATED THAT HE ADVISED
FF TROCHE TO PUT THE PICTURE AWAY. I ASKED
HIM TO DOCUMENT SAME.

12/24/98 - LT BREADNAY RETURNED TO SCHOOL
12/28/98- filed grievance ē L825
1/4/98- FORMALLY REQUEST corp counsel report

2

# New Haven Fire Training Division

230 Ella T. Grasso Boulevard New Ha___, CT, 06519

December 10, 1998

Chief of Department, Dennis W. Daniels
P.O. BOX 374 New Haven, CT 06502

Dear Sir:

As per your request, I am writing you a detailed letter of the events which lead to my complaint. First, let me add that I am terribly sorry for any inconvenience I might have caused you and the Department. As you are aware, my complaint dealt with hostile working environment.

I must begin by telling you that on the date of November 13, 1998,  newly appointed Drillmaster Lt. Sheryl Broadnax reported to the Training Academy.  As you are aware, there was much anticipation due to the class that was about to begin.  During our first day, Director William Seward III spent much of the day explaining all the policies of the training academy and the curriculum for the recruit class.

On November 20, 1998, we began working outside with the recruits.  I was standing on the rocks in front of the tower when Drillmaster Lt. Broadnax engaged conversation with me.  The conversation was of general nature, but as she made a comment on certain recruits, she tapped me on my shoulder.  At that point I felt uncomfortable and did not know really what to do.  Very discreetly I informed this matter to Director Seward and informed him of what had happen to me and how I felt.

During the course of the next couple of days, I noticed alienation between us.  She started speaking to me in hostile overtones that made me feel very uncomfortable.  Throughout this matter I remained professional with my superior and even offered to stay after hours so we could prepare our lesson plans for the recruit class.  I knew of the importance to continue focused with the task on hand.

December 2, 1998 Director Seward and Assistant Gregory Liggins had to attend a meeting at Sponsor Hospital Office. Before leaving, Director Seward left orders of what he wanted done.  The orders were clear we were to perform ladder evolutions with the recruits rotating in all ladder positions (butt, beam, boss) and in particular we were to assess each member of our respective squads.  Since Assistant Gregory Liggins was not present, we were to blend in his squad with the rest of the group.   After a couple of hours, we were given a break.  During this time, I was sitting with Captain Neville in the kitchen area where I was called to the front to provide Drillmaster Lt. Broadnax with the list that I had kept. I told her that I had to go to the kitchen area to retrieve the list.  It was at that point that she made the comment to me that there was a problem with my attitude.  Again, without any prejudice on my part I found myself wondering what would happen next.  I became visibly upset making it hard for me to concentrate on the assignment given to given to me.  I waited for Director Seward to arrive and I explained to him what had happen and how I felt. I also told him that I could not work under these hostile conditions. He then told me to document the matter and try to work with the situation for the betterment of the department, but if the situation did not improve, he would seek help for me.

During the next couple of days the situation did not improve, I felt she was targeting me.  Her repeated mannerisms and her continued writing on her pad made me feel nervous and paranoid.  I must confess to you Sir that due to my past history against other members of the Department, my biggest fear was to be accused of something I had not done.  I then spoke with Director Seward regarding how I felt. Director Seward informed me that Drillmaster Lt. Broadnax had informed him that she had some problems working with me.  I was very hurt by this.  I then realized that no matter what I did it was never

● Page 2

December 10, 1998

going to be to her liking. Under the circumstances, I informed Director Seward that something had to be done.

To no avail on Monday December 7, 1998, after completing physical training I had asked Director Seward if it would be all right for me to make some copies of study material for the upcoming EMT quiz. Director Seward gave me permission to complete the task. Soon there after Drillmaster Lt. Broadnax came into the room and once again repeatedly told me to get outside. I tried to explain to her what I was doing, but all she kept repeating was we need to go outside to put up the net.

At that point I was too upset to continue the day I explained to Director Seward of my situation and handed in my first memo regarding how I felt. As the day progressed Drillmaster Lt. Broadnax continue with her negative attitude to the point where some of the instructors were noticing the hostile environment we were in. Late that morning I demanded to be temporarily re-assigned. I could no longer work under those conditions.

In closing I must add this situation is very serious, I feel that we should be able to work together in harmony. I have never come to your office regarding any personal matter. I must tell you that I need to bring closure to this matter as it is affecting me both physically and emotionally. I would request at this time a meeting with the necessary parties including, but not limited to, Local 825, lawyer, Director Seward and any other parties you feel must attend. It is my belief that this matter will not stop. Drillmaster LT. Broadnax will continue to treat me in a hostile manner. Please enough is enough you have the power in your hand to make this right lets get it done and go on with the task on hand. I deserve better than this I have been persecuted enough on this job.

Sincerely,

Abraham Colon
Assistant Drillmaster

CC:  Local 825

     Director Seward

RECEIVED
STATE OF CONNECTICUT
MAR 2 4 1999
COMMISSION ON HUMAN RIGHTS
& OPPORTUNITIES
WEST CENTRAL REGION

## AFFIDAVIT

The undersigned, being duly sworn, hereby deposes and states the following:

1.    My name is Matthew Marcarelli and I am employed by the New Haven Department of Fire Service as an Assistant Drillmaster at the New Haven Fire Training Academy located at 230 Boulevard, New Haven, Connecticut;

2.    I have held this position since June 17, 1998. Prior to that date, I was employed by the New Haven Department of Fire Service as a Firefighter. The respondent is the City of New Haven, a municipal corporation organized and existing under the laws of the State of Connecticut, located at 165 Church Street, New Haven, Connecticut, acting by and through its employee Sheryl Broadnax, the Drillmaster at the New Haven Fire Training Academy, and my immediate supervisor on a daily basis from November 13, 1998 to the present;

4.    The respondent employs more than 20 persons;

5.    The respective rsponsibilities of a Drillmaster and an Assistant Drillmaster are set out in "Administrative and Operational Procedures" of the New Haven Department of Fire Service (p.2), (Attached hereto as Exhibit 1). However, in this regard, it is to be noted that the Drillmaster is the second (2nd) highest ranking positon at the Academy;

6.    I am 28 years old and a Caucasian male;

7.    Drillmaster Sheryl Broadnax is an African-American female of unknown age who has filed numerous grievances/lawsuit complaints against the respondent alleging race discrimination;

8.    From November 13, 1998, to the present, the respondent City of New Haven, acting by and through Drillmaster Sheryl Broadnax has, through her

actions, discriminated against me on the basis of my gender and race, thereby creating a hostile work environment for me at the New Haven Fire Training Academy as reflected in the following specific occurrences:

(a)    By virtue of a memo dated December 7, 1998, Drillmaster Broadnax filed a false complaint against me with Dennis Daniels, the Chief of the Department alleging that I was absent without leave (AWOL) from the Academy. (Exhibit 2). In actuality, I was working on a project at the specific behest of Assistant Chief, Michael Grant, the immediate supervisor of all Training Academy staff, including Drillmaster Broadnax.   I was, due to the filing of this false complaint, forced to defend my actions to the Chief of the Department. (Exhibit 3);

(b)    The above complaint was filed by Drillmaster Broadnax with the Chief on December 7, 1998, the same day that I was sexually harassed by her on the grounds of the Fire Academy in the course of the work day.  More particularly, in the presence of Drillmaster Broadnax, I was shown an 8 1/2 x 11 inch  Xerox photocopy of an obese naked white woman on her hands and knees by Firefighter Freeman Troche who said:  "Remember when you looked like this."  Both Drillmaster Broadnax and Firefighter Troche then laughed. Drillmaster Broadnax in no way reprimanded Firefighter Troche or took any other steps which would have indicated any disapproval on her part of these actions. (Exhibit 4).  Rather, this incident occurred and was condoned, if not encouraged by Ms. Broadnax, in spite of the fact that as the Drillmaster at the Academy and my immediate supervisor, she is specifically charged with the responsibility of adhering to the City's Sexual Harassment Policy (Exhibits 5A & 5B);

(c)    The December 7, 1998 sexual harassment incident was witnessed by Lt. Charles Hewitt, an African-American male;  (Exhibit 6)

( g )    On December 12, 1998, I learned from Lt. Thomas Hines of New Haven Engine Company 9 that the aforementioned pornographic picture was being distributed by Firefighter Troche in the firehouses along with my initial complaint to the Chief concerning the December 7, 1998 incident; this in spite of the fact that the only people associated with the respondent with whom I filed the complaint was Fire Chief Dennis Daniels, my Union and counsel for the Fire Department;

(h)    A similar incident occurred in June, 1995 at the Fire Academy in which a Caucasian firefighter trainee was found to have placed a picture of a naked African-American female in the book of an Instructor.  In that incident, he was ultimately disciplined by the Department by way of a one day suspension, five weeks remedial and sensitivity training, and he was not permitted to graduate with his class;

9.    The December 7, 1998 occurrence must be viewed in the context of prior incidents with Ms. Broadnax which in toto created a hostile work environment for me at the New Haven Fire Training Academy;

(a)    More specifically, on or about November 18, 1998, Ms. Broadnax told me that it was "cause [she is] a black female," that she was unable to obtain professional certification in certain areas of firefighting; (Exhibit 11);

(b)    On or about November 22, 1998 Ms. Broadnax mocked me for volunteering to cover her duty watch on a Sunday, finding the same humerous, and stating that, "[she] does not ever want to respond to fires" and that [she] was no spark." (Exhibit 11);  It is to be noted that in the world  of firefighting, "spark" is a derogatory term connoting an overzealous, highly aggressive Firefighter;

(c)    On November 23, 1998, Ms. Broadnax barraged me with a litany of questions designed to test my knowledge of various firefighting standards. (i.e. NFPA 1403, Standard on Live Fire Training. "How many water suppliers are required?  Do you need a designated safety officer?  What type of paperwork is required?")  I would try to answer but in the course of each such response, Ms. Broadnax would interupt me and interject that  "[she] already knew it, as it was on her Civil Service exam."  (Exhibit 11);

(d )    Throughout Ms. Broadnax's tenure at the Academy, she has scripted my every move.  Whenever I would enter the Academy office, or be in her presence at another location on the grounds of the Academy, she would begin documenting what I said and did (Exhibit 11);  For example, it occurred while doing ladder evolutions on 11/30/98 and 12/2/98 with Ms. Broadnax, and on 12/7/98 while setting up the life net under Ms. Broadnax's command.  On those dates, I noted her scripting whenever I was in her presence, or whenever I would say or do anything.  On 12/8/98, in the AM after filing my complaint, I noted Ms. Broadnax staring at me and once again scripting whenever I would speak during a staff meeting.  I got up several times to answer the phone and when I got up, I would note that Ms. Broadnax would write it down, and when I came back, she would write it down.  On 1/22/99 at around 13.00 hours at a staff meeting, Lt. Broadnax was staring at me and when I would speak she would look down at her pad and start writing.  At a staff meeting on 1/27/99, I noted that Lt. Broadnax was scripting as I was speaking.  I again noticed this on 1/28/99 at 15.00 hours at a staff meeting.  At a staff meeting on 2/8/99 at around 15:30 hours, I again observed her staring and scripting.  At a staff meeting on 2/24/99 at around 15:30 hours, I noted Lt. Broadnax scripting, I glanced at the pad and could see that she was indeed writing notes that contained my name.  During all of these occasions there was absolutely nothing occurring that was note worthy.

This behavior continues to this date. I cannot remember a time that I have seen Lt. Broadnax without the pad she scripts. I find this very annoying and intimidating, and I feel it interferes with my work.

(e)     On December 3, 1998, she interrogated me at length about my whereabouts, in spite of the fact that I was complying with a Work Order that had been directly assigned to me by her earlier that day;  (Exhibit 11);

(f )     On December 3, 1998, when I informed Ms. Broadnax that an Academy Recruit who had requested extra help <u>chose</u> the following day for the remedial session, she responded, "Did you ask him or tell him?" (Exhibit 11);

10.     All of the above demonstrate a pattern on the part of Ms. Broadnax, my immediate supervisor, to intimidate me, to harass me, to encourage and condone sexual and race-based discrimination, to leave me wary, if not down right reluctant to deal with her on a day-to-day basis thereby undermining any possible working relationship between us;  Moreover, the repeated outbursts, intimidation and scripting has caused me to fear Ms. Broadnax to a point where I no longer feel comfortable interacting with her in any capacity.  This has promulgated an atmosphere that is not conducive to work.  (Mine is not the only complaint filed with the Department relative to these occurrences.  Assistant Drillmaster Abe Colon has done so as well, also to no avail).  In fact, at this time there no longer is a working relationship.  To this point, I have always received above average evaluations of my work, but under these circumstances, it becomes harder to maintain focus on the task at hand.

11.     All of the above was tolerated, and condoned if not encouraged by the respondent, City of New Haven because in the face of documented incidents of the same, its officers, agents and/or employees failed to take any action at all to solve the behavorial and morale problems at the Academy emanating from Ms. Broadnax's behavior.  In so doing, the respondent failed to both be

knowledgeable and proactive in enforcing its own clearly articulated anti-discrimination policies, any purported "mediation" undertaken by the respondent on December 24, 1998, having been futile.

_Matt J. Marcelli_
Matthew Marcarelli
Affiant

Subscribed and sworn to before me this _22nd_ day of _March_, 1999.

_Patricia DiFrancesco_
Patricia A. DiFrancesco
Commissioner of the Superior Court

# Matthew Marcarelli

1843 Middletown Avenue
Northford, CT 06472

March 23, 1999

Chief Dennis Daniels
P.O. Box 374
New Haven, CT 06502

CC: Attorney Cofrancesco, Captain Seward

Dear Chief Daniels:

Today I returned to the Academy after attending the Fire Department Instructor's Conference in Indianapolis. As you know your office made travel arrangements. Upon our attempt to return to Connecticut on Sunday night, our flight from Indianapolis to Philadelphia was delayed causing Assistant Drillmaster Liggins and I to miss our connecting flight to Tweed New Haven. After learning we would be forced to stay the night I contacted Captain Seward at home to keep him aware of our situation and that we would be unable to attend work on Monday. I do not know the Drillmasters home telephone number, and since I was not booking off, I was unaware of a reason to notify her. Captain Seward would notify her in the A.M.

On my return to work on Tuesday at approximately 8:15 A.M., Drillmaster Broadnax requested a meeting between Captain Seward and me. We convened to a private meeting. At this meeting, Drillmaster Broadnax stated she was concerned about why I did not notify her of my whereabouts on Monday and that I missed a day of work. I stated that I did not miss a day of work and that I was stranded in Philadelphia Airport while returning from a business trip.  She also stated concern regarding why I continually do not notify her when I am not coming to work. This in fact is incorrect, I have written memos on several occasions and left appropriate voicemail messages when I would not be attending work for whatever reason. Drillmaster Broadnax also stated that she was concerned about the personal relationship between Captain Seward and me. She also stated that Greg Liggins notified her that the flight was missed. Were we not on the same flight?  I dispute the validity of this entire complaint. It is false and was brought forth with malice. In an attempt to discredit, my reputation and exemplary work performance record. This latest barrage of intimidation caused me to become physically and emotionally ill to a point where I could no longer remain at work.

Again, I must stress to you that I feel that this interrogation demonstrates the continued pattern of harassment, and intimidation has caused a complete breakdown of a working relationship. It continues to affect the moral of the entire academy and, caused me great physical and emotion distress for which I am now seeking medical attention.

I again beg you to please act so that this continued pattern of harassment and intimidation will stop. Your continued lack of action has caused this hostile atmosphere to escalate to a point where it is now untenable.

Furthermore, I have retained the legal services of Patricia Cofrancesco, and if you have any question regarding this matter, I shall direct you to contact her at her office 387-3334.

Respectfully Submitted,

Matthew Marcarelli

CERTIFIED MAIL

RETURN RECEIPT REQUESTED

# Matthew Marcarelli

1843 Middletown Avenue
Northford, CT 06472

April 30, 1999

Fire Chief Dennis Daniels
City of New Haven
Department of Fire Services
P.O. Box 374
New Haven, CT 06502

**CERTIFIED MAIL -- RETURN RECIEPT REQUESTED**

Dear Chief:

Again, I have been subjected to yet another barrage of intimidation, humiliation and harassment at the hands of Lt. Sheryl Broadnax.

On Monday April 26, 1999, Lt. Broadnax asked what type of driver's license they had and me to provide her with a list of firefighters that I had qualified on apparatus operation. I advised her that I was unaware what type of license these individuals had. She probed and asked "don't you document" I stated that license type is not a critical criteria on whether an individual gets qualified on fire apparatus. I went on to say that Lt. Campion coordinated DMV testing for the proper license. I also advised her that when firefighters are qualified they and their officers are advised that they cannot, under any circumstance drive the apparatus until they get the proper license. I advised her also that when firefighters are qualified on the apparatus the company officer writes a letter to either the Drillmaster or the Director of Training, therefore I do not always see the letters on the individuals I qualified. I advised her that typically this information is kept in the house records, and to contact the officer. She walked away and said, "you call the officer."

On Tuesday April 27, 1999, Lt. Broadnax sent me a memo requesting the same information that she asked me about on Monday, after I thought I made it clear that I did not have this information. I sent her a memo back providing her with the names of the individuals that I qualified after researching the file where the qualification letters are kept. In this memo, I advised her that she might want to check Lt. Campions old files for this information.

On this same day, Lt. Broadnax and the rest of the Academy staff were in a training class. Assistant Chief Grant called and advised me of a pre-fire plan tour of the Whalley Avenue Correction Center at 11:00 hours. I went to the door of the classroom careful not to disturb the entire class and advised Captain Seward of the Pre-Fire Plan. He stated I should attend.

I went to the Pre-Fire Plan and returned to the Academy at 13:10 hours. I again advised Captain Seward that I would now take my lunch. As I exited the building and approached the parking lot, I heard Lt. Broadnax shouting my name, I turned and she angrily asked me if I got her memo. I answered "yes." She then said, " well did you get that information?" I again said that she should probably contact Lt. Campion or check his old files. She then said, "I'm gonna have to asked you to do that." I said, "Okay." She then raised her voice angrily and said, "I thought I told you I wanna know where you are. I come looking for you and I find out your at some tour, and where are you going now?" I advised her "Lunch" and walked away.

I must advise you that, I was well aware the previous Friday, Lt. Braodnax had already asked all company officers to forward qualification status and drivers license information to the Training Division. This information had been arriving via fax. Knowing this, and knowing the order that she gave me was

● Page 2

April 30, 1999

a complete duplication of effort. I followed it anyway, and I was still subjected to her continued pattern of hostility toward me. This latest barrage left me emotionally drained.

Lt. Broadnax repeatedly questions me on my activity at the Training Division. I have also noticed that when Captain Seward is not present Lt. Broadnax becomes even more hostile toward me, and yet she never questions any of the other Academy staff.

I have repeatedly asked your for intervention in this matter and you continue to ignore my pleas for assistance. Your inaction has allowed this situation to escalate. There is a clear pattern of intimidation, harassment, hostility and discrimination here, and I am baffled that a man who claims to have such a dedication to justice, god and diversity chooses to ignore the problem and look the other way.

Respectfully Submitted,


Matthew Marcarelli


CC: WILLIAM SEWARD
      PATRICIA COFRANCESCO

**New Haven Fire
Training Academy**

# Memo

**To:**     Captain William Seward, Director of Training

**From:**   Matthew Marcarelli, Assistant Drillmaster

**CC:**     Local 825

**Date:**   12/08/98

**Re:**     Hostile Work Environment

---

It is with much thought that I must ask for an alternate assignment pending the outcome of investigations stemming from the events that occurred 12/2/98 at approximately 11:00 hours.

I feel threatened by my immediate supervisor and because of Lt. Broadax's actions I can no longer work under these hostile conditions.

I am aware that I am the only fire academy staff other than yourself with formal training and certification as a Fire Officer and Fire Service Instructor. I feel a tremendous amount of guilt, because I feel a great injustice will be done to the current recruit class. Given comments made to me by the recruits it is obvious they appreciate and clearly understand the material that I have instructed. This injustice however does not outweigh the concern I have for my personal safety.

I am in no way resigning or forfeiting my current position or civil service title of Assistant Drillmaster.

Please forward this request through your normal chain of command.

rec'd  0800  12/8/98

● Page 1

**VERIFICATION**

State of Connecticut

County of New Haven

On this day, MATTHEW MARCARELLI, appeared before, the undersigned. After I was administered an oath, I state, upon this oath, that I have read the Answers to Interrogatories and Production Requests and that the facts stated therein are within my personal knowledge and are true and correct.

_____

Sworn and subscribed to before me by MATTHE MARCARELLI on _May 9, 2003_ .

By: _____
R. Edward Phillips, Esquire
One Union Plaza, Second Floor
P.O. Box 116
New London, CT 06320
(860) 444-0437
Fed. Bar #: CT20999

## CERTIFICATION

I hereby certify that a copy of the foregoing has been mailed postage prepaid on this date to the following:

R. Edward Phillips
One Union Plaza, 2nd Floor
New London, CT 06320

Martin S. Echter
Office of the Corporation Counsel
165 Church Street
New Haven, CT 06510

Courtesy copy to:
The Honorable Joan G. Margolis, U. S. Magistrate Judge
United States District Court
District of Connecticut
141 Church Street
New Haven, CT 06510

Rene Gerard Martineau