FILED

Nov 12  3 oʜ PH '03

U. S. DISTRICT COURT
New Haven, Conn.

<u>UNITED STATES DISTRICT COURT</u>
<u>DISTRICT OF CONNECTICUT</u>

MATTHEW MARCARELLI          :      CIVIL NO.  3:01V02210(JGM)
                            :
VS.                         :
                            :
CITY OF NEW HAVEN AND       :
SHERYL BROADNAX             :      NOVEMBER 11, 2003

<u>LOCAL RULE 9(C)(1) STATEMENT</u>

Pursuant to Rule 9(c)(1) of the Local Rules of Civil

Procedure for the District of Connecticut and the Honorable

Joan Glazer Margolis U.S.D.J.'s order issued on October 31,

2003; the undersigned defendant submits herewith her statement

of each material fact as to which the defendant contends there

is no genuine issue to be tried and in support of her motion to

dismiss dated October 15, 2003.

1.    The plaintiff MATTHEW MARCARELLI is a Caucasian male

who resides in the Town of Northford, (Paragraph 6 of Affidavit

labeled Exhibit "A-6" which was provided by the plaintiff to

responses to a request for interrogatories and production dated

March 21, 2002 and which verification of the truthfulness of

**DEL SOLE & DEL SOLE, LLP** • ATTORNEYS AT LAW
46 SOUTH WHITTLESEY AVENUE • WALLINGFORD, CT 06492-4102 • JURIS NO. 101674 • (203) 785-8500

said compliance was issued on May 9, 2003 which said discovery

is appended hereto and labeled Exhibit "A"; also Paragraph 1 of

the plaintiff's original complaint dated November 26, 2001

which was filed with this Honorable Court on December 5, 2001).

   2.    The defendant SHERYL BROADNAX is a female of African

American descent (Paragraph 7 of Affidavit labeled Exhibit "A-

6" which was provided by the plaintiff to responses to a

request for interrogatories and production dated March 21, 2002

and which verification of the truthfulness of said compliance

was issued on May 9, 2003 which said discovery is appended

hereto and labeled Exhibit "A".

   3.    The incident that is alleged to have caused the

speech upon matters of legitimate public concern was the

showing of a photograph of a naked, obese, Caucasian female by

a fellow male employee of the City of New Haven's Fire

Department all in the presence of the undersigned party.

(Response to interrogatory number one (1) of Exhibit "A",

substance of the memo labeled Exhibit "A-1" prepared by the

plaintiff and directed at his supervisor at work, substance of

official grievance form labeled Exhibit "A-3" and Paragraph
8(b) of Affidavit labeled Exhibit "A-6" which Exhibits "A-1, A-
3 and A-6" were produced in response to the plaintiff's
obligations to a request for production which forms a part of
Exhibit "A").

4.    The speech at issue was made solely within the
internal procedures and protocol established for employee
grievance and complaints and not in any public forum.
(Exhibits "A-1, A-2, A-3 and A-5" consisting of memorandum and
correspondence produced in response to a request for production
by the plaintiff and which were directed solely at supervisors
within the employer City of New Haven's Fire Department).

5.    The plaintiff responded under oath to the inquiry of
"Describe in complete detail any act of omission or commission
by which you contend the undersigned defendant (Sheryl
Broadnax) caused or contribute to the hostile work environment
and adverse employment action claimed by the plaintiff" as
follows:

**ANSWER:**    SEE MY RESPONSE TO INTERROGATORY #1.

INTERROGATORY NUMBER 1 stated and was responded to as follows:

     1.    Describe in complete detail any act of omission or commission by which you contend the undersigned defendant caused or contributed to the claims of sexual harassment.

     ANSWER:    On or about December 7, 1998, the individual defendant, Sheryl Broadnax, acting under color of state law and within the scope of her employment for the defendant City as Drillmaster at the New Haven Fire Training Academy, created a hostile work environment wherein the plaintiff was sexually harassed by virtue of intentionally exposing him to a sexually lewd and racially offensive photograph and derogatory language.    The said photograph was later displayed in various fire stations further humiliating the plaintiff.

     On or about December 7 and 8, 1998, the defendant, Sheryl Broadnax, acted under color of law, deprived the plaintiff of his rights to enforce contractual employment relationship, between the plaintiff and the City of New Haven, in violation of 42 U.S.C. §1981(b) when the defendant retaliated and failed to investigate, take corrective action or otherwise remedy sexual harassment and/or a hostile work environment.    On or about December 7 and 8, 1998, the individual defendant, Sheryl Broadnax, intentionally discriminated and/or undertook adverse employment actions against the plaintiff, Matthew Marcarelli, based upon the plaintiff's race.

No supplemental compliance to this interrogatory response has

been provided to date outlining any additional allegation of

retaliation by the undersigned party relative to the speech at

issue and/or disclosing additional dates other than December 7

and 8, 1998.    (See responses to interrogatories #1 and #2 of
Exhibit "A").

6.    The plaintiff concedes that he did not have a good
working relationship with the undersigned defendant even prior
to the speech at issue in the lawsuit.    (Letter labeled Exhibit
"A-5" appended to production compliance forming part of Exhibit
"A").

7.    The plaintiff was not fired, demoted, suspended or in
any way reprimanded for the speech at issue nor did the
plaintiff resign or in any way forfeit his position or civil
service title of Assistant Drillmaster as a result of the
actions of the defendant (Memorandum labeled Exhibit "A-2"
produced in compliance to the plaintiff's obligations for a
request for discovery contained within and titled Exhibit "A").

RESPECTFULLY SUBMITTED ON BEHALF OF
THE DEFENDANT,
SHERYL BROADNAX


BY _____
    RENE GERARD MARTINEAU
    DEL SOLE & DEL SOLE, L.L.P.
    46 SOUTH WHITTLESEY AVENUE
    WALLINGFORD, CT 06492
    (203) 284-8000
    FEDERAL BAR NO. ct07680

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT.

MATTHEW MARCARELLI
        Plaintiff
                             :    CASE NUMBER
                             :    3:01CV02210(JBA)

V.
                             :

CITY OF NEW HAVEN AND
SHERYL BROADNAX
        Defendants
                             :    MARCH 21, 2002

### PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF MATTHEW MARCARELLI

The undersigned defendant incorporates by reference the

definitions and rules instructions for discovery requests set

forth in Rule 39 of the Local Rules of Civil Procedure as well

as Local Rule 9(d) with respect to claims of privilege and immunity. In

addition, the undersigned defendant incorporates the following Definitions

and Instructions:

A.    DEFINITIONS

    1.    Governmental Agency - When used in these Interrogatories, the term "Governmental Agency" shall mean any local, state or federal agency or organization whatsoever, or anyone acting on their behalf, including without limitation fire department, police department, fire marshal, Consumer Product Safety Commission or similar local or state agency.

**DEL SOLE & DEL SOLE, LLP - ATTORNEYS** AT LAW
46 SOUTH WHITTLESEY AVENUE - P.O. BOX 310 - WALLINGFORD, CT 06492-0310 - JURIS NO. 101074 - (203) 78E-8ll00

**EXHIBIT "A"**

attorney, insurance company, investigator, independent adjusting
company, or other person or entity.

B.    INSTRUCTIONS

1.    In the event you object to any Interrogatory in whole or in
part, state in complete detail in your response the nature of your
objection, and comply with any part of the request to which you do not
object.

2.    These Interrogatories require you to provide information within
your knowledge, and the knowledge of anyone over whom you have control,
including, without limitation any officer, agent, servant, employee,
attorney, insurance company, investigator or independent adjusting company.

3.    These interrogatories are continuing in character so as to
require you to promptly supplement your response if you obtain further  or
different information after filing your response, in accordance with Rule
26(e) of the Federal Rules of Civil Procedure.

### INTERROGATORIES

1.    Describe in complete detail any act of omission or
commission by which you contend the undersigned defendant caused or
contributed to the claims of sexual harassment.

ANSWER:  *On or about December 7, 1998, the individual defendant,
Sheryl Broadnax, acting under color of state law and within the
scope of her employment for the defendant City as Drillmaster at the
New Haven Fire Training Academy, created a hostile work environment
wherein the plaintiff was sexually harassed by virtue of
intentionally exposing him to a sexually lewd and racially offensive
photograph and derogatory language.  The said photograph was later
displayed in various fire stations further humiliating the
plaintiff.*
      *On or about December 7 and 8, 1998, the defendant, Sheryl
Broadnax, acted under color of law, deprived the plaintiff of his
rights to enforce contractual employment relationship, between the
plaintiff and the City of New Haven, in violation of 42 U.S.C.
§1981(b) when the defendant retaliated and failed to investigate,
take corrective action or otherwise  remedy sexual harassment and/or
a hostile work environment.  On or about December 7 and 8, 1998, the
individual defendant, Sheryl Broadnax, intentionally discriminated
and/or undertook adverse employment actions against the plaintiff,
Matthew Marcarelli, based upon the plaintiff's race.*

DEL SOLE & DEL SOLE, LLP - ATTORNEYS AT LAW
45 SOUTH WHITTLESEY AVENUE - P.O. BOX 310 - WALLINGFORD, CT 06492-0310 - JURIS NO. 101674 - (203) 765-6300

EXHIBIT "A"

2.    Describe in complete detail any act of omission or commission by which you contend the undersigned defendant caused or contributed to the hostile work environment and adverse employment action claimed by the plaintiff.

**ANSWER:**  *See my response to Interrogatory # 1.*

—

3.    Describe in complete detail any act or omission or commission by which you contend that the undersigned defendant knew or should have known that information was false or misleading suggesting or supporting the contention that the plaintiff was absent without leave from his job at the New Haven Fire Training Academy including the dates such information was known or should have been known.

**ANSWER:**  *On December 9, 1998 at approximately 8:10 a.m., Lt. Broadnax called Chief Daniels at Fire headquarters inquiring as to Lt. Marcarelli's whereabouts.  The plaintiff who was assigned to the telephone at Fire Headquarters by Assistant Wright, answered the call and advised Lt. Broadnax that Chief Daniels was not in.  The call was then transferred to Assistant Wright for explanation regarding Lt. Marcarelli's transfer.*

**DEL SOLE & DEL SOLE, LLP - ATTORNEYS** AT LAW
46 SOUTH WHITTLESEY AVENUE - P.O. BOX 310 - WALLINGFORD, CT 06492-0310 . JURIS NO. 101674 - (203) 788-8300

**EXHIBIT "A"**

## II. Request for Production of Documents

1. Any documents identified in, or responsive to, your Answers to Interrogatories propounded by the defendants. **See attached copies of the plaintiff's complaint.**

2. Any insurance policy which may provide coverage for any losses arising from the Incident, including without limitation any declarations page, attachments, endorsements, amendments or other attachments, whether or not in effect at the time of the Incident. **Not applicable.**

3. Your federal and state tax returns for the five years prior to the Incident and for each year since the Incident. (Authorization attached.) **Tax returns have been requested and will be disclosed upon receipt.**

4. If you claim to be entitled to lost income or have suffered other detrimental effects of any kind on your employment due to the alleged Incident, any documents that you contend substantiate your claim for lost income or your suffering of other detrimental effects of any kind on your employment, including any documents indicating your past and present employment status, the type and nature of each such employment, your rate of pay at any other employment, and the total amount of income you claim as lost as a result of the Incident, any disciplinary action or change in employment status you may have incurred. (Authorization attached.) **See response to #3.**

5. Any document (including without limitation any original recording) that contains any statement relative to any of the issues contained in this case, or that relates to any facts surrounding the Incident. **Objection: this request is vague, overbroad and unduly burdensome. The plaintiff will comply and disclose any such document when it comes into his possession and control.**

6. Any document concerning, involving or in any way related to the investigation by any Governmental Agency or other person of this Incident. **Objection: this request is vague, overbroad and unduly burdensome. The plaintiff is currently awaiting production of these documents from the defendants; therefore, the plaintiff will comply and disclose any such document when it comes into his possession and control.**

7. Any document prepared by, for, or at the direction of, any person you expect to call as an expert witness at trial or any hearing in this matter, that concerns, involves or in any way relates to the undersigned defendants or the Incident, whether or not prepared in connection with this matter. **Not applicable.**

8. The curriculum vitae, resume or other summary of the qualifications of any person you expect to call as an expert witness at trial or any hearing in this matter, including without limitation, a list of all publications authored or co-authored by the witness, the amount of and basis for the compensation of the witness, and a list of cases (described by name of case, jurisdiction, case number, and date of testimony) in which the witness has testified over the last 10 years. **Not applicable.**

**DEL SOLE & DEL SOLE, LLP - ATTORNEYS AT LAW**
46 SOUTH WHITTLESEY AVE - P.O. BOX 310 . WALLINGFORD. CT 06492-0310 - JURIS NO. 101674 - (203) 785-8500

**EXHIBIT "A"**

9.    Any documents that have been provided to or examined by, or that in any way were relied upon or form the basis for the opinions of, any person you expect to call as an expert witness at trial or hearing in this matter. **Not applicable.**

10.    Copies of any written, signed, or recorded statements or reports concerning any facts relating to the alleged Incident. **See attached affidavit.**

11. Any document concerning, involving or in any way related to any other demands, claims or lawsuits (including without limitation any claim for Workers' Compensation or Social Security benefits, or a claim against any life, health, accident, homeowners, or disability policy) asserted, made or pursued by you for personal injury related to this Incident. **Objection: the information sought is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence in support of: (a)The plaintiff's claims against the defendants, or (b) the defendants defenses.**

12. Any document concerning, involving or in any way related to any other demands, claims or lawsuits (including without limitation any claim for Workers' Compensation or Social Security benefits, or a claim against any life, health, accident, homeowners, or disability policy) asserted, made or pursued by you for personal injury unrelated to this Incident. **Objection: the information sought is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence in support of: (a)The plaintiff's claims against the defendants, or (b) the defendants defenses.**

13.    Any document concerning, involving or in any way related to any personal injury you claim arises from the Incident, including without limitation, any medical record or other document concerning, involving or in any way relating to the injury, treatment for the injury, hospitalization for the injury, reimbursement for any expenses arising from the injury, the present status of the injury, and the permanency of the injury. (Authorization attached.) **The plaintiff will disclose such when it comes into his possession and control.**

14.    Authorization to Del Sole & Del Sole, L.L.P., or its representative, executed by you in a form acceptable to the custodian, permitting the opportunity to inspect and copy records pertaining to psychiatric, psychological and/or counseling visits, treatments and/or examinations. (Authorization attached.) **The plaintiff will disclose such when it comes into his possession and control.**

15.    Any document concerning, involving or in any way related to your medical history other than for any personal injury you claim arises from the Incident, including without limitation any medical record or other document concerning, involving or in any way relating to any illness, injury, hospitalization, treatment by any health care provider, or reimbursement for any expenses related to your medical history.  **Objection: the information sought is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence in support of: (a)The plaintiff's claims against the defendants, or (b) the defendants defenses.**

**DEL SOLE & DEL SOLE, LLP ● ATTORNEYS AT LAW**
46 SOUTH WHITTLESEY AVENUE - P.O. BOX 310 - WALLINGFORD, CT 06492-0310 - JURIS NO. 101674 - (203) 785-8500

**EXHIBIT "A"**



# Memo

**To:**    Director of Training, Captain William Seward

**From:**  Matthew Marcarelli, Assistant Drillmaster

**CC:**    Local 825, EEOC, Chief Daniels, Howard Lawerence

**Date:**  December 7, 1998

**Re:**    Hostile Work Environment

---

On the above date, I was subjected to an experience in which I feel was extremely humiliating. At approximately 11:00 hours, I other training division staff and the recruit class were working under the supervision of Drillmaster Lt. Broadnax. Our task was to place the net into position on the side of the tower.

Once completed with the framing, tools that were borrowed from shop personnel needed to be returned. I gathered the tools and proceeded to the shop. As I walked to the shop, I passed Drillmaster Lt. Broadnax who was talking with Firefighter Freeman Troche. As I passed Firefighter Troche He pulled an 8 ½ x 11 inch Xerox PhotoCopy from his pocket this picture was in view of both Drillmaster Lt. Broadnax and me. The picture showed an obese, naked white woman on her hands and knees. At this point Firefighter Troche said, "Remember when you looked like this". At this point both Drillmaster Lt. Broadnax and Firefighter Troche laughed. I said "I don't want to look at that, It's inappropriate". At this point, I walked away.

Because of this I was hurt and humiliated. I suffered humiliation of a sexual nature by a peer and a superior that did nothing about it. Further, I feel that the presentation of this picture under this or any other circumstances was an insult to my racial background, and in the aforementioned context questioned my sexuality. It also placed me in an unfair position because this occurred in the presence of my immediate supervisor.

I formally request a meeting to discuss this matter with the Chief of the Department, EEOC, Corporation Counsel and Local 825 at the earliest convenience.

● Page 1

rec'd  12:00p  12/7/98

EXHIBIT "A-1"

**New Haven Fire Training Academy**

# Memo

| | |
|---|---|
| **To:** | Captain William Seward, Director of Training |
| **From:** | Matthew Marcarelli, Assistant Drillmaster |
| **CC:** | Local 825 |
| **Date:** | 12/08/98 |
| **Re:** | Hostile Work Environment |

It is with much thought that I must ask for an alternate assignment pending the outcome of investigations stemming from the events that occurred 12/2/98 at approximately 11:00 hours.

I feel threatened by my immediate supervisor and because of Lt. Broadax's actions I can no longer work under these hostile conditions.

I am aware that I am the only fire academy staff other than yourself with formal training and certification as a Fire Officer and Fire Service Instructor. I feel a tremendous amount of guilt, because I feel a great injustice will be done to the current recruit class. Given comments made to me by the recruits it is obvious they appreciate and clearly understand the material that I have instructed. This injustice however does not outweigh the concern I have for my personal safety.

I am in no way resigning or forfeiting my current position or civil service title of Assistant Drillmaster.

Please forward this request through your normal chain of command.

● Page 1

EXHIBIT A-2"    Exh.1.T 7

## NEW HAVEN FIREFIGHTERS LOCAL 825 I.A.F.F.

## OFFICIAL GRIEVANCE FORM

LOCAL NO. _825_

Municipality _New Haven_

Local grievance no. _825 - 98 - 25_

Grievant _Matthew Marcarelli_                Class action _✓_

Title _Asst Drillmaster_                Immediate supervisor _Lt Broadnax_

DATE SUBMITTED: Step 1._____
2._____
3._____
4._____
5._____

I authorize NHFF Local 825 as my representative to act for me in the processing of this grievance.

Date _12/23/98_ Signature of Employee _Matt J. Marcarelli_

Signature of Union Rep. _Kevin McNenny_   Title _Pres._

AT EACH STEP MAKE 3 COPIES OF GRIEVANCE
1 TO UNION FILE - 1 TO MANAGEMENT - 1 WORKING COPY

## STATEMENT OF GRIEVANCE:

**ARTICLES AND SECTIONS** of the contract which have been violated:

_6.1 (Conditions of Employment)_

But not limited thereto.

**GRIEVANCE:** State the facts (include date/s.) who, when, where, what:

_Due to an incident which occurred 12/7/98 at the Training Division between me Lt Broadnax & Fireman Trochie and subsequent request for investigation of incident and the apparent conclusion of this investigation on 12/24/98 continues to place me in a hostile working environment which is a change in working conditions._

**REMEDY:** _Written copy of Corp Counsel Investigative Report, Fire Chief Investigative report & conclusion, written explanation of how my letters were publicly circulated & assurances in writing that this harrassment will stop and there will be no further repercussions._ **and to be MADE WHOLE**

EXHIBIT "A-3"

Matthew Marcarelli

---

# Memo

---

## Regarding the matter of Lt. Broadnax and Matthew Marcarelli.

On December 9, 1998, Chief Daniels ordered me back to a hostile environment.

Chief Daniels stated that more than one complaint would be required to obtain a formal investigation.

At 08:10 hours I answered the phone as assigned by Assistant Chief Wright. It was Lt. Broadnax asking to speak to Chief Daniels, I advised her that Chief Daniels was not in and put her through to Assistant Wright. Per Assistant Chief Wright she was inquiring about mt whereabouts and under who's authority I was working at Fire Headquarters. She also stated that if I did not want to work at the school I should be immeadiately replaced.

On the advice of Local 825 President Kevin McNerney and Secretary Vincent Landisio, I contacted Phyllis Hardin, Equal Opportunity and Affirmative Action Officer for the Connecticut State Police. Ph # 1-860-685-8010. She stated that under no circumstances was I to be returned to the hostile environment. This conversation occurred at 10:25 hours.

On the same date at 10:35 hours Dan Hunsburger of the UPFFA executive board and Attorney, was contacted by Kevin McNerney.Mr. Hunsburger stated that in no way was I to be returned to this environment and since further complaints were filed against Lt. Broadnax it constituted a second offense.

Chief Daniels returned from the mayor's office at approximately 11:00 hours. Chief Daniels was advised by Kevin McNerney and Secretary Landisio about the conversations that occurred between myself and the individuals named above. Shortly thereafter Chief Daniels and Local 825 officers McNerney and Landisio had a private meeting. Upon the meetings end Chief Daniels asked me for the phone number of CHRO. I stated, "Chief, You are the one who is supposed to provide me with this number", I added, "If the Affirmative Action Officer at City Hall will not provide you with this number, I suggest you document it because it may be a violation of law." I also reffered him to his official department memo dated 11/25/97 restating the 3/8/83 Executive Order on Sexual Harrassment. Chief Daniels aknowledged this.

Chief Daniels convened to his office and after a brief period advised Assistant Drillmaster Colon he would be conducting a meeting with Lt. Broadnax at 14:00 hours. He stated that Lt. Broadnax will not

---

EXHIBIT 9B

EXHIBIT "A-4"

be at the Training Academy and that we would report there to continue Recruit Training in the morning of 12/10/98.

At 14:20 hours I was contacted by an Investigator from Corporation Counsel he asked me to attend a meeting on 12/10/98 at 11:30 hours. I stated that I could not attend this meeting without legal counsel or union representation. He stated that he had spoken to President McNerney regarding my complaint and that he was investigating a similar complaint and that I would want to speak to him.

I arranged for union representation with Kevin McNerney.

At 15:45 hours Captain Seward called Fire Headquarters to advise me that Firefighter Troche had called the Academy looking for me.

Also at 15:45 hours Freeman Troche called Fire Headquarters to speak with me. I did not take the call.

I left the office at 16:00 hours.

12/10/98    0848 CONTACTED BY CAPT SEWARD WHO, STATED HE WAS CONTACTED BY LT T. HINES @ ENG 9. HE STATED THAT FF TROCHE WAS CIRCULATING MY LETTER TO CHIEF, REGARDING 12/7/98, FF TROCHE WAS ALSO CIRCULATING PICTURE REFERRED TO ON 12/7/98. FF TROCHE WAS STATING THAT I WAS A BABY AND IF I WAS GOING TO BEHAVE LIKE THIS I SHOULD'NT BE ON THE JOB.

0856    I CONTACTED LT HINES @ ENG 9 TO CONFIRM THIS HE STATED YES. HE ALSO STATED THAT HE ADVISED FF TROCHE TO PUT THE PICTURE AWAY. I ASKED HIM TO DOCUMENT SAME.

12/24/98 - LT BROADNAX RETURNED TO SCHOOL
12/28/98- filed grievance c L825
1/4/98- FORMALLY REQUEST corp counsel report

EXHIBIT "A-4"

# New Haven Fire Training Division

230 Ella T. Grasso Boulevard New Haven, CT, 06519

December 10, 1998

Chief of Department, Dennis W. Daniels
P.O. BOX 374 New Haven, CT 06502

Dear Sir:

As per your request, I am writing you a detailed letter of the events which lead to my complaint. First, let me add that I am terribly sorry for any inconvenience I might have caused you and the Department. As you are aware, my complaint dealt with hostile working environment.

I must begin by telling you that on the date of November 13, 1998, newly appointed Drillmaster Lt. Sheryl Broadnax reported to the Training Academy. As you are aware, there was much anticipation due to the class that was about to begin. During our first day, Director William Seward III spent much of the day explaining all the policies of the training academy and the curriculum for the recruit class.

On November 20, 1998, we began working outside with the recruits. I was standing on the rocks in front of the tower when Drillmaster Lt. Broadnax engaged conversation with me. The conversation was of general nature, but as she made a comment on certain recruits, she tapped me on my shoulder. At that point I felt uncomfortable and did not know really what to do. Very discreetly I informed this matter to Director Seward and informed him of what had happen to me and how I felt.

During the course of the next couple of days, I noticed alienation between us. She started speaking to me in hostile overtones that made me feel very uncomfortable. Throughout this matter I remained professional with my superior and even offered to stay after hours so we could prepare our lesson plans for the recruit class. I knew of the importance to continue focused with the task on hand.

December 2, 1998 Director Seward and Assistant Gregory Liggins had to attend a meeting at Sponsor Hospital Office. Before leaving, Director Seward left orders of what he wanted done. The orders were clear we were to perform ladder evolutions with the recruits rotating in all ladder positions (butt, beam, boss) and in particular we were to assess each member of our respective squads. Since Assistant Gregory Liggins was not present, we were to blend in his squad with the rest of the group. After a couple of hours, we were given a break. During this time, I was sitting with Captain Neville in the kitchen area where I was called to the front to provide Drillmaster Lt. Broadnax with the list that I had kept. I told her that I had to go to the kitchen area to retrieve the list. It was at that point that she made the comment to me that there was a problem with my attitude. Again, without any prejudice on my part I found myself wondering what would happen next. I became visibly upset making it hard for me to concentrate on the assignment given to given to me. I waited for Director Seward to arrive and I explained to him what had happen and how I felt. I also told him that I could not work under these hostile conditions. He then told me to document the matter and try to work with the situation for the betterment of the department, but if the situation did not improve, he would seek help for me.

During the next couple of days the situation did not improve, I felt she was targeting me. Her repeated mannerisms and her continued writing on her pad made me feel nervous and paranoid. I must confess to you Sir that due to her past history against other members of the Department, my biggest fear was to be accused of something I had not done. I then spoke with Director Seward regarding how I felt. Director Seward informed me that Drillmaster Lt. Broadnax had informed him that she had some problems working with me. I was very hurt by this. I then realized that no matter what I did it was never

**EXHIBIT "A-5"**

● Page 2

December 10, 1998

going to be to her liking. Under the circumstances, I informed Director Seward that something had to be done.

To no avail on Monday December 7, 1998, after completing physical training I had asked Director Seward if it would be all right for me to make some copies of study material for the upcoming EMT quiz. Director Seward gave me permission to complete the task. Soon there after Drillmaster Lt. Broadnax came into the room and once again repeatedly told me to get outside. I tried to explain to her what I was doing, but all she kept repeating was we need to go outside to put up the net.

At that point I was too upset to continue the day I explained to Director Seward of my situation and handed in my first memo regarding how I felt. As the day progressed Drillmaster Lt. Broadnax continue with her negative attitude to the point where some of the instructors were noticing the hostile environment we were in. Late that morning I demanded to be temporarily re-assigned. I could no longer work under those conditions.

In closing I must add this situation is very serious, I feel that we should be able to work together in harmony. I have never come to your office regarding any personal matter. I must tell you that I need to bring closure to this matter as it is affecting me both physically and emotionally. I would request at this time a meeting with the necessary parties including, but not limited to, Local 825, lawyer, Director Seward and any other parties you feel must attend. It is my belief that this matter will not stop. Drillmaster LT. Broadnax will continue to treat me in a hostile manner. Please enough is enough you have the power in your hand to make this right lets get it done and go on with the task on hand. I deserve better than this I have been persecuted enough on this job.

Sincerely,

Abraham Colon
Assistant Drillmaster

CC: Local 825

Director Seward

**EXHIBIT A-5"**

## AFFIDAVIT

The undersigned, being duly sworn, hereby deposes and states the following:

1.    My name is Matthew Marcarelli and I am employed by the New Haven Department of Fire Service as an Assistant Drillmaster at the New Haven Fire Training Academy located at 230 Boulevard, New Haven, Connecticut;

2.    I have held this position since June 17, 1998.  Prior to that date, I was employed by the New Haven Department of Fire Service as a Firefighter. The respondent is the City of New Haven, a municipal corporation organized and existing under the laws of the State of Connecticut, located at 165 Church Street, New Haven, Connecticut, acting by and through its employee Sheryl Broadnax, the Drillmaster at the New Haven Fire Training Academy, and my immediate supervisor on a daily basis from November 13, 1998 to the present;

4.    The respondent employs more than 20 persons;

5.    The respective rsponsibilities of a Drillmaster and an Assistant Drillmaster are set out in "Administrative and Operational Procedures" of the New Haven Department of Fire Service (p.2), (Attached hereto as Exhibit 1). However, in this regard, it is to be noted that the Drillmaster is the second (2nd) highest ranking positon at the Academy;

6.    I am 28 years old and a Caucasian male;

7.    Drillmaster Sheryl Broadnax is an African-American female of unknown age who has filed numerous grievances/lawsuit complaints against the respondent alleging race discrimination;

8.    From November 13, 1998, to the present, the respondent City of New Haven, acting by and through Drillmaster Sheryl Broadnax has, through her

EXIBIT "A-6"

actions, discriminated against me on the basis of my gender and race, thereby creating a hostile work environment for me at the New Haven Fire Training Academy as reflected in the following specific occurrences:

(a)    By virtue of a memo dated December 7, 1998, Drillmaster Broadnax filed a false complaint against me with Dennis Daniels, the Chief of the Department alleging that I was absent without leave (AWOL) from the Academy. (Exhibit 2). In actuality, I was working on a project at the specific behest of Assistant Chief, Michael Grant, the immediate supervisor of all Training Academy staff, including Drillmaster Broadnax.   I was, due to the filing of this false complaint, forced to defend my actions to the Chief of the Department. (Exhibit 3);

(b)    The above complaint was filed by Drillmaster Broadnax with the Chief on December 7, 1998, the same day that I was sexually harassed by her on the grounds of the Fire Academy in the course of the work day.  More particularly, in the presence of Drillmaster Broadnax, I was shown an 8 1/2 x 11 inch  Xerox photocopy of an obese naked white woman on her hands and knees by Firefighter Freeman Troche who said:  "Remember when you looked like this."  Both Drillmaster Broadnax and Firefighter Troche then laughed. Drillmaster Broadnax in no way reprimanded Firefighter Troche or took any other steps which would have indicated any disapproval on her part of these actions. (Exhibit 4).  Rather, this incident occurred and was condoned, if not encouraged by Ms. Broadnax, in spite of the fact that as the Drillmaster at the Academy and my immediate supervisor, she is specifically charged with the responsibility of adhering to the City's Sexual Harassment Policy (Exhibits 5A & 5B);

(c)    The December 7, 1998 sexual harassment incident was witnessed by Lt. Charles Hewitt, an African-American male;  (Exhibit 6)

**EXHIBIT "A-6"**

(d)    As a result of the December 7, 1998 sexual harassment incident, I requested a transfer out of the New Haven Fire Training Academy (Exhibit 7) until the matter was investigated by the respondent.  Simultaneously, the respondent was inexplicably unable to respond to my initial complaint and subsequent request that the incident be treated in accordance with its own sexual harassment policy;  (Exhibits 8 & 9A & 9B);

(e)    On December 8, 1999, while on modified duty at the Chief's Office, Ms Broadnax made numerous calls to the Chief and Assistant Chief barraging both with questions as to my whereabouts.  "Why was [I] there?  Under whose authority was [I] working?"  She further indicated to Assistant Chief Wright that she was my immediate supervisor and if I was working at the Chief's office without her knowledge, I was AWOL.  She also stated that if I did not want to work for her, then they should fill my job immediately with someone else.

(f)    On December 10, 1998, I was individually interviewed and on December 14, 1998, Captain William Seward, the Head of the New Haven Fire Training Academy, Lt. Charles Hewitt, a witness to the December 7, 1998 incident, Firefighter Freeman Troche, a principal in the incident, and Asst. Drillmaster Abe Colon, gave detailed tape-recorded statements to the respondent through New Haven Public Liability Investigator Richard Bayer of the Office of the Corporation Counsel for the City of New Haven.  (Exhibit 10).  Lt. Hewitt was interviewed a second time regarding the same matter on a later date. Investigator Bayer found no evidence of any wrongdoing on the part of Ms. Broadnax, in part, because "[he] also interviewed the other members of the Training Academy,  none of which actually witnessed this alleged incident." This conclusion was reached and included in Mr. Bayer's findings in spite of the fact that Lt. Chuck Hewitt disclosed to him, as part of the investigation, that he was a witness to the subject occurrence;

**EXHIBIT A-6"**

( g )    On December 12, 1998, I learned from Lt. Thomas Hines of New Haven Engine Company 9 that the aforementioned pornographic picture was being distributed by Firefighter Troche in the firehouses along with my initial complaint to the Chief concerning the December 7, 1998 incident; this in spite of the fact that the only people associated with the respondent with whom I filed the complaint was Fire Chief Dennis Daniels, my Union and counsel for the Fire Department;

(h)    A similar incident occurred in June, 1995 at the Fire Academy in which a Caucasian firefighter trainee was found to have placed a picture of a naked African-American female in the book of an Instructor.  In that incident, he was ultimately disciplined by the Department by way of a one day suspension, five weeks remedial and sensitivity training, and he was not permitted to graduate with his class;

9.    The December 7, 1998 occurrence must be viewed in the context of prior incidents with Ms. Broadnax which in toto created a hostile work environment for me at the New Haven Fire Training Academy;

(a)    More specifically, on or about November 18, 1998, Ms. Broadnax told me that it was "cause [she is] a black female," that she was unable to obtain professional certification in certain areas of firefighting; (Exhibit 11);

(b)    On or about November 22, 1998 Ms. Broadnax mocked me for volunteering to cover her duty watch on a Sunday, finding the same humerous, and stating that, "[she] does not ever want to respond to fires" and that [she] was no spark." (Exhibit 11);  It is to be noted that in the world of firefighting, "spark" is a derogatory term connoting an overzealous, highly aggressive Firefighter;

EXHIBIT "A-6"

(c)    On November 23, 1998, Ms. Broadnax barraged me with a litany of questions designed to test my knowledge of various firefighting standards. (i.e. NFPA 1403, Standard on Live Fire Training. "How many water suppliers are required? Do you need a designated safety officer? What type of paperwork is required?") I would try to answer but in the course of each such response, Ms. Broadnax would interupt me and interject that "[she] already knew it, as it was on her Civil Service exam." (Exhibit 11);

(d )    Throughout Ms. Broadnax's tenure at the Academy, she has scripted my every move. Whenever I would enter the Academy office, or be in her presence at another location on the grounds of the Academy, she would begin documenting what I said and did (Exhibit 11); For example, it occurred while doing ladder evolutions on 11/30/98 and 12/2/98 with Ms. Broadnax, and on 12/7/98 while setting up the life net under Ms. Broadnax's command. On those dates, I noted her scripting whenever I was in her presence, or whenever I would say or do anything. On 12/8/98, in the AM after filing my complaint, I noted Ms. Broadnax staring at me and once again scripting whenever I would speak during a staff meeting. I got up several times to answer the phone and when I got up, I would note that Ms. Broadnax would write it down, and when I came back, she would write it down. On 1/22/99 at around 13.00 hours at a staff meeting, Lt. Broadnax was staring at me and when I would speak she would look down at her pad and start writing. At a staff meeting on 1/27/99, I noted that Lt. Broadnax was scripting as I was speaking. I again noticed this on 1/28/99 at 15.00 hours at a staff meeting. At a staff meeting on 2/8/99 at around 15:30 hours, I again observed her staring and scripting. At a staff meeting on 2/24/99 at around 15:30 hours, I noted Lt. Broadnax scripting, I glanced at the pad and could see that she was indeed writing notes that contained my name. During all of these occasions there was absolutely nothing occurring that was note worthy.

**EXHIBIT "A-6"**

This behavior continues to this date. I cannot remember a time that I have seen Lt. Broadnax without the pad she scripts. I find this very annoying and intimidating, and I feel it interferes with my work.

(e)    On December 3, 1998, she interrogated me at length about my whereabouts, in spite of the fact that I was complying with a Work Order that had been directly assigned to me by her earlier that day; (Exhibit 11);

(f)    On December 3, 1998, when I informed Ms. Broadnax that an Academy Recruit who had requested extra help <u>chose</u> the following day for the remedial session, she responded, "Did you ask him or tell him?" (Exhibit 11);

10.    All of the above demonstrate a pattern on the part of Ms. Broadnax, my immediate supervisor, to intimidate me, to harass me, to encourage and condone sexual and race-based discrimination, to leave me wary, if not down right reluctant to deal with her on a day-to-day basis thereby undermining any possible working relationship between us; Moreover, the repeated outbursts, intimidation and scripting has caused me to fear Ms. Broadnax to a point where I no longer feel comfortable interacting with her in any capacity. This has promulgated an atmosphere that is not conducive to work. (Mine is not the only complaint filed with the Department relative to these occurrences. Assistant Drillmaster Abe Colon has done so as well, also to no avail). In fact, at this time there no longer is a working relationship. To this point, I have always received above average evaluations of my work, but under these circumstances, it becomes harder to maintain focus on the task at hand.

11.    All of the above was tolerated, and condoned if not encouraged by the respondent, City of New Haven because in the face of documented incidents of the same, its officers, agents and/or employees failed to take any action at all to solve the behavorial and morale problems at the Academy emanating from Ms. Broadnax's behavior. In so doing, the respondent failed to both be

**EXHIBIT "A-6"**

knowledgeable and proactive in enforcing its own clearly articulated anti-discrimination policies, any purported "mediation" undertaken by the respondent on December 24, 1998, having been futile.

_Matthew J. Marcarelli_
Matthew Marcarelli
Affiant

Subscribed and sworn to before me this 22nd day of March, 1999.

_Patricia A. Cofrancesco_
Patricia A. Cofrancesco
Commissioner of the Superior Court

EXHIBIT "A-6"

## VERIFICATION

State of Connecticut

County of New Haven

On this day, MATTHEW MARCARELLI, appeared before, the undersigned. After I was administered an oath, I state, upon this oath, that I have read the Answers to Interrogatories and Production Requests and that the facts stated therein are within my personal knowledge and are true and correct.

Sworn and subscribed to before me by MATTHE MARCARELLI on *May 9, 2003*

By:

R. Edward Phillips, Esquire
One Union Plaza, Second Floor
P.O. Box 116
New London, CT 06320
(860) 444-0437
Fed. Bar #: CT20999

**EXHIBIT "A-6"**

## CERTIFICATION

I hereby certify that a copy of the foregoing has been mailed postage prepaid on this date to the following:

R. Edward Phillips
One Union Plaza, 2nd Floor
New London, CT 06320

Martin S. Echter
Office of the Corporation Counsel
165 Church Street
New Haven, CT 06510

Courtesy copy to:
The Honorable Joan G. Margolis, U. S. Magistrate
United States District Court
District of Connecticut
141 Church Street
New Haven, CT 06510

_____
Rene Gerard Martineau