

## OFFICE OF THE MAYOR

BIAGIO DILIETO
MAYOR

CITY OF NEW HAVEN
CONNECTICUT 06510

### EXECUTIVE ORDER

#### MARCH 8, 1983    REISSUED  11/28/97

Sexual harrassment in the workplace is any unwelcome conduct or communication of a sexual nature which affects a person's employment relationship or working environment. It may include, but not be limited to, (1) a pattern of sexual, degrading words or actions ranging from annoyances and distractions to deliberate intimidation and demands; (2) verbal harrassment, e.g. vulgar remarks, derogatory comments; (3) physical harrassment, e.g., gestures, punching, petting, blocking free movement; (4) visual forms of harrassment, e.g., derogatory posters, graffiti, letters; (5) sexual propositions (with or without threats to one's job or promotion if one does not submit).

Sexual harrassment is prohibited by the Federal Civil Rights Act of 1964, as amended in 1972; by the Connecticut Fair Employment Practices Act, which was amended, effective October 1, 1980 to prohibit specifically sexual harrassment; and, by the Code of the City of New Haven Section 12-1/2.

It is the policy of the City of New Haven:

To provide a work atmosphere that is conducive to productivity

To investigate all complaints of sexual harrassment

To discipline any employee found guilty of sexual harrassment

To provide supervisors with training designed to prevent and eliminate sexual harrassment

Any City employee who feels that he or she is a victim of sexual harrassment may contact the Commission on Equal Opportunities. The Affirmative Action Officer in the Personnel Department will also be available to receive complaints. Anyone aggrieved will be informed of his or her rights to file complaints with the state and federal agencies.

Biagio DiLieto, Mayor

B-1

— NEW HAVEN, CONN. —

# OFFICIAL BULLETIN

### GENERAL ORDER #70

May 27, 1989

## TO ALL MEMBERS OF THE DEPARTMENT

The Executive Order promulgated by Biagio DiLieto, Mayor of the City of New Haven, March 8, 1984 is released and is to be brought to the attention of all members of the Department.

Sexual harrassment in the workplace is any unwelcome conduct or communication of a sexual nature which affects a person's employment relationship or working environment. It may include, but not be limited to:

1. A pattern of sexual, degrading words or actions ranging from annoyances and distractions to deliberate intimidation and demands.

2. Verbal harrassment, e.g. vulgar remarks, derogatory comments.

3. Physical harrassment, e.g., gestures, punching, petting, blocking free movement.

4. Visual forms of harrassment, e.g., derogatory posters, graffiti, letters.

5. Sexual propositions (with or without threats to one's job or promotion if one does not submit).

Sexual harrassment is prohibited by the Federal Civil Rights Act of 1964, as amended in 1972, by the Connecticut Fair Employment Practices Act, which was amended, effective October 1, 1980 to prohibit specifically sexual harrassment; and, by the Code of the City of New Haven Section 12-1/2.

It is the policy of the City of New Haven:

To provide a work atmosphere that is conducive to productivity.

To investigate all complaints of sexual harrassment.

To discipline any employee found guilty of sexual harrassment.

To provide supervisors with training designed to prevent and eliminate sexual harrassment.

Any City employee who feels that he or she is a victim of sexual harrassment may contact the Commission on Equal Opportunities. The Affirmative Action Officer in the Personnel Department will also be available to receive complaints. Anyone so aggrieved will be informed of his or her rights to file complaints with the state and federal agencies.

Per Order;

John P. Reardon
Chief of Department

JPR/o





# MEMORANDUM

**OFFICE OF THE FIRE CHIEF**
*CITY OF NEW HAVEN*

**TO:**    ALL MEMBERS OF THE DEPARTMENT

**FROM:**    DENNIS W. DANIELS
ASSISTANT CHIEF

**DATE:**    NOVEMBER 25, 1997

**RE:**    SEXUAL HARASSMENT

---

The attached information will serve as the policy of the City of New Haven and the Department of Fire Service with regard to sexual harassment.

Please note that the original information was distributed as an Executive Order on March 8, 1983 and the policy remains the same.

This policy is to be posted in each station and/or office and <u>all</u> members of the Department are to familiarize themselves with its content.

# *** PLEASE POST ***





AND IS PROHIBITED BY THE CONNECTICUT DISCRIMINATORY EMPLOYMENT PRACTICES ACT ( Sec. 46a-60(a) (8) of the Connecticut General Statutes), TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE CITY OF NEW HAVEN EQUAL OPPORTUNITIES ORDINANCES 12 1/2, ARTICLE I.

## SEXUAL HARASSMENT MEANS

"Any unwelcome sexual advances or requests for sexual favors or any conduct of sexual nature when:

1) Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment;
2) Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or
3) Such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive environment."

## EXAMPLES OF SEXUAL HARASSMENT INCLUDE:

Unwelcome sexual advances, suggestive or lewd remarks, unwanted hugs, touches, kisses, requests for sexual favors, retaliation for complaining about sexual harassment, derogatory or pornographic posters, cartoons, or drawings.

Individuals who engage in acts of Sexual Harassment may also be subject to civil and criminal penalties. Remedies may include: Cease and Desist Orders. Back Pay, Compensatory Damages, Hiring, Promotion or Reinstatement.

If you feel that you have been the victim or sexual harassment, contact:

CITY OF NEW HAVEN
COMMISSION ON EQUAL OPPORTUNITIES
200 ORANGE STREET
NEW HAVEN, CT 06510

(203) 946-8160

Connecticut law requires that a formal written complaint be filed with the Commission within 180 days of the date when the alleged harassment occurred.



# AGREEMENT

# BETWEEN

# CITY OF NEW HAVEN

# AND

# NEW HAVEN FIRE UNION, LOCAL 825
# INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFL-CIO

**JULY 1, 1998 - JUNE 30, 2002**

## ARTICLE IV - BULLETIN BOARDS

4.1    The City shall permit the Union reasonable and exclusive use of at least one of the bulletin boards in each of the respective fire houses for the posting of notices, bulletins, newspapers, etc., concerning Union business and activities.

## ARTICLE V - DISCHARGE AND DISCIPLINE

5.1    No permanent employee shall be removed, dismissed, discharged, suspended, fined, reduced in rank or disciplined in any manner except for just cause.

5.2    In all disciplinary proceedings before the Board of Fire Commissioners the employee or employees and the Union shall be furnished with a written statement of the charges at least ninety-six (96) hours in advance of the scheduled hearing exclusive of Saturdays, Sundays and Holidays together with a brief description of the circumstances which led to the charges.

## ARTICLE VI - GRIEVANCE PROCEDURE

6.1    In the event that any dispute arises between the City and the Union or any employee concerning the interpretation or application of any of the provisions of this Agreement or concerning wages, hours and conditions of employment which are provided for in this Agreement or in any statute, charter provision, ordinance, regulation or policy, or concerning any matter or condition arising out of the employer-employee relationship, such difference or dispute shall be deemed a grievance and shall be settled in accordance with procedures set forth herein:

Step I

The Union shall submit such grievance in writing to the Chief of the Fire Department within ten (10) days of the occurrence or event giving rise to the grievance. Within five (5) days after said Chief or his designated representative receives such grievance he or his designated representative shall arrange to and shall meet with the grievant and representatives of the Union for the purpose of adjusting or resolving such grievance.

Step II

If such grievance is not received to the satisfaction of the Union and the grievant by the Chief or his designated representative within five (5) days after such meeting, the Union may present such grievance in writing within seven (7) days thereafter to the Board of Fire Commissioners. Within seven (7) days after said Fire Board receives such grievance, the Board shall arrange to and shall meet with the representatives of the Union and the grievant for the purpose of adjusting and resolving said grievance.

3

## Step III

If such grievance is not resolved to the satisfaction of the Union and the grievant by the Fire Board within five (5) days after such meeting, the Union may present such grievance in writing within seven (7) days thereafter to the Director of Labor Relations or his designated representative. Within five (5) days after said Director or his designated representative receives such grievance he shall arrange to and shall meet with the grievant and representatives of the Union for the purpose of adjusting or resolving such grievance.

## Step IV

If such grievance is not resolved to the satisfaction of the Union and the grievant by the Director of Labor Relations or his designated representative, within five (5) days after such meeting, the Union may within ten (10) days thereafter submit the dispute to arbitration by the Connecticut State Board of Mediation and Arbitration, provided, however, that by mutual agreement between the Director of Labor Relations or his designated representative and the Union, an arbitrator or arbitrators other than said Board may be selected to arbitrate such dispute.

6.2     Subject to the following, the arbitrators shall have jurisdiction and authority to decide a grievance as defined above and his decision shall be final and binding upon both parties, provided it is not contrary to law.  However, the arbitrator shall have no authority to change, amend, add to, subtract from, or otherwise alter or supplement this Agreement or any part thereof or any amendment thereto.

6.3     The arbitrators may not issue advisory opinions and shall confine himself exclusively to the question which is presented to him.  It is contemplated that the City and the Union may mutually agree in writing as to the statement of the matter to be arbitrated prior to any hearing and if this is done, the arbitrator shall confine his decision to the particular matter which was specified.

6.4     Each party shall bear the expense of its own witnesses and legal counsel.

6.5     In a dispute involving disciplinary action, the Board of the arbitrator(s) so selected shall have the power to uphold the action of the City or to rescind or modify such action and such power shall include, but shall not be limited to, the right to reinstate a suspended or discharged employee with full back pay.

6.6     Nothing contained herein shall prevent any employee from representing his own grievance and representing himself, at Steps I, II and III of the Grievance Procedure.

4

6.7    The time limits specified in the preceding section of this Article shall not include Saturdays, Sundays or Holidays and such time limits may be extended by mutual agreement of the parties in writing.

6.8    If a grievance is not submitted within the prescribed time limits hereinbefore provided, including the provisions for the time limit extensions, it shall be deemed abandoned. If the City fails to meet and/or answer any grievance within the prescribed time limits as hereinbefore provided, including the provisions for the time limit extension, such grievance shall automatically advance to the next step.

## ARTICLE VII - UNION ACTIVITIES

7.1    The four (4) members of the Union Negotiating Committee shall be granted leave from duty, without loss of pay, for all bargaining sessions between the city and the Union for the purpose of negotiating the terms of an agreement. The parties recognize that during bargaining sessions where pensions are scheduled to be discussed the employee Pension Representative shall be granted leave from duty, without loss of pay, provided that the total members of the negotiating committee granted leave from duty without loss of pay shall not exceed four (4) members.

7.2    The Union Grievance Committee, not to exceed two (2) members and the grievant shall be granted leave from duty, without loss of pay, for all meetings between the City and the Union for the purpose of processing grievances when such meetings take place at a time during which such members are scheduled to be on duty.

7.3    The President and the Secretary-Treasurer of the Union shall be granted leave from duty without loss of pay for all meetings of the Executive Board and all membership meetings of the Union and all other meetings concerning union activities or business provided the office of the Chief is notified in advance. Executive Board members shall be excused from duty without loss of pay in order to attend Executive Board meetings unless in the judgment of the Chief the operating requirements of the Department would be affected by their absence. Executive Board members who are excused from duty to attend such meetings shall return to their respective assignments at the completion of the meeting.

7.4    Three Officers of the Union shall be granted leave from duty, without loss of pay, to attend all meetings of The Greater New Haven Central Labor Council, The Uniformed Firefighters Association of Connecticut and the conventions of The Connecticut State Labor Council, AFL-CIO, the International Association of Firefighters, AFL-CIO. Furthermore, the Union shall notify the Chief, by letter, of the names of the Officers and any changes and the dates such meeting will occur.

7.5    The Pension Representative shall be granted leave from duty, without loss of pay, for the purpose of attending Pension Board Meetings.

## ARTICLE XX - NONDISCRIMINATION

20.1   There shall be no discrimination, threat, penalty, coercion or intimidation of any kind against any employee, for reasons of race, creed, color, sex, religious belief, Union membership, national original, political affiliation or Union activity.

## ARTICLE XXI - EXTRA DUTY

21.1   The term "extra duty" or "fire watch," for the purpose of this Article, shall mean duty for which an employee is paid by some party other than the City of New Haven.

21.2   The Chief shall maintain a list, consisting of employees in order of their seniority; provided, however, that no employee below Firefighter Third Grade shall be eligible for extra duty or fire watch. All assignments for extra duty or fire watch shall be made by the chief and shall be awarded to those employees whose names appear on said list in the order of their appearance thereon without regard to rank. In the event that an employee refuses such an assignment, he shall be considered to have waived his right to said assignment and shall not be offered another assignment until his name appears again in the normal rotation on said list.

21.3   Effective upon signing of the contract, the rate of pay for extra duty for fire watch shall be eighteen dollars ($18.00) per hour, or ninety dollars ($90.00), whichever is higher, for each assignment. Effective July 1, 1995, the rate of pay for each extra duty or fire watch assignment shall be nineteen dollars ($19.00) per hour, or ninety-five dollars ($95.00), whichever is higher, for each assignment. Effective July 1, 1996, the rate of pay for extra duty or fire watch shall be twenty dollars ($20.00) per hour or one hundred dollars ($100.00), whichever is higher, for each assignment.

The current exception for the New Haven Coliseum shall continue to apply under the successor agreement.

In the event that an employee works in excess of eight (8) hours while on such assignment, he shall be paid at the rate of one and one-half (1-1/2) times the rate of pay provided for herein for all hours worked in excess of eight (8) hours. Extra duty or fire watch performed on a Saturday or Sunday shall be compensated at the rate of one and one-half (1-1/2) times the hourly rate provided for herein and if such assignments are performed on a holiday, the employees shall be paid at twice the hourly rate provided for herein.

21.4   When three (3) or more employees are requested for extra duty or fire watch assignment, a ranking officer shall be assigned to supervise said assignment. The rate of pay for said supervising officer shall be one dollar ($1.00) per hour or five dollars ($5.00) more per day greater than the rates established in Section 21.3, whichever is higher.

**Department Of Training**

# Memo

**To:**     Director of Training, Captain William Seward

**From:**   Matthew Marcarelli, Assistant Drillmaster

**CC:**     Local 825, EEOC, Chief Daniels, Howard Lawerence

**Date:**   December 7, 1998

**Re:**     Hostile Work Environment

---

On the above date, I was subjected to an experience in which I feel was extremely humiliating. At approximately 11:00 hours, I other training division staff and the recruit class were working under the supervision of Drillmaster Lt. Broadnax. Our task was to place the net into position on the side of the tower.

Once completed with the framing, tools that were borrowed from shop personnel needed to be returned. I gathered the tools and proceeded to the shop. As I walked to the shop, I passed Drillmaster Lt. Broadnax who was talking with Firefighter Freeman Troche. As I passed Firefighter Troche He pulled an 8 ½ x 11 inch Xerox PhotoCopy from his pocket this picture was in view of both Drillmaster Lt. Broadnax and me. The picture showed an obese, naked white woman on her hands and knees. At this point Firefighter Troche said, "Remember when you looked like this". At this point both Drillmaster Lt. Broadnax and Firefighter Troche laughed. I said "I don't want to look at that, It's inappropriate". At this point, I walked away.

Because of this I was hurt and humiliated. I suffered humiliation of a sexual nature by a peer and a superior that did nothing about it. Further, I feel that the presentation of this picture under this or any other circumstances was an insult to my racial background, and in the aforementioned context questioned my sexuality. It also placed me in an unfair position because this occurred in the presence of my immediate supervisor.

I formally request a meeting to discuss this matter with the Chief of the Department, EEOC, Corporation Counsel and Local 825 at the earliest convenience.

● Page 1

rec'd  12:00p  12/7/98



EXHIBIT

**City of New Haven Department of Fire Service**
**Division of Training**

## MEMORANDUM

**TO:**       Dennis Daniels
              Chief of Department

**FROM:**     Capt. William Seward, III 
              Director of Training

**DATE:**     December 9, 1998

**RE:**       Sexual Harassment Complaint

This memo is to inform you that Lt. Charles Hewitt, an adjunct instructor assigned to the Fire
Academy, admitted this officer on Tuesday, December 8, 1998 that he was a witness to the
incident that Assistant Matthew Marcarelli claims in his Memo dated 12/7/98.

D - 2



## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MATTHEW MARCARELLI,    :   NO. 3:01CV02210 (JGM)
    Plaintiff

VS.                :

CITY OF NEW HAVEN, ET AL. :   NOVEMBER 17, 2003
    Defendants


### AFFIDAVIT OF RICHARD BAYER

I, Richard Bayer, being first duly sworn, do depose and say that

1. I am the Chief Investigator in the Office of Corporation Counsel for the City of New Haven.

2. I was assigned to investigate the December 7, 1998 Complaint of Matthew Marcarelli that he had been subjected to "humiliation of a sexual nature" by Freeman Troche and Sheryl Broadnax.

3. In the course of that investigation I interviewed a number of personnel in the New Haven Fire Service, sometimes in the presence of Assistant Corporation Counsel Audrey Kramer, and I tape recorded such interviews.

4. As a result of that investigation, and after discussions with Assistant Corporation Counsel Kramer, I prepared and submitted to the Fire Chief, a Memorandum dated December 21, 1998 summarizing my investigation and conclusions, and later I prepared and submitted to the Corporation Counsel and the

Fire Chief a January 20, 1999 report of a Supplemental Investigation regarding the same allegation.

Respectfully submitted,

Richard Bayer
Chief Investigator
Office of the Corporation Counsel
165 Church Street, 4th Floor
New Haven, CT 06510

State of Connecticut, County of New Haven, ss:

Subscribed and sworn to before me this 17th day of November, 2003.

Commissioner of the Superior Court

-2-

<u>Certificate of Service</u>

I, Martin S. Echter, hereby certify that I have served the foregoing by causing a copy to be MAILED, POSTAGE PREPAID, BY OVERNIGHT MAIL, respectively to

Attorney R. Edward Phillips, c/o Law Office of Warren Miller, One Union Plaza, 2d Floor, P. O. Box 116, New London, CT 06320-0116, and

Attorney Rene Gerard Martineau, c/o Del Sole & Del Sole, 46 South Whittlesey Avenue, P. O. Box 310, Wallingford, CT 06492-0310,

this 17th day of November, 2003.

Martin S. Echter
Deputy Corporation Counsel
165 Church Street, 4th Floor
New Haven, CT 06510
Phone: (203) 946-7964
Fax: (203) 946-7942
Fed. Bar No. ct07596
PAGER: 1-860-590-4432

-3-

# OFFICE OF THE CORPORATION COUNSEL

# MEMORANDUM



**TO:**     DENNIS DANIELS, CHIEF, NEW HAVEN FIRE DEPARTMENT

**FROM:**   Richard Bayer, Chief Investigator

**DATE:**   December 21, 1998

**RE:**     Complaint By Firefighter Matthew Marcarelli

Chief, per your request for an investigation of an incident that occurred on December 7, 1998, at the Fire Training Academy, please be advised of the following:

This writer did conduct an interview with Firefighter Matthew Marcarelli. During this interview, Firefighter Marcarelli explained the circumstances leading up to the complaint that he lodged against Lieutenant Cheryl Broadnax. Lieutenant Broadnax, while walking on the grounds of the fire academy along with Firefighter Troche, did come in contact with Firefighter Marcarelli. Firefighter Troche did take out a picture that he had inside of his jacket of an obese naked white woman on her hands and knees and did make a comment to the effect "do you remember, Matthew, this is what you used to look like." According to Firefighter Marcarelli at that point, Lieutenant Broadnax did laugh and according to him did not discipline Firefighter Troche. This investigator did interview Firefighter Troche who acknowledged that he, in fact, did show the picture to Matthew Marcarelli and did make the comment that he is accused of making. When asked if Lieutenant Broadnax laughed when he showed the picture, he said absolutely not. In fact, she told me to put it away.

I also interviewed the other members of the training academy. None of which actually witnessed this alleged incident. There is no question that the members of the training academy have a problem with Lieutenant Cheryl Broadnax. There is also no question in this investigator's mind that if Firefighter Troche and Firefighter Marcarelli had the same incident, without the presence of Lieutenant Broadnax, that they would have probably laughed this off as just a joke. I also believe that Cheryl Broadnax's past record in the Fire Department certainly had a lot to do with Firefighter Marcarelli in making this complaint.



During my interviews it seemed to be the consensus of all the personnel at the fire academy that the best way to handle Lieutenant Broadnax was to document everything and anything that she did. Although Firefighter Troche admitted to showing the picture to Firefighter Marcarelli, this investigator could find nothing to incriminate Lieutenant Broadnax in this matter. During the interviews, there were statements made by fire personnel that if Lieutenant Broadnax were to be reassigned to the fire academy, that they would, in fact, leave that position. I believe that the personnel presently assigned to the New Haven Fire Academy are hard working and dedicated individuals, and that any move such as asking for a transfer, in fact, will only hurt the present class at the academy. In the opinion of Attorney Audrey Kramer and this writer, it would be advisable that an impartial mediator be appointed as soon as possible in hopes of bringing this unhealthy situation to a close. It is also the opinion of this writer that Lieutenant Cheryl Broadnax be reassigned back to the fire academy as soon as possible.

RB:bf


k:\rbayer\daniels.mem



# OFFICE OF THE CORPORATION COUNSEL



# MEMORANDUM

**TO:**       Thayer Baldwin, Jr., Corporation Counsel

**FROM:**     Richard Bayer, Chief Investigator

**DATE:**     January 20, 1999

**RE:**       Supplemental Investigation

      Per your request, this writer conducted an interview with Lt. Charles Hewitt of the New Haven Fire Department on January 15, 1999, at approximately 10 hundred hours. Present at this interview was Attorney Audrey Kramer, Captain Kevin McNerney of the New Haven Fire Department, also President of Local 825. This interview was conducted as a supplement to an incident which occurred on December 7, 1998, at the Fire Training Academy, on the Boulevard. The following is what transpired at this interview.

      Lt. Hewitt was asked what he observed on December 7, 1998 at the Fire Training Academy. His response was that he saw Firefighter Troche and Lt. Broadnax walking together. When they approached Firefighter Marcarelli who was coming in the opposite direction, Firefighter Troche took a picture out from inside of his shirt of an obese white woman naked on her hands and knees. Lt. Hewitt was then asked what conversation he heard between the parties and he said he heard none except that he did see Lt. Broadnax laugh.

      At this point, the investigation of Matthew Marcarelli vs. Lt. Cheryl Broadnax is closed.

cc:  Chief Dennis Daniels
    Audrey Kramer, Assistant Corporation Counsel







# CITY OF NEW HAVEN
## DEPARTMENT OF FIRE SERVICE
### Office of the Chief



JOHN DeSTEFANO, JR.
*Mayor*

DENNIS W. DANIELS
*Chief*

January 13, 1999

952 Grand Avenue
P.O. Box 374
New Haven, CT 06502
(203) 946-6222
(203) 946-6221/Fax


Lieutenant Sheryl Broadnax
Drillmaster
Department of Fire Service
New Haven Fire Training Academy
230 Boulevard
New Haven, CT 06519

Dear Lieutenant Broadnax:

Please allow this letter to serve as notification that the allegation of sexual harassment filed against you proved to be unfounded. This was concluded after an investigation was conducted by the Chief Investigator of the Office of Corporation Counsel for the City of New Haven.

As a result of the above investigation you are hereby reassigned to the Training Academy as Drillmaster for the Department effective December 24, 1998.

Very truly yours,

Dennis W. Daniels,
Chief

DWD/se

NEW HAVEN
★ ★ ★ ★
All-America City
1998



# OFFICE OF THE CORPORATION COUNSEL



**New Haven**
**All-America City**
1998

**CITY OF NEW HAVEN**

*John DeStefano, Jr.*
**Mayor**

*Thayer Baldwin, Jr.*
**Corporation Counsel**

**LAW DEPARTMENT**

*Sybil Richards*
*Thomas W. Ude, Jr.*
*John Ward*
**Deputy Corporation Counsels**

*Paula M. Turner*
**Executive Assistant**

*James DelVisco*
*Donna Chance Dowdie*
*Raymond E. Epps*
*Jeanette A.A. Johnson*
*Tracey C. Kammerer*
*Audrey Kramer*
*Philip R. Pastore, III*
*Judith A. Sarathy*
*Marylou Scofield*
*John L. Veray*
*Michael A. Wolak, III*
**Assistant Corporation**
**Counsels**

*David B. Greenberg*
**Senior Counsel**

*Olga Bonilla*
*Maryan Hook*
*Catherine Schroeter*
**Paralegals**

*Scott Dellaventura*
*Mark Kornacki*
*Pamela Popolizio*
**Legal Assistants**

*Jean Tomasso*
**Detective**

*Richard Bayer*
**Chief Investigator**

*Linella Dodd*
*Brenda Gillis*
*Thomas McInerney*
*Dominic Tammaro*
**Public Liability Investigators**

**MAILING ADDRESS**
165 Church Street, 4th Floor
New Haven, CT 06510
(203) 946-7958
FAX (203) 946-7942

January 28, 1999

Commissioner David Alvarado
Board of Fire Commissioners
10 Townsend Avenue
New Haven, CT 06512

Re:     Sexual Harassment Policy

Dear Mr. Alvarado:

I spoke with Mr. Richard Bayer regarding this investigation and his recollection was that in his conversation with Lieutenant Hewitt, Lieutenant Hewitt was at a distance from the incident to observe the impact of the activity on the principles present at the incident, but was not in a position to hear the dialogue or see the material.

Even though I believe that he had acted appropriately in disregarding the Hewitt Testimony in his initial report, I asked him to take the matter a step further at your request and interview Lt. Hewitt on the record. The interview took place and a record was kept of the interview.

Lieutenant Hewitt's Testimony at the second interview was entirely consistent with the report previously filed. He prepared a summary of first Lieutenant Hewitt's Testimony to add to the package to be forwarded to the Director of Organizational Development as part of the evidence to be considered to determine what, if any, personnel action should be taken.

Please bear in mind as the matter proceeds, that the Department of Organizational Development (not the Fire Department) will be responsible for that determination and the Chief (not the Commission) will be responsible for implementation. Potential actions include a determination that the complaint was in bad faith, resulting in appropriate discipline.

**Page 2**

     I hope that this report satisfies your concerns and thank you for respecting the position of the City regarding the appropriate process for investigating and correcting Sexual Harassment Complaints. (See attached policy).

                        Very Truly Yours,

                        Thayer Baldwin, Jr.
                        Corporation Counsel

TB:lm-f

cc:    Theodore Brooks

Enclosure

k:/tbaldwin/letters/alvarado.ltr