

# MEMORANDUM..
**NEW HAVEN FIRE DEPARTMENT**
**CHIEF'S OFFICE**

**TO:**     File of Freeman Troche

**FROM:**   Dennis W. Daniels, Chief

**DATE:**   December 30, 1998

**RE:**     Notice of Reprimand

After a meeting held at Fire Headquarters on Wednesday morning, December 30, 1998, Firefighter Freeman Troche was advised of the findings of Corporation Counsel's investigation into his actions in an alleged sexual harassment activity on December 7, 1998.  Although it was found that the material involved in this alleged sexual harassment activity was not pornographic in nature, that would have contributed to this activity, it was found to be inappropriate.

Firefighter Troche was advised at the time of our meeting that this memo will serve as a "notice of reprimand" and  will remain in his personal file for at least one (1) year providing that such actions does not occur again.





### NEW HAVEN FIREFIGHTERS LOCAL 825 I.A.F.F.

### OFFICIAL GRIEVANCE FORM

LOCAL NO. *825*                     DATE SUBMITTED: Step 1. _____
                                                          2. _____
Municipality *New Haven*                                  3. _____
                                                          4. _____
Local grievance no. *825-98-25*                           5. _____

Grievant *Matthew Marcarelli*          Class action ___✓___

Title *Asst Drillmaster*          Immediate supervisor *Lt Broadnax*

I authorize NHFF Local 825 as my representative to act for me in the processing of this grievance.

Date *12/28/98* Signature of Employee *Matt J. Marcll.*

Signature of Union Rep. *Kevin McAuney*          Title *Pres*

### AT EACH STEP MAKE 3 COPIES OF GRIEVANCE
### 1 TO UNION FILE - 1 TO MANAGEMENT - 1 WORKING COPY

### STATEMENT OF GRIEVANCE:

ARTICLES AND SECTIONS of the contract which have been violated:

*6.1 (Conditions of Employment)*

But not limited thereto.

GRIEVANCE: State the facts (include date/s.) who, when, where, what:
*Due to an incident which occurred 12/7/98 at the Training Division between me Lt Broadnax & Fireman Troche and subsequent request for investigation of incident, and the apparent conclusion of this investigation on 12/24/98 continue's to place me in a hostile working environment which is a change in working conditions.*

REMEDY: *Written copy of Corp Counsel investigative report, Fire Chief investigative report & conclusion, written explanation of how my letters were publicly circulated & assurances in writing that this harrasment will stop and there will be no further repercussions.* and to be MADE WHOLE

APR 17  CITY CLERK RECEIVED  2 39



DEPARTMENT OF LABOR RELATIONS
CITY OF NEW HAVEN
165 CHURCH STREET
NEW HAVEN, CT 06510
203/946-7151 • Fax: 203/946-7924



JOHN DeSTEFANO, JR.
MAYOR

June 22, 1999

William F. Clark
Labor Relations Director

Mr. Kevin McNerney, President
Local 825, IAFF, AFL-CIO
P.O. Box 613
New Haven, CT  06513

**RE:    Third Step Grievance Decision**
          **Matthew Marcarelli Grievance No. 825-98-25**

Dear Mr. McNerney:

After carefully reviewing all the facts regarding the above-captioned grievance, the following represents my decision as the Labor Relations Director as specified in Article 6, Grievance Procedure, Section 6.1, Step 3 of the current Collective Bargaining Agreement between the parties:

Grievant Matthew Marcarelli, an Assistant Drillmaster, in the Department of Fire Services, alleged that the City of New Haven violated the current Fire Union Local 825 Labor Agreement, Article 6, Conditions of Employment, due to an incident which occurred on December 7, 1998 at the training division between the Grievant, Lt. Sheryl Broadnax and Freeman Troche and subsequent results of an investigation into such incident which allegedly place the Grievant in a hostile working environment. The remedy requested is a written copy of Corporation Counsel's investigative report and conclusion, written explanation of how letters were publicly circulated and assurances in writing that the alleged harassment would cease and there be no further repercussions.

Based on a thorough examination of the testimony presented at the June 15, 1999 3rd Step Hearing as well as information provided at prior hearings, Labor Relations has determined that the Grievance is moot in certain respects and is denied in other respects. With respect to the mootness. The Union acknowledged receipt of the investigative report prepared by Corporation Counsel. The Chief informed the Union that he did not prepare an investigative report but rather relied on the report of the Chief Investigator of the Corporation Counsel's office. The Union was also informed by the Chief of the discipline tendered to Freeman Troche based on the December 7, 1999 incident. Finally, the Union was informed that neither the Chief nor the office of Labor Relations circulated any documents with respect to theses matters publicly, as such neater the Chief nor the undersigned is in a position to affirmatively state how the documents were circulated. Therefore, with respect to the requests described above, the remedies are moot in so far there has been compliance.

With respect to the allegations of continued harassment and changes in working conditions, the grievance is denied. The Chief is in receipt of voluminous documentation from the training center, including documentation prepared by the Grievant. It is within the discretion of the Chief to review such documentation and take appropriate action. Prior to the 3rd Step Hearing, the Chief had offered the services of a mediator to work with the staff at the training division in order to promote a more harmonious work environment. To date, neither the Union nor the staff members have affirmatively agreed to mediation. The Chief has also appeared at the training division and spoke with the staff about the importance of following the Standard Operating Procedures



of the Division of Training and respecting the identified chain of command therein. Currently the Chief has
assigned Assistant Chief Wright to investigate recent claims forwarded to the Chief's office on or about Friday
June 11, 1999.

The Chief maintains the power to discipline for just cause pursuant to the Collective Bargaining Agreement.
The Grievant and the Union have taken the position that discipline is warranted against members of the training
division. However, that decision is neither the Grievant's or the Union's to make. The Chief has reviewed the
investigative report from Corporation Counsel and agreed with its conclusions regarding the December 7, 1998
incident. As for the alleged continued harassment, the Chief has monitored the situation closely. Should the
Chief feel discipline of staff is warranted based upon facts presented to him or investigated by his office, then he
shall make that determination and tender such discipline at that time.

There is no question that the training division staff are experiencing difficulty in working as a harmonious unit.
The Union, the Chief and Labor Relations have searched for solutions to rise above this difficulty. This
division is the cornerstone of the Department in represents the first look at the Department from most recruits.
As such, a professional atmosphere consistent with Standard Operating Procedures is critical. Any deviation
from such a professional atmosphere or from Standard Operating Procedures must be dealt with swiftly and
decisively. Based on the comments made by the Chief at the Training Division on June 10, 1999, as well as his
statements at the 3rd Step Hearing, such observance is expected. Any conduct outside of those perameters will
result in investigation and discipline where appropriate.

Very truly yours,

William E. Clark
Director of Labor Relations

cc:     Susan Whetstone, CAO
        Chief Dennis Daniels, Department of Fire Services



RECEIVED
STATE OF CONNECTICUT
MAR 2 4 1999
COM... ... HUMAN RIGHTS
& OPPORTUNITIES
VEG... ...TRAL REGION

## AFFIDAVIT

The undersigned, being duly sworn, hereby deposes and states the following:

1.     My name is Matthew Marcarelli and I am employed by the New Haven Department of Fire Service as an Assistant Drillmaster at the New Haven Fire Training Academy located at 230 Boulevard, New Haven, Connecticut;

2.     I have held this position since June 17, 1998.  Prior to that date, I was employed by the New Haven Department of Fire Service as a Firefighter. The respondent is the City of New Haven, a municipal corporation organized and existing under the laws of the State of Connecticut, located at 165 Church Street, New Haven, Connecticut, acting by and through its employee Sheryl Broadnax, the Drillmaster at the New Haven Fire Training Academy, and my immedate supervisor on a daily basis from November 13, 1998 to the present;

4.     The respondent employs more than 20 persons;

5.     The respective rsponsibilities of a Drillmaster and an Assistant Drillmaster are set out in "Administrative and Operational Procedures" of the New Haven Department of Fire Service (p.2), (Attached hereto as Exhibit 1). However, in this regard, it is to be noted that the Drillmaster is the second (2nd) highest ranking positon at the Academy;

6.     I am 28 years old and a Caucasian male;

7.     Drillmaster Sheryl Broadnax is an African-American female of unknown age who has filed numerous grievances/lawsuit complaints against the respondent alleging race discrimination;

8.     From November 13, 1998, to the present, the respondent City of New Haven, acting by and through Drillmaster Sheryl Broadnax has, through her

RECEIVED
CITY CLERKS OFFICE
APR 12   2 37 PH '99

actions, discriminated against me on the basis of my gender and race, thereby creating a hostile work environment for me at the New Haven Fire Training Academy as reflected in the following specific occurrences:

(a)    By virtue of a memo dated December 7, 1998, Drillmaster Broadnax filed a false complaint against me with Dennis Daniels, the Chief of the Department alleging that I was absent without leave (AWOL) from the Academy. (Exhibit 2).  In actuality, I was working on a project at the specific behest of Assistant Chief, Michael Grant, the immediate supervisor of all Training Academy staff, including Drillmaster Broadnax.  I was, due to the filing of this false complaint, forced to defend my actions to the Chief of the Department. (Exhibit 3);

(b)    The above complaint was filed by Drillmaster Broadnax with the Chief on December 7, 1998, the same day that I was sexually harassed by her on the grounds of the Fire Academy in the course of the work day.  More particularly, in the presence of Drillmaster Broadnax, I was shown an 8 1/2 x 11 inch  Xerox photocopy of an obese naked white woman on her hands and knees by Firefighter Freeman Troche who said:  "Remember when you looked like this."  Both Drillmaster Broadnax and Firefighter Troche then laughed. Drillmaster Broadnax in no way reprimanded Firefighter Troche or took any other steps which would have indicated any disapproval on her part of these actions. (Exhibit 4).  Rather, this incident occurred and was condoned, if not encouraged by Ms. Broadnax, in spite of the fact that as the Drillmaster at the Academy and my immediate supervisor, she is specifically charged with the responsibility of adhering to the City's Sexual Harassment Policy (Exhibits 5A & 5B);

(c)    The December 7, 1998 sexual harassment incident was witnessed by Lt. Charles Hewitt, an African-American male;  (Exhibit 6)

(d)    As a result of the December 7, 1998 sexual harassment incident, I requested a transfer out of the New Haven Fire Training Academy (Exhibit 7) until the matter was investigated by the respondent.  Simultaneously, the respondent was inexplicably unable to respond to my initial complaint and subsequent request that the incident be treated in accordance with its own sexual harassment policy;  (Exhibits 8 & 9A & 9B);

(e)    On December 8, 1999, while on modified duty at the Chief's Office, Ms Broadnax made numerous calls to the Chief and Assistant Chief barraging both with questions as to my whereabouts.  "Why was [I] there? Under whose authority was [I] working?"  She further indicated to Assistant Chief Wright that she was my immediate supervisor and if I was working at the Chief's office without her knowledge, I was AWOL.  She also stated that if I did not want to work for her, then they should fill my job immediately with someone else.

(f)    On December 10, 1998, I was individually interviewed and on December 14, 1998, Captain William Seward, the Head of the New Haven Fire Training Academy, Lt. Charles Hewitt, a witness to the December 7, 1998 incident, Firefighter Freeman Troche, a principal in the incident, and Asst. Drillmaster Abe Colon, gave detailed tape-recorded statements to the respondent through New Haven Public Liability Investigator Richard Bayer of the Office of the Corporation Counsel for the City of New Haven.  (Exhibit 10).  Lt. Hewitt was interviewed a second time regarding the same matter on a later date. Investigator Bayer found no evidence of any wrongdoing on the part of Ms. Broadnax, in part, because "[he] also interviewed the other members of the Training Academy,  none of which actually witnessed this alleged incident." This conclusion was reached and included in Mr. Bayer's findings in spite of the fact that Lt. Chuck Hewitt disclosed to him, as part of the investigation, that he was a witness to the subject occurrence;

( g )    On December 12, 1998, I learned from Lt. Thomas Hines of New Haven Engine Company 9 that the aforementioned pornographic picture was being distributed by Firefighter Troche in the firehouses along with my initial complaint to the Chief concerning the December 7, 1998 incident; this in spite of the fact that the only people associated with the respondent with whom I filed the complaint was Fire Chief Dennis Daniels, my Union and counsel for the Fire Department;

(h)    A similar incident occurred in June, 1995 at the Fire Academy in which a Caucasian firefighter trainee was found to have placed a picture of a naked African-American female in the book of an Instructor. In that incident, he was ultimately disciplined by the Department by way of a one day suspension, five weeks remedial and sensitivity training, and he was not permitted to graduate with his class;

9.    The December 7, 1998 occurrence must be viewed in the context of prior incidents with Ms. Broadnax which in toto created a hostile work environment for me at the New Haven Fire Training Academy;

(a)    More specifically, on or about November 18, 1998, Ms. Broadnax told me that it was "cause [she is] a black female," that she was unable to obtain professional certification in certain areas of firefighting; (Exhibit 11);

(b)    On or about November 22, 1998 Ms. Broadnax mocked me for volunteering to cover her duty watch on a Sunday, finding the same humerous, and stating that, "[she] does not ever want to respond to fires" and that [she] was no spark." (Exhibit 11); It is to be noted that in the world of firefighting, "spark" is a derogatory term connoting an overzealous, highly aggressive Firefighter;

(c)    On November 23, 1998, Ms. Broadnax barraged me with a litany of questions designed to test my knowledge of various firefighting standards. (i.e. NFPA 1403, Standard on Live Fire Training. "How many water suppliers are required? Do you need a designated safety officer? What type of paperwork is required?") I would try to answer but in the course of each such response, Ms. Broadnax would interupt me and interject that "[she] already knew it, as it was on her Civil Service exam." (Exhibit 11);

(d )    Throughout Ms. Broadnax's tenure at the Academy, she has scripted my every move. Whenever I would enter the Academy office, or be in her presence at another location on the grounds of the Academy, she would begin documenting what I said and did (Exhibit 11); For example, it occurred while doing ladder evolutions on 11/30/98 and 12/2/98 with Ms. Broadnax, and on 12/7/98 while setting up the life net under Ms. Broadnax's command. On those dates, I noted her scripting whenever I was in her presence, or whenever I would say or do anything. On 12/8/98, in the AM after filing my complaint, I noted Ms. Broadnax staring at me and once again scripting whenever I would speak during a staff meeting. I got up several times to answer the phone and when I got up, I would note that Ms. Broadnax would write it down, and when I came back, she would write it down. On 1/22/99 at around 13.00 hours at a staff meeting, Lt. Broadnax was staring at me and when I would speak she would look down at her pad and start writing. At a staff meeting on 1/27/99, I noted that Lt. Broadnax was scripting as I was speaking. I again noticed this on 1/28/99 at 15.00 hours at a staff meeting. At a staff meeting on 2/8/99 at around 15:30 hours, I again observed her staring and scripting. At a staff meeting on 2/24/99 at around 15:30 hours, I noted Lt. Broadnax scripting, I glanced at the pad and could see that she was indeed writing notes that contained my name. During all of these occasions there was absolutely nothing occurring that was note worthy.

This behavior continues to this date. I cannot remember a time that I have seen Lt. Broadnax without the pad she scripts. I find this very annoying and intimidating, and I feel it interferes with my work.

       (e)    On December 3, 1998, she interrogated me at length about my whereabouts, in spite of the fact that I was complying with a Work Order that had been directly assigned to me by her earlier that day; (Exhibit 11);

       (f )   On December 3, 1998, when I informed Ms. Broadnax that an Academy Recruit who had requested extra help chose the following day for the remedial session, she responded, "Did you ask him or tell him?" (Exhibit 11);

       10.    All of the above demonstrate a pattern on the part of Ms. Broadnax, my immediate supervisor, to intimidate me, to harass me, to encourage and condone sexual and race-based discrimination, to leave me wary, if not down right reluctant to deal with her on a day-to-day basis thereby undermining any possible working relationship between us; Moreover, the repeated outbursts, intimidation and scripting has caused me to fear Ms. Broadnax to a point where I no longer feel comfortable interacting with her in any capacity. This has promulgated an atmosphere that is not conducive to work. (Mine is not the only complaint filed with the Department relative to these occurrences. Assistant Drillmaster Abe Colon has done so as well, also to no avail). In fact, at this time there no longer is a working relationship. To this point, I have always received above average evaluations of my work, but under these circumstances, it becomes harder to maintain focus on the task at hand.

       11.    All of the above was tolerated, and condoned if not encouraged by the respondent, City of New Haven because in the face of documented incidents of the same, its officers, agents and/or employees failed to take any action at all to solve the behavioral and morale problems at the Academy emanating from Ms. Broadnax's behavior. In so doing, the respondent failed to both be

knowledgeable and proactive in enforcing its own clearly articulated anti-discrimination policies, any purported "mediation" undertaken by the respondent on December 24, 1998, having been futile.

_Matthew J. Marcarelli_
Matthew Marcarelli
Affiant

Subscribed and sworn to before me this _22nd_ day of _March_, 1999.

_Patricia A. Cofrancesco_
Patricia A Cofrancesco
Commissioner of the Superior Court

APR 12 2 38 PM '99
RECEIVED
CITY CLERK'S OFFICE

**IMPORTANT: <u>YOU MUST OBTAIN A NOTARIZATION OF YOUR COMPLAINT</u>**

**<u>BEFORE YOU RETURN</u>**

I request the Connecticut Commission on Human Rights and Opportunities investigate my complaint, secure for me my rights as guaranteed to me under the above cited laws and secure for me any remedy to which I may be entitled.

_Matthew J. Marcarelli_ being duly sworn, on oath, states that she/he is the Complainant herein; that she/he has read the foregoing complaint and knows the content thereof; that the same is true of her/his own knowledge, except as to the matter herein stated on information and belief and that as to these matters s/he believes the same to be true.

Dated at _Woodbridge_, Connecticut this _22 ND_ day of _March_,
19 _99_.

X _Matt J. Marcell_
**(Complainant's Signature)**

Subscribed and sworn to before me this _22ND_ day of _March_, 19 _99_

_Patricia C. Ganasso_
~~(Notary Public)~~ Commissioner of
the Superior Court

My commission expires: _____

Form 103                                                      Revised 1/1/96

3



**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

| MATTHEW MARCARELLI | X | CASE NO. 9930486 |
| COMPLAINANT | | |
| | X | |
| VS. | X | |
| | | |
| CITY OF NEW HAVEN | X | MAY 26, 1999 |
| RESPONDENT | | |

*RECEIVED*
*STATE OF CONNECTICUT*
*MAY 27 1999*
*HUMAN RIGHTS*
*& OPPORTUNITIES*
*WEST CENTRAL REGION*

## OATH

I, Donna Chance Dowdie, certify that copies of the foregoing Respondent's Answers and Responses to Schedule A were prepared and mailed to the Commission on Human Rights and Opportunities and all attorneys and pro se parties of record on May 26, 1999.

*Donna Chance Dowdie*

Donna Chance Dowdie
Assistant Corporation Counsel

| State of Connecticut | ) | | | |
| | ) | ss: | New Haven | May 26, 1999 |
| County of New Haven | ) | | | |

Personally appeared Donna Chance Dowdie, Assistant Corporation Counsel, and made oath to the truth of the matters contained in the foregoing answer before me.

*Martin A. Echter*

~~Notary Public or~~
Commissioner of Superior Court

macarel.oth

STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

| | | |
|---|---|---|
| MATTHEW MARCARELLI<br>COMPLAINANT | X | CASE NO. 9930486 |
| | X | |
| VS. | X | |
| CITY OF NEW HAVEN<br>RESPONDENT | X | MAY 26, 1999 |

### RESPONDENT'S ANSWER TO COMPLAINT

Respondent respectfully submits the following responses to complainant's Complaint:

Respondent denies the complainant's allegations of harassment, sexual harassment, race discrimination and retaliation in their entirety. Respondent further responds to allegations set forth in numbered paragraphs of complainant's Affidavit as follows:

1.     Respondent admits that complainant is employed by Respondents' Fire Department as an Assistant Drillmaster at the New Haven Training Academy located at 230 Boulevard, New Haven, CT Connecticut.

2.     Respondent admits the allegation regarding  complainant's jobs held with the New Haven Fire Department.  Respondent admits that The City of New Haven is a municipal corporation organized and existing under the laws of the State of Connecticut and located at 165 Church Street, New Haven, Connecticut. It is further admitted that Sheryl Broadnax is employed as a Drillmaster with the New Haven Fire Department's

Fire Training Academy; that Ms. Broadnax was promoted to this position effective November 13, 1998, and that Ms. Broadnax is complainant's immediate supervisor.

4.    Admitted.

5.    Admitted.

6.    Admitted.

7.    Respondent admits that Ms. Broadnax is an African American female. Respondent is aware that Ms. Broadnax has filed grievances against the Respondent in accordance with such rights and privileges granted to her pursuant to her Union Contract - the same rights and privileges as are granted to and exercised by complainant. Respondent is aware of other complaints Ms. Broadnax has filed against Respondent. Respondent fails to understand the relevance to this complaint of the allegations concerning grievances and complaints Ms. Broadnax has filed against Respondent.

8.    Respondent denies that it has in any way discriminated against complainant on the basis of his gender or race and denies that it has in any way created a hostile working environment for complainant at the New Haven Fire Academy. According to complainant, the very day Ms. Broadnax became his supervisor she committed acts or began to commit acts which discriminated against him on the basis of his gender and race, thereby creating a hostile working environment. This allegation appears to be disingenuous given that the gist of his complaint center's around an alleged incident occurring on December 7, 1999, in which a male firefighter was involved and in fact was the instigator of the incident involving the display of a picture of an obese

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

2

white woman. Complainant is not complaining about the male firefighter's actions. He claims that Ms. Broadnax laughed during the incident and therefore should now be held responsible for the actions of the male fighter and that her action as alleged constitutes sexual harassment. Respondent believes this is an incorrect conclusion that has no support in the law.

8a.    It is admitted that  Ms. Broadnax, consistent with her supervisory duties, wrote a memo to Chief Daniels dated December 7, 1998 regarding complainant.   The memo, a copy of which is attached to complainant's complaint, speaks for itself.

8b.    Respondent denies that the complainant was sexually harassed by Ms. Broadnax on the grounds of the Fire Academy in the course of the work day, December 7, 1999.   As indicated above, this incident involved a male firefighter whom the complainant is not complaining about.   See Investigative Report of the alleged incident by Chief Investigator Bayer -   **Exhibit A.**   dated December 21, 1998.   Respondent further denies that the incident was condoned or encouraged by Ms. Broadnax.   There is a dispute as to whether Ms. Broadnax laughed or not. Even assuming for argument sake that Ms. Broadnax did laugh, this act alone does not constitute, condone or encourage sexual harassment or the create, condone or encourage of a hostile environment. According to complainant's written account of the incident to Chief Daniels, the alleged laugh by Ms. Broadnax came before complainant's alleged expression that he considered the picture inappropriate. There is no further indication that after complainant expressed  this that Ms. Broadnax continued to laugh or do anything that would indicate a disregard for his expressed discomfort with the picture display.   See also **Exhibit A.**

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

3

Respondent admits that all employees of the City of New Haven must adhere to the City's Sexual Harassment Policies.

8c.    Respondent denies that the alleged December 7, 1998 incident constitute sexual harassment. This incident was promptly investigated by Respondent and was never sanctioned by Respondent. _See_ also **Exhibit A**.

8d.    Respondent denies the December 7, 1998 sexual harassment allegation. Respondent admits that complainant requested a transfer out of the New Haven Fire Training Academy. The Respondent is unable to respond to the remainder of said paragraph as it is incoherent.

8e.    Respondent admits that Ms. Broadnax, consistent with her responsibilities as complainant's supervisor, made phone calls to inquire into the where-abouts of complainant.

8f.    Respondent admits that Chief Investigator Richard Bayer, white, male, interviewed all persons named in this paragraph. _See_ **Exhibit A**.

8g.    Even assuming for argument sake that Firefighter Troche distributed the information as alleged by Complainant, there is nothing to indicate that Respondent or Ms. Broadnax knew of, encouraged or condoned these actions.

8h.    While such an incident may have occurred, as alleged, the incident, on its face is in no way similar to the incident complained about. Moreover, the Respondent is unable to fully investigate the allegations without the name of the fire trainee involved in the alleged June 1995 incident.

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

4

9.    Respondent denies that Ms. Broadnax created a hostile work environment. With respect to the specific allegations set forth in paragraphs 9a through 9f, Ms. Broadnax is out of town and is not available to respond to these specific allegations. Respond intends to supplement its Answer with an Affidavit from Ms. Broadnax as soon as she becomes available.

Notwithstanding, the Respondent denies that the allegations with respect to the December 7, 1998 incident and the alleged "prior incidents" referred to in paragraphs 9a through 9f, taken in their totality, created a hostile work environment within the meaning of the law. It should be noted that none of these incidents were brought to the attention of Respondent or the Fire Chief until after the December 7, 1998 incident or at the filing of complainant's complaint.  If indeed complainant felt intimidated and annoyed by the alleged notetaking by Ms. Broadnax, or the other incidents as alleged, complainant did not bring this to the attention of the Respondent or Fire Chief until he complained by way of his written letter to the Fire Chief on December 7, 1998 or at the filing of this complaint.  Furthermore, inasmuch as complainant complains about Ms. Broadnax's alleged notetaking, it would appear that during Ms. Broadnax's tenure as Drillmaster, her every move has been scripted as evidenced by the details set forth in paragraph 9 in its entirety, as well as the various letters and memos attached to complainant's complaint, and the supplemental memos and letters submitted to this Commission after the filing of this Complaint.

OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN
165 Church Street, New Haven, CT 06510
Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715

5

Respondent further maintains that Ms. Broadnax, as complainant's supervisor, had a duty to inquire into complainant regarding his whereabouts on December 3, 1998 if his whereabouts were unknown to her.

10.    Based upon the foregoing, Respondent denies that a pattern of intimidation, harassment or sexual and raced based discriminations was demonstrated.

11.    Respondent denies that it tolerated, condoned or encouraged any of the actions complained about. Respondent further denies that it failed to take action with respect to complainant's allegations of sexual harassment and hostile environment claims. In fact, Respondent physically separated the complainant and Ms. Broadnax upon hearing of the complaint and promptly conducted an investigation into the allegations. Respondent's investigation found no merit to complainant's allegations. While complainant is disappointed at the outcome, Respondent stands by its findings.

**RESPONDENT, CITY OF NEW HAVEN**

Donna Chance Dowdie
Assistant Corporation Counsel
It's Attorney

City of New Haven
Office of the Corporation Counsel
Juris No. 42715

marcarel.ans

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

6

# OFFICE OF THE CORPORATION COUNSEL

# MEMORANDUM 



EXHIBIT

A

**TO:**      Thayer Baldwin, Jr., Corporation Counsel

**FROM:**    Richard Bayer, Chief Investigator

**DATE:**    January 20, 1999

**RE:**      Supplemental Investigation

Per your request, this writer conducted an interview with Lt. Charles Hewitt of the New Haven Fire Department on January 15, 1999, at approximately 10 hundred hours. Present at this interview was Attorney Audrey Kramer, Captain Kevin McNerney of the New Haven Fire Department, also President of Local 825. This interview was conducted as a supplement to an incident which occurred on December 7, 1998, at the Fire Training Academy, on the Boulevard. The following is what transpired at this interview.

Lt. Hewitt was asked what he observed on December 7, 1998 at the Fire Training Academy. His response was that he saw Firefighter Troche and Lt. Broadnax walking together. When they approached Firefighter Marcarelli who was coming in the opposite direction, Firefighter Troche took a picture out from inside of his shirt of an obese white woman naked on her hands and knees. Lt. Hewitt was then asked what conversation he heard between the parties and he said he heard none except that he did see Lt. Broadnax laugh.

At this point, the investigation of Matthew Marcarelli vs. Lt. Cheryl Broadnax is closed.

cc:  Chief Dennis Daniels
     Audrey Kramer, Assistant Corporation Counsel

# OFFICE OF THE CORPORATION COUNSEL

# MEMORANDUM



**TO:**      DENNIS DANIELS, CHIEF, NEW HAVEN FIRE DEPARTMENT

**FROM:**    Richard Bayer, Chief Investigator

**DATE:**    December 21, 1998

**RE:**      Complaint By Firefighter Matthew Marcarelli

    Chief, per your request for an investigation of an incident that occurred on December 7, 1998, at the Fire Training Academy, please be advised of the following:

    This writer did conduct an interview with Firefighter Matthew Marcarelli. During this interview, Firefighter Marcarelli explained the circumstances leading up to the complaint that he lodged against Lieutenant Cheryl Broadnax. Lieutenant Broadnax, while walking on the grounds of the fire academy along with Firefighter Troche, did come in contact with Firefighter Marcarelli. Firefighter Troche did take out a picture that he had inside of his jacket of an obese naked white woman on her hands and knees and did make a comment to the effect "do you remember, Matthew, this is what you used to look like." According to Firefighter Marcarelli at that point, Lieutenant Broadnax did laugh and according to him did not discipline Firefighter Troche. This investigator did interview Firefighter Troche who acknowledged that he, in fact, did show the picture to Matthew Marcarelli and did make the comment that he is accused of making. When asked if Lieutenant Broadnax laughed when he showed the picture, he said absolutely not. In fact, she told me to put it away.

    I also interviewed the other members of the training academy. None of which actually witnessed this alleged incident. There is no question that the members of the training academy have a problem with Lieutenant Cheryl Broadnax. There is also no question in this investigator's mind that if Firefighter Troche and Firefighter Marcarelli had the same incident, without the presence of Lieutenant Broadnax, that they would have probably laughed this off as just a joke. I also believe that Cheryl Broadnax's past record in the Fire Department certainly had a lot to do with Firefighter Marcarelli in making this complaint.

During my interviews, it seemed to be the consensus of all the personnel at the fire academy that the best way to handle Lieutenant Broadnax was to document everything and anything that she did. Although Firefighter Troche admitted to showing the picture to Firefighter Marcarelli, this investigator could find nothing to incriminate Lieutenant Broadnax in this matter. During the interviews, there were statements made by fire personnel that if Lieutenant Broadnax were to be reassigned to the fire academy, that they would, in fact, leave that position. I believe that the personnel presently assigned to the New Haven Fire Academy are hard working and dedicated individuals, and that any move such as asking for a transfer, in fact, will only hurt the present class at the academy. In the opinion of Attorney Audrey Kramer and this writer, it would be advisable that an impartial mediator be appointed as soon as possible in hopes of bringing this unhealthy situation to a close. It is also the opinion of this writer that Lieutenant Cheryl Broadnax be reassigned back to the fire academy as soon as possible.

RB:bf

k:\rbayer\daniels.mem

**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

**CASE NO. 9930486**
**Marcarelli vs. City of New Haven**

**EMPLOYMENT SCHEDULE A**
**Request for Information**

1. State the full legal name of the respondent.

   City of New Haven

2. State the proper address of the respondent's facility where the complainant alleges that an act or acts of discrimination occurred.

   Department of Fire Services Training Division, a.k.a.
   New Haven Fire Training Academy
   230 Ella Grasso Boulevard
   New Haven, CT  06510

3. If the respondent is incorporated, indicate under what state's laws it is incorporated.

   Respondent, City of New Haven, is an incorporated municipality organized and existing under the laws of the State of Connecticut and New Haven Charter.

4. If the respondent is incorporated, state the address of respondent's corporate headquarters.

   165 Church Street
   New Haven, CT  06510

5. State the name and address of respondent's agent for service.

   City Town Clerk
   200 Orange Street
   New Haven, CT  06510

6. If the respondent is currently the subject of bankruptcy proceedings, or has been the subject of bankruptcy proceedings during the past three years, provide documentation of the current status of such proceedings.

   Not Applicable

7. State the name, title and address of the individual to be contacted for further information in this matter.

Donna Chance Dowdie
Assistant Corporation Counsel
165 Church Street, 4th. Floor
New Haven, CT 06510

8. Separately state the number of respondent's employees in Connecticut and at the facility, where the complainant alleges that the discriminatory conduct occurred.

Respondent employees approximately 4,800 persons.

The Respondent's Department of Fire Services, principally located at 952 Grand Avenue, New Haven, CT 06510, employees approximately 400 sworn personnel.

9. Submit a response, in "admit" "deny" format, to each allegation of the complaint. For each allegation that is denied, submit a statement that sets forth the facts upon which you rely in your denial. Please submit any and all documents and written statements of witnesses or participants to support your position.

See Respondent's Answer to Complaint.

10. Submit copies of all written rules, policies and procedures relating to the issue(s) raised in the complaint. If these are not in writing, explain the rules, policies and procedures.

See Attachment 1 - City of New Haven - Sexual Harassment Policies

11. If the complainant was discharged, disciplined, or subject to any other adverse employment decision, submit the following information:

Complainant was not discharged, disciplined or subjected to any adverse employment decision. Complainant reported certain activities which he claims constituted sexual harassment and which he claims created a hostile working environment for him.

a) Date complainant was advised of the act complained of;

It was the complainant who made a complainant of sexual harassment and hostile environment to Chief Daniels, head of the Department of Fire Services. He claims that his supervisor, Cheryl Broadnax, Drillmaster, Black, Female, sexually harassed him and created a hostile working environment for him.

b) Explain in detail the reason(s) for the action taken;

See responses to 11 and 11 a) above. Chief Daniels requested that an investigation into the complainant's complaint be made by the Respondent's Department of Organization Development or under its direction.

c) Identify the person(s) recommending the action(s) at issue, including name, position held, race, sex, age and disability (if any), as appropriate;

See response to 11 c) above. Dennis Daniels, Fire Chief and Department Head, Black, Male recommended the investigation into the matter. The investigation was requested by Tina Burgett, Director of Organizational Development, White Female, and was conducted by Chief Investigator, Richard Bayer, White Male, employed in the Office of the Corporation Counsel .

d) Identify the person(s) making the final decision, including name, position held, race, sex, age and disability (if any), as appropriate;

Chief Dennis Daniels, Black, Male, made the decision, based upon the investigation, that the actions which complainant complained about did not amount to sexual harassment or a hostile working environment.

e) Provide a copy of any evaluation(s) or investigative report(s), and all other relevant documents relating to the act.

The investigative report relating to the investigation into the sexual harassment and hostile environment claims by complainant is attached as **Exhibit A** to Respondent's Answer.

f) Provide a list of all employees who committed the same or substantially similar offense(s) that the complainant committed, and the disciplinary action taken against each of them. Supply backup documentation for the listed employees. Identify each employee by name, position held, race, sex, age and disability (if any), as appropriate.

As stated above, no disciplinary action was taken against complainant. In addition, no disciplinary action was taken against Cheryl Broadnax as a result of the investigation. Although complainant's complaint alludes to a prior similar incident in the Fire Department in June, 1995, the accused individual was not named in the complaint and therefore Respondent is unable to properly investigate the allegation.

g) List all employees discharged or who received the same discipline as the complainant within the past two years. For each employee listed, include employee's name, position held, reason for and date of discipline, race, sex, age and disability (if any), as appropriate. Provide a copy of the discipline or separation notice for each person.

12.   If the complainant was denied a promotion or not hired, provide the following information:

Not applicable

a.)   Describe the selection process, and provide copies of documents describing the process, if available;