**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MATTHEW MARCARELLI | :  CIVIL NO. 3:01CV02210 (JGM) |
| | : |
| V. | : |
| | : |
| CITY OF NEW HAVEN | : |
| | : |
| AND SHERYL BROADNAX | :  DECEMBER 8, 2003 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 9, the

plaintiff, Matthew Marcarelli, respectfully submits this Memorandum in Opposition

to the defendant, Sheryl Broadnax's Motion to Dismiss, dated October 15, 2003

and the defendant, City of New Haven's Motion to Dismiss, dated October 24,

2003, both of which this Court converted to Motions for Summary Judgment.

A. Background

On December 7, 1998, Matthew Marcarelli, a white male and Assistant

Drillmaster at the New Haven Fire Training Academy, filed a complaint with the

New Haven Fire Chief regarding Sheryl Broadnax's involvement in an incident with

sexual and racial overtones that occurred earlier that day. (See Exhibit 1 attached

hereto). Specifically, the defendant, Sheryl Broadnax, a black female and then the

Drillmaster of the New Haven Fire Training Academy and Marcarelli's supervisor, was present when Firefighter Freeman Troche, a black male, exhibited a photograph of an obese, nude, white woman to Matthew Marcarelli and asked "Do you remember when you used to look like this?"  Marcarelli voiced his opposition to the photograph and remark by Troche.  (See Exhibit 2 attached hereto). Drillmaster Sheryl Broadnax, a superior officer to both Troche and Marcarelli, laughed at Marcarelli and took no action to discipline Troche or otherwise remedy the situation. (See Exhibit 3 attached hereto).

On or about December 8, 1998, then Fire Chief Dennis Daniels decided that Sheryl Broadnax had not sexually harassed Marcarelli and that "one complaint was not enough to institute a formal investigation."  Chief Daniels ordered Marcarelli back to his position at the Fire Training Academy.  However, Marcarelli questioned this hasty decision and sought advice from union representatives. (See Exhibit 4 attached hereto).  Thereupon, the Director of the Fire Training Academy, Captain William Seward, made inquiries of the Fire Chief's Office for specifics of the Fire Department's Sexual Harassment policy and procedures for handling such complaints.  Captain Seward was informed that the Fire Department did not have its own sexual harassment policy and therefore the City of New Haven's Sexual Harassment Policy would apply.  However, there were no approved procedures for handling complaints of sexual harassment for the City of New Haven because its

proposed policy and procedures were still awaiting approval by the Office of the Director of Labor Relations. (See Exhibit 5 attached hereto).

After Marcarelli filed his complaint on December 7, 1998 the defendant, Sheryl Broadnax threatened to replace Marcarelli and began a pattern of retaliation against him. (See Exhibit 3 attached hereto).  On or about December 8, 1998 Matthew Marcarelli wrote a memorandum to Captain Seward wherein he requested reassignment pending the outcome of his complaint. In his memorandum, Marcarelli stated: "I am aware that I am the only fire academy staff other than yourself with formal certification and training…I feel a tremendous amount of guilt because I feel a great injustice will be done to the current recruit class."(See Exhibit 6 attached hereto).  On or about December 9, 1998 Matthew Marcarelli wrote a further memorandum to Fire Chief Dennis Daniels wherein he stated, referring to Broadnax and the incident of December 7, 1998: "Is this the type of person we want training the next generation of firefighters?  I pray that none of these impressionable recruits saw these actions." (See Exhibit 7 attached hereto).

Richard Bayer, an investigator for the City of New Haven's Corporation Counsel, began an investigation into Marcarelli's complaint, and in his written summary of December 21, 1998 remarked that if Sheryl Broadnax had not been present Troche and Marcarelli would have laughed the incident off. (See Exhibit 8

attached hereto).  Mr. Bayer concluded there was no sexual harassment and closed his investigation -- despite the statement of a witness that contradicted Firefighter Troche's statement regarding Sheryl Broadnax's conduct during the incident in question. (See Exhibit 9 attached hereto).  Mr. Bayer never interviewed Sheryl Broadnax.  Interestingly, Freeman Troche was subsequently disciplined by Chief Dennis Daniels for his involvement in the incident of December 7, 1998. (See Exhibit 10 attached hereto).  Sheryl Broadnax was not disciplined. (See Exhibit 11 attached hereto).

     After the December 20, 1998 report from Richard Bayer wherein he concluded that there was no sexual harassment, Marcarelli filed subsequent complaints (See Exhibit 12 attached hereto) with his employer, the defendant City of New Haven alleging that on diverse dates between February 8, 1999 and June 14, 1999, Broadnax's continued to retaliate and harass him on numerous occasions, including but not limited to:

   a.    February 8, 1999, Broadnax wrongfully accused Marcarelli of slashing her tires;

   b.    March 3, 1999, Broadnax wrongfully accused Marcarelli of being "too tough" and "racially biased" against certain recruits;

   c.    March 11, 1999, Broadnax filed a false charge that Marcarelli was AWOL;

d.    March 23, 1999, Broadnax filed a false charge that Marcarelli was
      AWOL;

e.    April 28, 1999, Broadnax filed a false charge that Marcarelli was
      AWOL;

f.    May 7, 1999, Broadnax filed a false charge that Marcarelli was
      AWOL;

g.    May 10, 1999, Broadnax wrongfully accused Marcarelli of being
      "racially biased" against certain recruits;

h.    June 1, 1999, Broadnax filed a false charge that Marcarelli was
      AWOL;

i.    June 10, 1999, Broadnax filed a false charge that Marcarelli was
      AWOL; and

j.    June 14, 1999, Broadnax wrongfully accused Marcarelli of
      incompetence.

The defendant, City of New Haven had a "hands off" policy with regard to

Sheryl Broadnax because she then had numerous pending lawsuits against the

City of New Haven wherein she alleged, among other things, racial, sexual and/or

gender discrimination.  As a result of the City of New Haven's "hands off Sheryl

Broadnax" policy all of Marcarelli's complaints fell on deaf ears.  After writing

letters to the Fire Chief, a complaint with the Connecticut Commission on Human

Rights and Opportunities, and a union grievance, the defendant City of New
Haven threatened Marcarelli with transfer and demotion in an attempt to silence
him.

On June 15, 1999 the Director of Labor Relations for the City of New
Haven, William Clark, threatened to demote Marcarelli if he could not "get along
with Broadnax."(See Exhibit 13 attached hereto).  The plaintiff, Matthew Marcarelli,
saw the obvious writing on the wall, and rather than risk a transfer to a position
chosen by William Clark, Matthew Marcarelli voluntarily transferred out of the Fire
Training Academy to a position he found in an effort to avoid the constant
harassment and retaliation by Sheryl Broadnax. (See Exhibit 13 attached hereto.)

Recently, during her September, 2003 trial against the City of New Haven,
Sheryl Broadnax successfully accused the City of New Haven Fire Department of
fostering a "white boy's club" that sought to undermine her authority and get rid of
her. (See Exhibit 14 attached hereto).  Sheryl Broadnax was the New Haven Fire
Department's highest-ranking black female in the history of the department. (See
Exhibit 14 attached hereto.)  Sheryl Broadnax's retaliation against Marcarelli was
based, in part, on what she must have perceived to be the humiliation and
embarrassment to her by a complaint of harassment from someone she accused
of being part of the "white boy's club."   It must have been an awkward situation for
both defendants, Broadnax and the City of New Haven, because her father,

6

Harrison Broadnax, was, at the time of Marcarelli's complaints, the Affirmative

Action Officer for the City of New Haven. (See Exhibit 5 attached hereto). Two of

her previous suits against the City of New Haven were consolidated and tried

before the Honorable Warren W. Egington and the jury returned a verdict in favor

of Sheryl Broadnax and awarded her $1,500,000.00. (See Exhibit 15 attached

hereto).

Matthew Marcarelli's integrity, self-esteem, career path and income were

derailed by the City of New Haven in an effort to avoid potentially more legal

trouble from Sheryl Broadnax. When the City of New Haven was finally forced into

taking disciplinary action against Sheryl Broadnax (in February, 2002 Sheryl

Broadnax was fired by the City of New Haven for misconduct) she began another

action against the City of New Haven.

## B. PLAINTIFF'S LOCAL RULE 9(C) 2 STATEMENTS

| Defendant Broadnax's facts | Plaintiff's Response |
|---|---|
| 1. The plaintiff Matthew Marcarelli is a Caucasian male who resides in the Town of Northford. | 1. True. |
| 2. The defendant Sheryl Broadnax is a female of African American descent. | 2. True. |
| 3. The incident that is alleged to have caused the speech upon matters of public | 3. False. Marcarelli complained of several incidents of harassment |

| | |
|---|---|
| concern was the showing of a photograph of a naked, obese, Caucasian female by a fellow male employee of the City of New Haven's Fire Department all in the presence of the [defendant Sheryl Broadnax]. | and retaliation. |
| 4.  The speech at issue was made solely within the internal procedures and protocol established for employee grievance and complaints and not in any public forum. | 4.  False.  The plaintiff also filed a CHRO/EEOC complaint which is a public forum. |
| 5.  The plaintiff responded under oath to the inquiry of "Describe in complete detail any act of omission or commission by which you contend the undersigned defendant (Sheryl Broadnax) caused or contribute to the hostile work environment and adverse employment action claimed by the plaintiff" as follows:<br>Answer: See my response to interrogatory #1.  No supplemental compliance has been provided to date outlining any additional allegation of retaliation by the [defendant Sheryl Broadnax] relative to the speech at issue and/or disclosing additional dates other than December 7 and 8, 1998. | 5. False.  That was the plaintiff's response to the Interrogatory but the plaintiff also alleged other incidents in an amended complaint, dated May 27, 2003, that was subsequently changed by the Court.  The defendants were put on notice of other incidents.  The defendants have not deposed the plaintiff nor filed supplemental interrogatories. |
| 6.  The plaintiff concedes that he did not | 6.  The plaintiff does not agree that, |

| | |
|---|---|
| have a good working relationship with the [defendant Sheryl Broadnax] even prior to the speech at issue in the lawsuit. | even if true, this is a material fact. |
| 7. The plaintiff was not fired, demoted, suspended or in any way reprimanded for the speech at issue nor did the plaintiff resign or in any way forfeit his position or civil service title of Assistant Drillmaster as a result of the actions of the defendant. | 7. False. The plaintiff was constructively demoted in an effort to silence him. |
| **Defendant City of New Haven's facts** | **Plaintiff's Response** |
| 1. At all times relevant the defendant City of New Haven has been and is a municipal corporation organized an operating under the laws of the State of Connecticut. | 1. True. |
| 2. At all times relevant the New Haven Department of Fire Services has been and is a department of the City of New Haven pursuant to the Charter of the City. | 2. True. |
| 3. On or about December 7, 1998 plaintiff Matthew Marcarelli and defendant Sheryl Broadnax were both employees of the New Haven Department of Fire Services, Mr. Marcarelli serving as an Assistant Drillmaster and Ms. Broadnax serving as Drillmaster, i.e. Mr. Marcarelli's immediate | 3. True. |

| | |
|---|---|
| supervisor. | |
| 4.  Since 1983, and continuing to present, the City of New Haven and its Fire Service have had policies prohibiting discrimination and harassment based upon gender or sex. | 4.  True. |
| 5.  On or about December 8, 1998 Matthew Marcarelli submitted a written complaint to the Director of Training, alleging, in essence, that he had been subjected to "humiliation of a sexual nature" when Firefighter Freeman Troche displayed a drawing of a naked white woman and made a related comment, all allegedly in the presence of Sheryl Broadnax. | 5. False.  The plaintiff was shown a photograph; complained of what Troche did and what Broadnax did and also what she failed to do. |
| 6.  At all times relevant the Corporation Counsel was, and is, "the chief legal advisor of and the attorney for the city and of all officers and departments thereof in matters relating to their official duties," pursuant to the Charter of the City. | 6.  The plaintiff does not agree that, even if true, this is a material fact. |
| 7.  An investigation of the incident alleged in Mr. Marcarelli's complaint was promptly initiated, with Mr. Richard Bayer, the Chief Investigator of the Office of the City Corporation Counsel, conducting tape | 7.  False.  The plaintiff's complaint was not investigated before the Fire Chief decided that there was no sexual harassment and ordered Marcarelli  back to work at the |

| | |
|---|---|
| recorded interviews and Assistant Corporation Counsel Audrey Kramer sitting in on certain of the said interviews. | Academy.  Therefore, it was not "promptly" investigated. |
| 8.  As a result of such investigation Mr. Bayer produced a Report, and later a Supplemental Report. | 8.  The plaintiff states that any investigation and reports by Mr. Bayer were done to simply "rubber stamp" the Fire Chief's decision of December 8, 1998 and to adhere to the "hands off Sheryl Broadnax" policy. |
| 9.  After receiving Mr. Bayer's initial report, and in the exercise of his discretion and judgment, the Fire Chief concluded that the allegation of "sexual harassment" against Ms. Broadnax "proved to be unfounded." | 9.  False.  The plaintiff's complaint was not investigated before the Fire Chief decided that there was no sexual harassment and ordered Marcarelli back to work at the Academy. |
| 10.  On or about January 28, 1999 the then Corporation Counsel responded to an inquiry from a Member of the Board of Fire Commissioners about the incident, complaint and investigation. | 10.  True. |
| 11.  The City of New Haven did not offer a paragraph "11." | |
| 12. However, Fire Chief Daniels did discipline Firefighter Freeman Troche, the | 12.  True.  The Fire Chief decided to discipline only one of the two |

| | |
|---|---|
| individual who had actually displayed the drawing and made the comment about which Mr. Marcarelli had complained. | individuals named in Marcarelli's complaint.  Marcarelli complained of Broadnax's reaction and lack of supervision but that has not been addressed by the City of New Haven. |
| 13.  Mr. Marcarelli also initiated a Grievance pursuant to the applicable collective bargaining agreement which also prohibits discrimination based on sex, and that Grievance was investigated an expressly responded to. | 13.  The plaintiff agrees that he did file a union grievance and the Director of Labor Relations responded to it. |
| 14.  Mr. Marcarelli also initiated a complaint of sexual discrimination, based on the same incident of December 7, 1998 with the Connecticut Commission on Human Rights and Opportunities (hereinafter CHRO). | 14. True. |
| 15.  Fully cooperating in that investigation the City of New Haven filed a written response to that CHRO complaint. | 15.  The plaintiff cannot determine whether the City of New Haven "fully cooperated" with CHRO. |
| 16.  The CHRO, by letter dated August 12, 1999, concluded in essence that there was no discrimination and, expressly, that the City "did investigate…" | 16.  The plaintiff disagrees as to what the CHRO essentially concluded. |
| 17.  Mr. Marcarelli moved for | 17. The plaintiff does not agree |

| | |
|---|---|
| reconsideration of the CHRO decision and the CHRO reaffirmed it initial decision. | that, even if true, this is a material fact. |
| 18.  At all relevant times the City of New Haven, by Charter and Civil Service Rules & Regulations has maintained a hiring and promotional civil service based on merit and in compliance with the laws of the State of Connecticut, Connecticut General Statutes, Sections 7-407 et seq. | 18.  The plaintiff does not agree that, even if true, this is a material fact.  The hiring and promotional practices of the City of New Haven are not issues in dispute. |
| 18. * Contrary to the allegation that the City failed to discipline Ms. Broadnax out of fear due her pending lawsuits, the City has defended each of those lawsuits to verdict, and posttrial motion or appeal upon adverse verdict, and the City terminated Ms. Broadnax's employment, albeit for distinct reasons. | 18.  The plaintiff does not understand how the City of New Haven's fear of potential lawsuits by Broadnax relates to whether or not the City of New Haven defends those lawsuits.  The plaintiff contends that the City of New Haven took no action to discipline Broadnax to avoid new lawsuits by her and to silence the plaintiff from complaining about Broadnax. |

*  The City of New Haven offered two paragraphs numbered "18."  The plaintiff

kept the paragraph numbering identical to the defendant's.

## C. Standard of Review

Summary judgment may be entered only when the court determines from the entire record that there is no genuine issue of material fact to be tried and the moving party is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c).  See Donahue v. Windsor Locks Bd. of Fire Comm'rs., 834 F.2d 54, 57 (2d Cir. 1987).  The burden of establishing that no genuine factual dispute exists rests with the party moving for summary judgment.  In determining the existence of a genuine issue of material fact, the court must view the evidence in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Therefore, not only must there be no genuine issue of material fact, but there must be no controversy regarding the inferences to be drawn from them.  Donahue, 834 F. 2d at 57 (citing Schwabenbauer v. Board of Education, 667 F.2d 305, 313 (2d Cir. 1981)); accord Anderson v. Liberty Lobby, Inc., 447 U.S. at 253-255.

## D. Argument

The defendants, City of New Haven and Sheryl Broadnax, contend that they are entitled to summary judgment on all of the plaintiff's claims in that his 1998 complaint of sexual harassment did not constitute speech protected by the First Amendment because Judge Arterton previously ruled that they were entitled

to summary judgment on the plaintiff's allegation of sexual harassment. The defendants' Motions for Summary Judgment rest upon the argument that because there was no sexual harassment of the plaintiff, the plaintiff's complaint of sexual harassment was not speech on a matter of public concern therefore he was not protected by the First Amendment and there could be no retaliation by the defendants. The defendants' argument is legally and factually untenable. The plaintiff, Matthew Marcarelli's rights under the First and Fourteenth Amendments to the Constitution were violated.

The defendant, Sheryl Broadnax, seemingly challenges the plaintiff's standing to bring suit under § 1983. The challenge is plainly without merit. Title 42 U.S.C. § 1983 provides, in relevant part, that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…(emphasis added). The plaintiff, Matthew Marcarelli, needs only to be a citizen of the United States or other person within the jurisdiction thereof.

A. FIRST AMENDMENT

1. The plaintiff's speech was a matter of public concern.

The essential issue is whether the plaintiff's speech was protected by the First Amendment, i.e. a matter of public concern. The defendants focus on the plaintiff's speech on one particular day, December 7, 1998, wherein he complained of an incident with sexual and racial overtones. However, the plaintiff can establish that his speech was not limited to one particular day but occurred over a period of weeks and months and his speech was protected by the First Amendment as well as Title VII. Also there is a causal connection between his protected speech and the adverse employment actions perpetrated by the defendants.

It is well-established that a public employer cannot retaliate against an employee for the exercise of his or her First Amendment right of free speech. Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 780 (2d Cir.), *cert. denied* 502 U.S. 1013 (1991), citing Perry v. Sinderman, 408 U.S. 593, 597 (1972). In order for a public employee to recover on a First Amendment retaliation claim under Section 1983, the plaintiff must demonstrate that his conduct is entitled to First Amendment protection and that the employer's conduct was motivated by or substantially caused by his exercise of free speech. Donahue, 834 F2d at 58, citing Mount Healthy City School District Bd. of Educ. v. Doyle, 429 U.S. 274, 287

(1977); <u>Piesco v. Koch</u>, 12 F. 3d 332, 342 (2d Cir. 1993); <u>Ezekwo</u>, 940 F.2d at
780.

 Clearly, this dispute arose in the context of public employment.  In
addressing the merits of a public employee's claim against his employer for
retaliation in violation of the First Amendment, a court must first determine whether
the employee's speech can be "fairly characterized as constituting speech on a
matter of public concern."  <u>Connick v. Myers</u>, 461 U.S. 138, 146-47 (1983).
Speech touches upon a matter of public concern when it can "fairly be considered
as relating to any matter of political, social or other concern to the community."
<u>Connick v. Myers</u>, 461 U.S. at 146.  This determination is an issue of law to be
decided by the court and is to be made based upon the content, form and context
of a given statement, as revealed by the record as a whole.  <u>Id.</u> at 147-48 n. 7;
<u>Ezekwo</u>, 940 F.2d at 781.

 Around the country, courts have shaped the contours of what subject
matters of speech are protected by the First Amendment.  The contours adhere to
a principle that discrimination, preferential treatment, malfeasance, a violation of
the public's trust, or a government official's abuse of authority are inherently
matters of public concern.  See Victor v. McElveen, 150 F.3d 451 (5th Cir. 1998)
(complaints about discriminatory treatment of black police officers was a matter of
public concern); Martinez v. Hooper, 148 F.3d 856 (7th Cir. 1998)(charges of

police misconduct were matters of public concern); Schultea v. Wood, 27 F.3d
1112 (5th Cir. 1994) (charges of misconduct involved a matter of public concern);
Gray v. Lacke, 885 F.2d 399 (7th Cir. 1989),  Poe v. Haydon, 853 F.2d 418, 430
(6th Cir. 1988), Azzaro v. County of Allegheny, 100 F.3d 968 (3rd Cir. 1997)
(complaints about sexual harassment on job were matters of public concern);
Czurlanis v. Albanese, 721 F.2d 98 (3d Cir. 1983) (bringing to light actual or
potential wrong-doing by public officials is a matter of public concern).  Clearly, the
plaintiff, Matthew Marcarelli's complaint on December 7, 1998 of harassment,
discrimination, and/or malfeasance on the part of the defendant, Sheryl Broadnax,
was a matter of public concern.

     2.  The plaintiff complained over a period of several months.

     The plaintiff, Matthew Marcarelli's speech cannot be unduly limited to what
was said only on December 7, 1998.  The plaintiff also spoke out on December 8,
9 and 10 to make clear the foundation of his complaint.  The plaintiff also spoke
out for seven more months to complain.  In the Second Circuit, a court must
determine the "primary aim" or "motive" of the public employee's speech in
deciding whether the speech should be placed in the "public concern" category or
the "private interest" category.  Saulpaugh v. Monroe Community Hosp., 4 F.3d
134, 147 (2d Cir. 1993) (Newman, C.J., concurring), *cert. denied*, 114 S.Ct. 1189
(1994), citing Ezekwo, 940 F. 2d 780-81; see also Alexander v. Karcsi, No.

3:95CV02468 (AHN) at 8 (Ruling on Defendants' Motion for Summary Judgment August 12, 1996 D. Conn.) (Nevas, J.) and Whelan v. Blakeslee, No. 3:91CV00480 (WWE) at 10 (Ruling on Defendants' Motion for Summary Judgment December 4, 1996 D. Conn.)(Egington, J.)

The plaintiff, Matthew Marcarelli's other speech, some closely related to his complaint of sexual harassment in subject matter and time, establishes that his speech was based not only on his personal situation but on the welfare of the recruit training class, the Fire Training Academy and the Fire Department. Moreover, Marcarelli's speech raised an issue for public concern that embarrassed the defendants – the City of New Haven's lack of promulgating procedures for handling sexual harassment complaints.  Harrison Broadnax, the City of New Haven's Affirmative Action Officer and father of the defendant, Sheryl Broadnax, was unable or unwilling to cooperate with inquiries by Captain Seward for procedures for handling Marcarelli's complaint. (See Exhibit 5 attached hereto.) The plaintiff, Matthew Marcarelli, appealed several times to the Fire Chief, Dennis Daniels, seeking redress for what he considered to be a hostile environment. Therefore, all of his speech, spanning a period of months, was protected by the First Amendment.  See Sheppard v. Beerman, 911 F. Supp. 606 (E.D.N.Y. 1995) (accusations of corruption of public official, was matter of public concern); Johnson v. Multnomah County, Or., 48 F.3d 420, 425 (9th Cir. 1995) ("Misuse of public

funds, wastefulness and inefficiency in managing and operating government

entities are matters of inherent public concern;" thus complaint that new supervisor

was part of "good old boy" network under which favors are given to "good old

boys" was matter of public concern); Thomas v. Harris, 784 F.2d 648 (5th Cir.

1986) (complaint about special police treatment of private security guards was

matter of public concern); Firefighters Ass'n, Dist. of Columbia v. Barry, 743 F.

Supp. 1182 (D.D.C. 1990) (firefighter placing insulting bumper stickers on car was

matter of public concern in context of on-going dispute in fire department);and

Anderson v. Central Point School Dist. No. 6, 746 F.2d 505 (9th Cir. 1984)(if letter

has both matters of public and private concern, public aspects control).  The

plaintiff, Matthew Marcarelli's speech was on matters of public concern and were

protected by the First Amendment as a matter of law.

    3.  Title VII protection for the plaintiff's speech.

       The defendants, Sheryl Broadnax and the City of New Haven, claim that

they could not have retaliated because the plaintiff, Matthew Marcarelli's speech

was not protected.  However, under the Equal Employment Opportunities

Subchapter of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., an

employer, employment agency, joint labor-management committee controlling

training programs, or labor organization may not discriminate against an individual

because he has opposed any practice made an unlawful employment practice by

the statute, or because he has made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the statute. 42 U.S.C.A. § 2000e-3(a).  A "protected activity" under Title VII includes an employee's opposition to conduct that he reasonably believes violates the statute, regardless of whether such conduct actually violates the statute.  See Wu v. Thomas, C.A.11(Ala.), 863 F.2d 1543, *rehearing denied* 871 F.2d 122, Jurado v. Eleven-Fifty Corp., C.A.9(Cal.), 813 F.2d 1406, Benson v. Little Rock Hilton Inn, C.A. Ark., 742 F.2d 414.  Opposition may take the form of informal complaints to supervisors or the use of an internal grievance procedure, Rollins v. State of Florida Dept. of Law Enforcement, C.A.11(Fla.), 868 F.2d 397, or the filing of a suit under a different statute. Wu  v. Thomas, C.A.11(Ala.), 863 F.2d 1543, *rehearing denied* 871 F.2d 122.

Accordingly, under 42 U.S.C. § 2000e, the plaintiff, Matthew Marcarelli's complaint of sexual harassment was an activity protected under federal law because he reasonably believed that the defendants' conduct violated Title VII even though a court subsequently disagreed.  The defendants retaliated against the plaintiff, in part, because he filed a good faith complaint of sexual harassment. The protection 42 U.S.C. § 2000e affords to a complaining party is the protection of the First Amendment.  In Berheim v. Litt, 79 F.3d 318 (2nd Cir. 1996), the court

acknowledged that claims of retaliation may be brought under either the First Amendment or Title VII.

## B. FOURTEENTH AMENDMENT

1. <u>The defendants denied the plaintiff his rights to due process and equal protection</u>.

The City of New Haven's failure to properly respond to the plaintiff's complaints and petitions for redress of grievance and threats of retaliatory transfer denied the plaintiff his rights to due process and equal protection.  "Governmental action or punishment less than firing (transfer, demotion, reassignment, failure to promote, termination of volunteer) because of, or in retaliation for, the exercise of First Amendment free speech rights or associational rights is also liberty deprivation," Rutan v. Republican Party of Illinois, 497 U.S. 62, 76 n.8 (1990). Public employees who suffer adverse employment actions as a result of their exercise of First Amendment rights have lost "liberty" without due process of law, Pickering v. Bd. of Education, 391 U.S. 563 (1968).  If the government acts arbitrarily with respect to a class of one, there can be an equal protection violation. See Willowbrook v. Olech, 120 S.Ct. 1073 (2000).  The City of New Haven's "hands off of Sheryl Broadnax" policy treated her differently than similarly situated employees accused of sexual harassment and retaliation and, by force of implication, treated Marcarelli differently than similarly situated accusers.

In documents produced by the defendant, City of New Haven, an affidavit from the plaintiff, Matthew Marcarelli, to CHRO detailed a 1995 incident wherein a member of the Fire Training Academy's class placed a photograph of a naked, black female in a book belonging to an instructor. The recruit was immediately disciplined with suspension and remedial training. The plaintiff, Matthew Marcarelli, reasonably expected similar and prompt discipline for the persons he accused of similar conduct. The plaintiff also reasonably expected discipline for a supervisor who either joined in the harassing conduct or failed to take corrective action after witnessing the harassing conduct.

Another document produced by the defendant, City of New Haven, indicates that Firefighter Freeman Troche was disciplined for the December 7, 1998 incident that is part of the subject matter of this lawsuit. If Firefighter Troche engaged in misconduct and the defendant, Sheryl Broadnax, his supervisor who personally witnessed his offensive conduct (and what Fire Chief Dennis Daniels stated "would have contributed to [sexual harassment]…it was found to be inappropriate") (see Exhibit 10 attached hereto) but took no action to discipline Troche or otherwise oppose his actions, then Marcarelli's complaints about Broadnax were true. It is inconsistent that Troche was disciplined for his actions and Broadnax was not disciplined for either her alleged acts or failure to act. However, this fact underscores the plaintiff, Matthew Marcarelli's allegation that

the defendant, City of New Haven, maintained a "hands off" policy toward the defendant, Sheryl Broadnax.

It is specifically alleged in the plaintiff's operative complaint that, after filling a grievance through his union, he was threatened with transfer and demotion by the Director of Labor Relations, William Clark.  In fact, at her recent trial against the City of New Haven, Sheryl Broadnax, through her attorney, questioned Matthew Marcarelli about the threat of transfer without objection by counsel for the City of New Haven.  "Reassignment to a less desirable position is an adverse employment action." Tarshis, 211 F.3d at 38; Richardson v. New York State Dept. of Correctional Services, 180 F.3d 426, 444 and n.4 (2nd Cir. 1999).  "Remarks and other evidence that reflect a propensity by the decision maker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination, even short of an admission of illegal motivation." Rayl v. Fort Wayne Community Schools, 87 F. Supp. 2d 870, 879 (N.D. Ind. 2000); Sheehan v.  Donlen Corp., 173 F.3d 1039, 1044 (7th Cir. 1999); Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999).  The plaintiff, Matthew Marcarelli, was wrongfully threatened with reassignment as a means to silence him.  The City of New Haven had no intention of taking any action on Marcarelli's complaints of harassment and retaliation.  The plaintiff's rights to free speech, petition for redress of grievances, due process and equal protection were denied by the defendants.

2. <u>The City of New Haven has a history of retaliatory practices</u>.

The defendant, Sheryl Broadnax, still has at least one pending lawsuit against the City of New Haven wherein she alleges discrimination and retaliatory practices against her.  It is disingenuous for the defendants to disclaim any knowledge, notice or existence of retaliatory practices when a jury has already found such practices have existed.  Specifically, the defendant, Sheryl Broadnax, in her recent capacity as a plaintiff against the City of New Haven, successfully claimed the existence of a "white boy's club" that singled her out for harassment and discrimination.  The plaintiff, Matthew Marcarelli, respectfully requests this court to take judicial notice of the many cases against the City of New Haven, which allege retaliatory practices within the Fire Department, including but not limited to:

a. <u>New Haven Firebirds v. Board of Fire Commissioners</u>, CV89-0288183S, Conn. Superior Court;

b. <u>Whelan v. Blakeslee</u>, 3:91CV00480 (WWE)

c. <u>Sheryl Broadnax v. City of New Haven</u>, CV98-0412193S, Conn. Superior Court;

d. <u>Sheryl Broadnax v. City of New Haven</u>, 3:98CV807 (WWE);

e. <u>Sheryl Broadnax v. City of New Haven</u>, 3:02CV0123 (SRU); and

f.  <u>New Haven Firefighters Local 825, IAFF v. City of New Haven</u>, CV03-0472402S, Conn. Superior Court.

The plaintiff, Matthew Marcarelli, provides newspaper articles (copies attached hereto as Exhibit 16) that illustrate the defendant, Sheryl Broadnax's statements and actions toward the New Haven Fire Department.

3.  <u>There was more than one incident of retaliation and adverse employment actions</u>.

As indicated by the plaintiff's affidavit for his CHRO complaint, his sworn testimony at trial in September of this year, his union grievance, letters disclosed by the defendant, City of New Haven, and the Plaintiff's Corrected Amended Complaint, dated May 27, 2003, he made several complaints of retaliatory conduct against the defendants.  In <u>Goldstein v. Chestnutt Ridge Volunteer Fire Dept</u>., 218 F.3d 337 (4th Cir. 2000), the Fourth Circuit explained that: "the employee must establish retaliation of some kind--that he was deprived of a valuable government benefit or adversely affected in a manner that, at the very least, would tend to chill his exercise of First Amendment rights. 218 F.3d at 351, citing <u>Edwards v. Goldsboro</u>, 178 F.3d 231, 246 (4th Cir. 1999)."  "[R]etaliation by a government employer against an individual who exercises his First Amendment rights constitutes a First Amendment violation." <u>Perry v. McGinnis</u>, 209 F.3d 597, 604 (6th Cir. 2000). The threat of dismissal is an actionable form of adversity under

First Amendment doctrine. Pickering, 391 U.S. 563, 574 (1968); Edwards v. Goldsboro, 178 F.3d 231, 246 (4th Cir. 1999). In Saleh v. Moore, 2001 WL 585085 (4th Cir. 2001) (unpublished), the Fourth Circuit explained the showing of adversity necessary for a retaliation claim. The court stated that "the required adversity involves "some impairment of the plaintiff's rights." The court explained:

   "[S]omething less than an adverse employment action in the context of Title VII jurisprudence may so chill the exercise of constitutional rights as to constitute a showing of adversity in a First Amendment retaliation case under section 1983." See Phillips v. Bowen, 278 F.3d 103 (2d Cir. 2002)(relentless acts of harassment of deputy who did not support sheriff for reelection consitutes adverse action; $400,000 verdict upheld); Sharp v. City of Houston, 164 F.3d 923 (5th Cir. 1999)(transfer in retaliation for exercise of First Amendment rights is actionable, even if transfer was voluntarily requested); Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir. 1987)(no need to show economic injury to succeed in retaliation claim; "an act in retaliation for the exercise of a constitutionally protected right is actionable under § 1983").  The plaintiff, Matthew Marcarelli, has suffered adverse employment actions and a loss of his rights.  It is immaterial for the defendants to claim that said actions were not substantial.

        The plaintiff spoke out on what he reasonably believed to be violations of his rights and the policies of the City of New Haven.  The defendants were wholly

27

unjustified in retaliating against Matthew Marcarelli and threatening him in an attempt to silence his voice.

<u>CONCLUSION</u>

Based upon the foregoing facts and arguments, the plaintiff, Matthew Marcarelli, respectfully requests this honorable Court to deny the defendants' Motions for Summary Judgment and allow him to present his facts to a jury for a determination on the merits.

THE PLAINTIFF
MATTHEW MARCARELLI


By: _____
R. Edward Phillips, Esquire
One Union Plaza, Second Floor
New London, CT  06320
(860) 444-0437
# CT20999

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, on December 8, 2003 to:

Martin S. Echter, Esquire
Office of the Corporation Counsel
City of New Haven
165 Church Street
New Haven, CT 06510

Rene Gerard Martineau, Esquire
Del Sole & Del Sole, LLP
46 South Whittlesey Avenue
P.O. Box 310
Wallingford, CT 06492

_____

R. Edward Phillips, Esquire