IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
MATTHEW MARCARELLI                          :
                                            :        3:01 CV 2210 (JGM)
                                            :
V.                                          :
                                            :
CITY OF NEW HAVEN AND                       :
SHERYL BROADNAX                             :
---------------------------------------------------------x        DATE: MARCH 2, 2004

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

        The factual and procedural history behind this action is summarized by United States

District Judge Janet Bond Arterton in her May 9, 2003 Ruling on Defendant Broadnax's

Motion for Summary Judgment ["May 9th Ruling"] (Dkts. ##54 & 64) and in this United States

Magistrate Judge's Order, dated September 2, 2003 (Dkt. #66), familiarity with which is

presumed.

        On May 12, 2003, the parties consented to trial before this Magistrate Judge (Dkt.

#57), and on September 3, this Magistrate Judge issued an Order directing plaintiff to file

a revised Complaint consistent with Judge Arterton's May 9th Ruling.[1] (Dkt. #66).

Accordingly, on September 18, 2003, plaintiff filed his Second Amended Complaint,

generally asserting violations of 42 U.S.C. § 1983 by defendant City of New Haven (Count

One) and by defendant Sheryl Broadnax (Count Two).  (Dkt. #67).

        On October 16, 2003, defendant Broadnax filed her Motion to Dismiss plaintiff's

Second Count in her Second Amended Complaint, for failure to state a claim for retaliation,

_____

        [1]See Section II.A infra.

and brief in support,[2] in which she relied upon extrinsic documents. (Dkts. ##70-71). Eight

days later, defendant City of New Haven filed its Motion to Dismiss and brief in support (Dkt.

#72), in which brief the municipal defendant referred to certain investigatory reports and

suggested that the Court treat this motion as one for summary judgment.  (Id. at 7 n.1).

Thereafter, on October 31, 2003, this Magistrate Judge converted the Motion to Dismiss to

a Motion for Summary Judgment and reset the corresponding deadlines. (Dkt. #74).

On November 12, 2003, defendant Broadnax filed her Local Rule 56(a)1[3] Statement

of Material Facts (Dkt. #77)[4] and five days later, defendant City of New Haven filed its Local

Rule 56(a)1 Statement. (Dkt. #80).[5]  On December 8, 2003, plaintiff filed his brief in

---

[2]The following unnumbered exhibits are attached to defendant Broadnax's Motion (Dkt. #70): excerpts from Transcript of Status Conference & Ruling on Summary Judgment Motion, dated May 9, 2003; copy of excerpts from Plaintiff's Responses to Defendant's First Set of Interrogatories and Requests for Production to Plaintiff Matthew Marcarelli, dated March 21, 2002 ["Plaintiff's Responses"]; copy of memorandum, dated December 7, 1998 ["Plaintiff's 12/7/98 Memorandum"]; copy of memorandum, dated December  8, 1998 ["Plaintiff's 12/8/98 Memorandum"]; copy of correspondence from plaintiff to Chief Dennis Daniels, dated December 9, 1998 ["Plaintiff's 12/9/98 Letter"]; copy of Grievance, dated December 28, 1998 ["Plaintiff's Grievance"]; copy of undated memorandum ["Plaintiff's Undated Memorandum"]; copy of correspondence from Abraham Colon to Chief Daniels, dated December 10, 1998 ["Colon Correspondence"]; copy of plaintiff's affidavit, sworn to March 22, 1999 ["Plaintiff's 3/22/99 Aff't"]; copy of plaintiff's correspondence to Chief Daniels, dated March 23, 1999 ["Plaintiff's 3/23/99 Letter"] & April 30, 1999 ["Plaintiff's 4/30/99 Letter"]; and another copy of Plaintiff's 12/8/98 Memorandum.

[3]Defendant Broadnax erroneously refers to her Local Rule 56(a)1 Statement as her Local Rule 9(c)1 Statement.  Local Rule 9(c)1 was amended on January 1, 2003 and is now LOCAL R. CIV. P. 56(a)1.

[4]Attached to Dkt. #77 are the following seven exhibits: another copy of Plaintiff's Responses (Exh. A); another copy of Plaintiff's 12/7/98 Memorandum and Plaintiff's 12/8/98 Memorandum (Exhs. A-1 to A-2); another copy of Plaintiff's Grievance (Exh. A-3); another copy of Plaintiff's Undated Memorandum (Exh. A-4); another copy of Colon Correspondence (Exh. A-5); and another copy of Plaintiff's 3/22/99 Aff't (Exh. A-6).

[5]Attached are the following thirty-eight exhibits: excerpts from the City of New Haven Charter (Exh. A); duplicate copies of Executive Order, dated March 8, 1983 (Exhs. B-1 & L); duplicate copies of General Order #70, dated May 27, 1983 (Exhs. B-2 & L); duplicate copies of memorandum, dated November 25, 1997 (Exhs. B-3 & L); duplicate copies of posting (Exhs. B-4 & L); excerpts from union agreement, July 1, 1998-June 30, 2002 (Exh. C); another copy of Plaintiff's 12/7/98 Memorandum (Exh. D-1); copy of memorandum from Captain Seward to Chief Daniels, dated December  9, 1998 ["Seward's 12/9/98 Memorandum"](Exh. D-2); affidavit of

opposition[6] (Dkt. #81) and thirteen days later, defendant City of New Haven filed its reply

brief.   (Dkt. #82).

For the reasons stated below, defendant Broadnax's Motion for Summary Judgment

(Dkt. #70) and defendant City of New Haven's Motion for Summary Judgment (Dkt. #72) are

<u>granted</u>.

_____

Richard Bayer, dated November 17, 2003 ["Bayer Aff't"](Exh. E); copy of memorandum, dated December 21, 1998 ["Bayer Investigation Report"] and copy of photograph (Exh. F-1); copy of memorandum, dated January 20, 1999 ["1/20/99 Supplemental Report"] (Exh. F-2); copy of correspondence, dated January 13, 1999 ["Broadnax Notification"] (Exh. G); copy of correspondence, dated January 28, 1999 ["Bd. of Fire Comms. Inquiry"] (Exh. H); copy of Troche's Notice of Reprimand, dated December 30, 1998 ["Troche Reprimand"] ( Exh. I); another copy Plaintiff's Grievance (Exh. J); copy of correspondence, dated June 22, 1999 ["Third Step Grievance Decision"] (Exh. J-2); another copy of Plaintiff's 3/22/99 Aff't (Exh. K); copy of Answer to CHRO Complaint, dated May 26, 1999 ["CHRO Answer"], another copy of 1/20/99 Supplemental Report and of Bayer Investigation Report, and copy of CHRO Employment Schedule A (Exh. L); copy of correspondence from CHRO to plaintiff, dated August 12, 1999 ["CHRO Decision"], August  30, 1999, October 7, 1999, & October 5, 2001 (Exhs. M to N–3); copy of CHRO Decision on Reconsideration, dated October 10, 2001 ["CHRO Recon. Decision"] (Exh. N–4); copy of Release of Jurisdiction, dated October 22, 2001 (Exh. N–5); copy of Civil Service Rules and Regulations - City of New Haven (Exh. O); copies of cover pages of court decisions regarding defendant Broadnax and notices of appeal, dated May 16 & December 5, 2000, April 18, 2001, February 27, 2002, July 25, August 5, & August 22, 2003 (Exhs. P-1 to P8, P-13 to P14); copy of Special Verdict Form in Broadnax litigation (Exh. P-9); copy of motion in Broadnax litigation, dated October 22, 2003 (Exh. P-10); copy of Arbitration Award in Broadnax grievance, dated November 19, 2003 (Exh. P-11); and copy of brief in Broadnax litigation, dated April 29, 2003 (Exh. P-12).

[6]Included in his brief in opposition is plaintiff's "Local Rule 9(c)2 Statement." <u>See</u> note 3 <u>supra</u>.

Attached to his brief in opposition are the following sixteen exhibits: (1) another copy of Plaintiff's 12/7/98 Memorandum (Exh. 1); another copy of the photograph (Exh. 2); another copy of Plaintiff's 3/22/99 Aff't (Exh. 3); another copy of Plaintiff's Undated Memorandum (Exh. 4); copy of Memorandum from Captain Seward to Chief Daniels, dated December 8, 1998 ["Seward's 12/8/98 Memorandum"] and copies of fax cover sheet and City of New Haven Sexual Harassment Policy Statement and Administrative Procedures (Exh. 5); another copy of Plaintiff's 12/8/98 Memorandum (Exh. 6); another copy of Plaintiff's 12/9/98 Letter and Plaintiff's Grievance (Exh. 7); another copy of Bayer Investigation Report and 1/20/99 Supplemental Report,  (Exh. 8); another copy of Seward's 12/9/98 Memorandum (Exh. 9); another copy of Troche Reprimand (Exh. 10); original of plaintiff's affidavit, dated December 8, 2003 and original affidavit of Abraham Colon, dated December 8, 2003 (Exh. 11); another copy of Plaintiff's 3/23/99 Letter and of Plaintiff's 4/30/99 Letter, and copy of correspondence, dated June 11, 1999 (Exh. 12); another copy of Plaintiff's Grievance and of Third Step Grievance Decision, and copy of correspondence to the CHRO, dated February 16, 2000 (Exh. 13); copy of news articles about Broadnax lawsuits, dated October 4, 2003, January 30 & 31, and February 26, 2002 (Exhs. 14 & 16); and copy of Judgment in another Broadnax lawsuit, dated October 7, 2003 (Exh. 15).

## I.  FACTUAL SUMMARY

The factual summary is based on statements from defendant Broadnax's Local Rule 56(a)1 Statement of Facts ["Defendant Broadnax's Statement"] and defendant City of New Haven's Local Rule 56(a)1 Statement of Facts ["Defendant City of New Haven's Statement"] and documents cited therein and consequently does not represent factual findings of the Court.[7]

---------------------------------

[7]Plaintiff failed to file a separate Statement of Material Facts in Dispute as required by Local Rule 56(a)2.  Local Rule 56(a)2 provides that the

> papers opposing a motion for summary judgment shall include a document entitled "Local Rule 56(a)2 Statement," which states in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied.  The Local Rule 56(a)2 Statement must also include in a separate section a list of each issue of material fact as to which it is contended there is a genuine issue to be tried.

On pages 7-13 of plaintiff's brief in opposition (Dkt. #81), Subsection B, plaintiff has included what he labels as his "Local Rule 9(c)2 Statement."  See notes 3 & 6 supra. Plaintiff's responses to Defendant Broadnax's and Defendant City of New Haven's Statements are not followed by any citations; however, multiple exhibits are attached.  Plaintiff's "Statement" does not confirm to the Local Rules:

> Each statement of material fact in a Local Rule 56(a) Statement by a movant or opponent must be followed by a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial.  The affidavits, deposition testimony, responses to discovery requests, or other documents containing such evidence shall be filed and served with the Local Rule 56(a) Statement in conformity with Fed. R. Civ. P. 56(e).

LOCAL R. CIV. P. 56(a)3.  Thus, plaintiff has failed to file a proper counter statement.  However, the Court will nonetheless cite the Plaintiff's Statement only to the extent that plaintiff affirmatively agrees with any statements made by either defendant.

If a non-moving party fails to file a counter statement, the facts in the moving party's Statement are deemed admitted. Booze v. Shawmut Bank, Conn., 62 F. Supp. 2d 593, 595 (D. Conn. 1999); Versace v. Versace, 2003 WL 22023946, at *1 (S.D.N.Y. Aug. 27, 2003).  However, there must be support in the record for the unopposed Rule 56(a) statements before such statements may be accepted as true.  See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003)("[U]nsupported assertions must . . . be disregarded and the record independently reviewed.")(citation omitted).  Therefore the factual summary in this case will be drawn from Defendant Broadnax and Defendant City of New Haven's Local Rule 56(a)1 Statements, Plaintiff's Statement to the extent he affirmatively agrees with either defendant, and both defendants' and plaintiff's accompanying affidavits, depositions and voluminous exhibits.  See notes 2, 4-6 supra.

In December 1998, plaintiff, a Caucasian male, was employed as an Assistant Drillmaster at the New Haven Department of Fire Services. (Defendant Broadnax's Statement ¶¶ 1 & 7; Defendant City of New Haven's Statement ¶ 3; Plaintiff's Statement at 7 & 9; 12/8/98 Memorandum; Plaintiff's 3/22/99 Aff't ¶ 1). During the same time period, defendant Broadnax, an African American female, was employed as Drillmaster, plaintiff's immediate supervisor, at the New Haven Department of Fire Services. (Defendant Broadnax's Statement ¶ 2; Defendant City of New Haven's Statement ¶ 3; Plaintiff's Statement at 7 & 9; Plaintiff's Responses, at 2; Plaintiff's 3/22/99 Aff't, ¶ 7). Since 1983, and continuing to the present, the City of New Haven and its Fire Service have had policies prohibiting discrimination and harassment based on gender or sex. (Defendant City of New Haven's Statement ¶ 4; Plaintiff's Statement at 10; Dkt. #80, Exhs. B to B-4 & C).

On December 7, 1998, plaintiff was exposed to a photograph of a naked, obese Caucasian woman by Firefighter Freeman Troche, while in the presence of defendant Broadnax. (Defendant Broadnax's Statement ¶ 3; Defendant City of New Haven's Statement ¶ 5; Plaintiff's 12/7/98 Memorandum; Plaintiff's 3/22/99 Aff't, ¶ 8(b)). As Firefighter Troche displayed this photograph, he said to plaintiff words to the effect: "Remember when you looked like this." (Defendant City of New Haven's Statement ¶ 5; Plaintiff's 12/7/98 Memorandum; Plaintiff's 3/22/99 Aff't, ¶ 8(b); Bayer Investigation Report). As a result of this act by Firefighter Troche, plaintiff submitted a written complaint, dated December 7, 1998, to the Director of Training, Captain William Seward, alleging that he had been subjected to "humiliation of a sexual nature by a peer." (Defendant City of New Haven's Statement ¶ 5; Plaintiff's 12/7/98 Memorandum).

Richard Bayer, Chief Investigator in the Office of Corporation Counsel for the City of New Haven, investigated the incident and submitted the results in a report, dated

December 21, 1998, to Fire Chief Dennis W. Daniels ["Chief Daniels"]. (Defendant City of New Haven Statement's ¶ 7; Bayer Aff't, ¶¶ 1-4; Bayer Investigation Report). Bayer also submitted a Supplemental Report on January 20, 1999. (Defendant City of New Haven's Statement ¶ 8; Bayer Aff't, ¶ 4; 1/20/99 Supplemental Report). Bayer's report verifies that the December 7, 1999 incident occurred as plaintiff described; however, Bayer concluded that he "could find nothing to incriminate [defendant] Broadnax in this matter" though Lieutenant Charles Hewitt, who witnessed the incident, heard defendant Broadnax laugh.[8] (Defendant City of New Haven's Statement ¶ 8; Bayer Investigation Report; 1/20/99 Supplemental Report; Seward's 12/9/98 Memorandum).

Thereafter, on January 13, 1999, defendant Broadnax was notified by Chief Daniels that the "allegation of sexual harassment filed against [her] proved to be unfounded . . . after an investigation was conducted by the Chief Investigator of the Office of Corporation Counsel of the City of New Haven" and that she was hereby "reassigned to the Training Academy as Drillmaster[,] effective December 24, 1998." (Defendant City of New Haven's Statement ¶ 9; Broadnax Notification). However, as a result of the investigation, Chief Daniels issued a Notice of Reprimand to Freeman Troche, which was to remain in his personnel file for at least one year. (Defendant City of New Haven Statement's ¶ 12; Plaintiff's Statement at 11-12; Troche Reprimand).

Plaintiff filed a union grievance pursuant to the applicable collective bargaining agreement which prohibits discrimination based on sex, and the grievance was investigated and responded to by the Director of Labor Relations. (Defendant City of New Haven's

---

[8]On or about January 28, 1999, the then Corporate Counsel responded to an inquiry from a Member of the Board of Fire Commissioners about the incident, complaint and investigation, in which Counsel concluded that the Lieutenant Hewitt's testimony articulated in the Supplemental Report was consistent with the findings in Bayer's initial Investigatory Report. (Defendant City of New Haven's Statement ¶ 10; Plaintiff's Statement at 11; Bd. of Fire Comms. Inquiry).

Statement ¶ 13; Plaintiff's Statement at 12; Plaintiff's Grievance; Third Step Grievance Decision).  Plaintiff also filed a complaint of sexual discrimination with the Connecticut Commission on Human Rights and Opportunities ["CHRO"], as to which defendant City of New Haven responded.  (Defendant City of New Haven's Statement ¶¶ 14-15; Plaintiff's Statement at 12; Plaintiff's 3/22/99 Aff't; CHRO Answer).  On August 12, 1999, CHRO issued its Notice of Final Agency Action, finding that "[i]t does not appear that you were subjected to treatment which rises to the level of sexual harassment or that [defendant] Broadnax sexually harassed you.  It does appear that [defendant City of New Haven] did investigate after you made a formal complaint." (Defendant City of New Haven's Statement ¶ 16; CHRO Decision).  Plaintiff moved for reconsideration of the CHRO Decision, which was denied.  (Defendant City of New Haven's Statement ¶ 17; CHRO Recon. Decision).

## II.  DISCUSSION

The standard for summary judgment is well-established.  The moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The standard for granting summary judgment "mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)(citation omitted).  Upon motion, after adequate time for discovery, Rule 56(c) mandates the entry of summary judgment against a party

> who fails to make a showing sufficient to establish the existence of an
> element essential to that party's case, and on which that party will bear the
> burden of proof at trial.  In such a situation, there can be 'no genuine issue
> as to any material fact,' since a complete failure of proof concerning an
> essential element of the nonmoving   party's case necessarily renders all other
> facts immaterial.  The moving party is 'entitled to judgment as a matter of law'
> because the nonmoving party has failed to make a sufficient showing on an
> essential element of her case with respect to which she has the burden of

proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

This showing may be made by "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." FED. R. CIV. P. 56(c).  However, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict.  The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (citation omitted).  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson, 477 U.S. at 248 (citation omitted).  A "material fact" is a disputed fact the resolution of which will affect the "outcome of the suit under the governing law."  Id.  A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The party moving for summary judgment must "carry its burden of showing the absence of any genuine issue of fact."  Adickes v. S.H. Kress & Co., 398 U.S. 144, 153 (1970).  "On summary judgment the inferences to be drawn from the underlying facts contained in the [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion.'"  Adickes, 398 U.S. at 158-59, quoting United States v.

Diebold, Inc., 369 U.S. 654, 655 (1962).

### A. JUDGE ARTERTON'S MAY 9th RULING

At oral argument before Judge Arterton on May 9, 2003, counsel for plaintiff clarified that this is a case of "hostile work environment on the basis of sex and race," and plaintiff further is claiming retaliation for defendant Broadnax's filing of a charge of absent without leave the day after plaintiff filed his complaint and for the posting of a "lewd picture" in "other New Haven firehouses along with [plaintiff's] complaint."[9]  (Dkt. #64, at 3-5).  Additionally, plaintiff clarified that the display of the photograph and the utterance of the accompanying language, the posting of the photograph along with plaintiff's complaint, and the filing of a charge of absent without leave, created a hostile work environment and constituted sexual harassment.  (Id. at 7).   Plaintiff also clarified that his § 1983 claim is really a Title VII claim against defendant City of New Haven, claiming a deprivation of plaintiff's equal protection and due process rights.  (Id. at 20-21).[10]

After such clarification, Judge Arterton orally ruled that

> One element of a hostile work environment[,] sex harassment claim is harassment that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  The incidents must be more than episodic, they must be sufficiently continuous

---

[9]Defendant Broadnax originally moved for summary judgment asserting that the single incident of plaintiff being shown the picture does not, as a matter of law, constitute a hostile work environment; the actions are insufficient to constitute intentional infliction of emotional distress; and plaintiff can not show any protected speech.  (Dkt. #47).  Plaintiff responded that he voluntarily transferred to a lesser position to avoid further embarrassment and humiliation, which he considers a constructive demotion, because of his hostile work environment; there are subsequent incidents involving the photograph; and he needs further discovery on the First Amendment retaliation claim, namely whether he participated in protected activity or sustained an adverse employment action.  (Dkt. #54; see Dkt. #64).

[10]Plaintiff asserts that even if plaintiff's speech was not "protected speech," his speech constitutes a "protected activity" under Title VII which includes an "employee's opposition to conduct that he reasonably believes violates the statute, regardless of whether such conduct actually violated the statute."  (Dkt. #81, at 21)(multiple citations & emphasis omitted).  See note 14 infra.

and concerted in order to be deemed pervasive. . . . "

While the Second Circuit has held that a single act can meet the threshold, the single act must "work a transformation of the plaintiff's workplace." Alfano v. Costello, 294 F.3d 365 at 374 (2d Cir. 2002). . . .

The complaint in this case is [plaintiff's] exposure to the photograph of an obese naked white women in a sexually suggestive pose, even if, as [plaintiff] asserts, the same photograph was subsequently posted in other firehouses. . . .

. . . No reasonable jury could conclude that this incident was sufficiently severe or pervasive as to by itself change the terms and conditions of [plaintiff's] employment.

However, to the extent plaintiff claims that they posted this photograph with his complaint in various firehouses, that may be demonstrative of retaliation for filing his complaint, which can be actionable even if the conduct was, in fact, not sexual or racial harassment, but was considered to be so by the complainant at the time he complained in good faith.

(Dkt. #64, at 13-16). Judge Arterton concluded that defendant Broadnax was "entitled to judgment in her favor on [plaintiff's] claim of having been sexually harassed and there being a sexually or racially hostile environment. The remainder of the claims of the motion is denied and the plaintiff's claim of retaliation as to [defendant] Broadnax will proceed." (Id. at 16). As Judge Arterton summarized, what remains before the Court is: (1) plaintiff's retaliation claim brought under § 1983, implicating a matter of public concern against defendant City of New Haven -- a claim of retaliation under the First Amendment and the Fourteenth Amendment against defendant City of New Haven for its response to plaintiff's complaint (id. at 22-23, 27-28); and (2) plaintiff's claim of retaliation under the First Amendment against defendant Broadnax for plaintiff's filing of his complaint. (Id. at 22-23). Judge Arterton ordered plaintiff to file another amended complaint which gave rise to the pending Motion for Summary Judgment. (Id. at 33-34).

### B. PENDING MOTION FOR SUMMARY JUDGMENT

In his Second Amended Complaint, plaintiff generally asserts violations of 42 U.S.C. § 1983 by defendant New Haven (Count One)[11] and by defendant Broadnax (Count Two).[12] (Dkt. #67).  42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  Schwapp v. Town of Avon, 1996 U.S. Dist. LEXIS 17768, at *25-26 (D. Conn. Sept. 20, 1996)(internal quotations & multiple citations omitted), rev'd on other grounds, 118 F.3d 106 (2d Cir. 1997).  As previously discussed, plaintiff has failed to state a claim under Title VII; thus, plaintiff's Section 1983 claim is only cognizable if he

---

[11]Plaintiff alleges, inter alia, that defendant City of New Haven was "deliberately indifferent to [plaintiff's] complaints because it feared any action it took may have adverse effects in [defendant] Broadnax's pending lawsuits against the City of New Haven"; defendant City of New Haven "failed to conduct meaningful investigations"; defendant City of New Haven "maintained a scheme of retaliatory practices and political patronage"; "plaintiff's complaints were a substantial and motivating factor in . . . defendant's acts or failure to act in order to chill . . . plaintiff's speech and punish him for exercising his free speech rights"; plaintiff "decided to resign his position" as a result of duress and coercion by defendant, which constituted a constructive demotion; plaintiff's complaints were protected by the First Amendment; plaintiff was "deprived of wages and the liberty interest in his job"; defendant's conduct "contravened the doctrine of substantive due process"; and defendant violated the Equal Protection Clause of the Fourteenth Amendment. (Dkt. #67, ¶¶ 12-22).

[12]Plaintiff alleges, inter alia, that defendant Broadnax "retaliat[ed] and harass[ed]" plaintiff; defendant Broadnax "unlawfully deprived [plaintiff] of wages and the liberty interest in his job"; and defendant Broadnax "retaliated against [plaintiff] as a result of his speech on matters of public concern." (Id. ¶¶ 24-28).

demonstrates a violation of a clearly recognizable federal right independent of Title VII. See Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 142-43 (2d Cir. 1993), cert. denied, 510 U.S. 1164 (1994).

Broadly construing plaintiff's complaint, defendant Broadnax now seeks summary judgment on grounds that to the extent plaintiff is asserting a First Amendment violation, no matter of legitimate public concern is alleged in this case (Dkt. # 71, at 7-12) and plaintiff did not suffer a substantial adverse employment action. (Id. at 12-13). Moreover, defendant Broadnax contends that if the First Amendment claim is dismissed, the Court should not retain pendent jurisdiction over the state law claims. (Id. at 13-14).

Defendant City of New Haven seeks summary judgment on the following four grounds: (1) in light of Judge Arterton's finding that there is insufficient evidence of sexual harassment or a sexually or racially "hostile work environment," there is no violation of substantive rights distinct from Title VII, so that plaintiff's due process and equal protection claims cannot survive (Dkt. #72, at 6-7); (2) plaintiff's comments related to his personal employment relationship with defendant Broadnax and did not constitute comments on matters of "public concern" (id. at 8); (3) plaintiff has offered no evidence that defendant City of New Haven maintained a scheme of retaliatory practices and political patronage (id.); and (4) plaintiff's claims of "constructive demotion" and "failure to investigate or take other corrective action" are really claims that defendant City of New Haven failed to take corrective action in response to a "hostile work environment," which claim is no longer part of this case. (Id. at 9-10).

### 1. DEFENDANT BROADNAX: FIRST AMENDMENT RETALIATION CLAIM

According to plaintiff, defendant Broadnax "retaliated against . . . plaintiff as a result of his speech on matters of public concern in violation of the First Amendment to the United

States Constitution . . . [and] Article 1, [S]ection 4 of the Connecticut Constitution and Connecticut General Statutes § 31-51q." (Dkt. #67, ¶¶ 27-28).  Plaintiff alleges that "[a] substantial and motivating factor in . . . defendant Broadnax's retaliatory conduct towards . . . plaintiff was [plaintiff's] complaint about an incident concerning improper sexual overtones in the workplace, which was a matter of substantial public concern to the public in New Haven." (Id. ¶ 24).  As stated above, defendant Broadnax seeks summary judgment on grounds that no matter of legitimate public concern is alleged in this case (Dkt. # 71, at 7-12), and plaintiff did not suffer a substantial adverse employment action. (Id. at 12-13).

It is "well established" that a public employer cannot retaliate against an employee for the exercise of his First Amendment right to free speech.  Ezekwo v. NYC Health & Hosps. Corp., 940 F.2d 775, 780  (2d Cir.)(citation omitted), cert. denied, 502 U.S. 1013 (1991).  To establish a First Amendment retaliation claim under § 1983, the plaintiff must demonstrate by a preponderance of the evidence that: (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination such that it was a motivating factor in bringing about the determination.  Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-87 (1977)(citations omitted).  Once the plaintiff establishes the existence of these elements, the defendants have the opportunity to show by a preponderance of the evidence that they would have taken the same adverse employment action "even in the absence of the protected conduct."  Id. at 287.

To enjoy constitutional protections, speech must be of a matter of public concern. Connick v. Meyers, 461 U.S. 138, 146 (1983).  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  Rankin v. McPherson, 483 U.S. 378, 384-85

(quoting Connick, 461 U.S. at 147-48), reh. denied, 483 U.S. 1056 (1987).  If the speech is found to touch on a matter of public concern, the court must balance the interests of the employee with the interests of the employer in promoting efficiency in the workplace. Pickering v. Board of Education, 391 U.S. 563, 568 (1968).   However, if plaintiff spoke out

> not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction the employee's behavior.

Connick,  461 U.S. at 147 (citation omitted.)

Plaintiff contends that "[c]learly, this dispute arose in the context of public employment" and speech relating to "discrimination, preferential treatment, malfeasance, a violation of the public's trust, or a government official's abuse of authority are inherently matters of public concern." (Dkt. #81, at 17)(citations omitted).  Additionally, according to plaintiff, his speech was based, in part, "on the welfare of the recruit training class, the Fire Training Academy and the Fire Department."  (Dkt. #81, at 19).[13]

Plaintiff's complaint on December 7, 1998 did relate to alleged harassment and discrimination on the part of defendant Broadnax. (Dkts. ##70, 77, 80 & 81, Plaintiff's 12/7/98 Memorandum).  Plaintiff's complaint focused on the incident which was directed exclusively at him and the effect such incident had on him.  (Id.). Moreover, his  December 7, 1998 complaint and those that followed were personal in nature and generally related to his relationship with his supervisor, defendant Broadnax.  Additionally, although plaintiff's

---

[13]Plaintiff also asserts that plaintiff's speech raised an issue of public concern that embarrassed defendants and "Harrison Broadnax, the City of New Haven's Affirmative Action Officer and father of defendant [Broadnax] was unable or unwilling to cooperate with inquiries by Captain Seward for procedures for handling [plaintiff's] complaint."  (Dkt. #81, at 19).  The Seward Memorandum which plaintiff offers in support does not substantiate this contention.  (Dkt. #81, Seward's 12/8/98 Memorandum).

letter of December 9, 1998 details additional complaints about defendant Broadnax, all relate to incidents that allegedly occurred in the month preceding the December 7th incident and each reflects the unharmonious working relationship between plaintiff and defendant Broadnax. (Dkts. ##70 & 81, Plaintiff's 12/9/98 Letter). However, the "public importance of speech is not diminished simply because the underlying subject matter is of significance to the speaker." Mazurek v. Wolcott Board of Educ., 849 F. Supp. 154, 157 (D. Conn. 1994)(citations omitted). All of plaintiff's complaints include his general concerns relating to the actions of his supervisor, defendant Broadnax, who is also a representative of defendant City of New Haven. Specifically, in his December 9, 1999 letter, plaintiff states that "the fact that a supervisor and representative of the City of New Haven condoned such a barbaric attitude, such a display of insensitivity, racism and sexism is a disgrace to this [C]ity and an insult to the citizens of it." (Dkts. ##70 & 81, Plaintiff's 12/9/98 Letter). Despite the content of plaintiff's complaints, however, there is no evidence that the issues affected others in the Department, that his complaints "implicated system-wide discrimination," or that his "suit [seeks] relief against pervasive or systemic misconduct by a public agency of public officials or that [his] suit is part of an overall effort . . . to correct allegedly unlawful practices or bring them to public attention." Saulpaugh, 4 F.3d at 143 (citations & internal citations omitted).[14]

_____

[14]Plaintiff asserts that even if plaintiff's speech was not "protected speech," his speech constitutes a "protected activity" under Title VII which includes an "employee's opposition to conduct that he reasonably believes violates the statute, regardless of whether such conduct actually violates the statute." (Dkt. #81, at 21)(multiple citations & emphasis omitted). Plaintiff's Title VII claims have been dismissed, so that further arguments in support of such claims are moot.

Because plaintiff's speech was not a matter of public concern, the Court need not determine whether plaintiff suffered an adverse employment action and whether a causal connection exists between his speech and the adverse employment determination such that it was a motivating factor in bringing about the determination.

2. DEFENDANT CITY OF NEW HAVEN

a. FIRST AMENDMENT RETALIATION

For the reasons stated in Section II.B.1 supra, plaintiff has failed to state a claim of First Amendment retaliation against defendant City of New Haven.

b. FOURTEENTH AMENDMENT RETALIATION IN VIOLATION OF EQUAL PROTECTION CLAUSE

Defendant City of New Haven argues that "[a] claim of denial of due process or equal protection made pursuant to Section 1983 cannot be used to circumvent Title VII's limitations, and may be utilized as a jurisdictional mechanism in the employment context only if there are alleged violations of substantive rights distinct from Title VII" and "there are no factual allegations independent of those disposed of by Judge Arterton's [May 9th Ruling]." (Dkt. #72, at 6-7)(multiple citations omitted).

Plaintiff responds that defendant City of New Haven's failure to properly respond to plaintiff's complaints and petitions for redress of grievance and threats of retaliatory transfer denied plaintiff his due process and equal protection rights. (Dkt. #81, at 22). Moreover, according to plaintiff, defendant City of New Haven's "'hands off of Sheryl Broadnax' policy treated her differently than similarly situated employees accused of sexual harassment and retaliation and, by force of implication, treated [plaintiff] differently than similarly situated accusers." (Dkt. #81, at 22).

"[A] plaintiff can assert a claim under Section 1983 if some law other than Title VII is the source of the right alleged to have been denied." Saulpaugh, 4 F.3d at 143 (citation omitted). Like the plaintiff in Saulpaugh, 4 F.3d at 142-43, plaintiff asserts that his claims under Title VII and under Section 1983 are "separate and distinct," as his claims under Section 1983 are grounded on defendants' violations of plaintiff's rights under the First Amendment, the Equal Protection Clause, and the Due Process Clause of the Fourteenth

-16-

Amendment. (See generally Dkts. ##81 & 67).  As discussed above, plaintiff has not asserted a claim under the First Amendment nor a hostile work environment claim brought pursuant to the Equal Protection Clause; thus, in order for plaintiff to survive summary judgment, he must successfully assert a "cognizable violation[ ]" of the Due Process Clause and/or a cognizable violation of the Equal Protection Clause independent of his hostile work environment claims and his Title VII sexual harassment claim.  Saulpaugh, 4 F.3d at 143.

Although plaintiff does not state his legal basis for the allegations recited above and although the Court is "not required to scour the party's various submission to piece together appropriate arguments [as a] court need not make the lawyer's case," Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir. 1995)(citation & internal quotations omitted), it appears that plaintiff is asserting an equal protection claim on grounds that plaintiff was treated differently from those similarly situated and there was "no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2002)["Olech"]. Plaintiff is also asserting a claim for the deprivation of procedural due process.

"[I]n order to establish a valid claim for deprivation of procedural due process under 42 U.S.C. § 1983, a plaintiff must show that a government entity deprived [him] of a right secured by law." Finley v. Giacobbe, 79 F.3d 1285, 1296 (2d Cir. 1996)(citing, inter alia, Gomez v. Toledo, 446 U.S. 635 (1980)).  Plaintiff is employed as an Assistant Drillmaster at the New Haven Fire Training Academy and has worked as a "permanent employee" pursuant to CONN. GEN. STAT. § 5-196(20), since June 17, 1998.[15]  (Dkts. ##70, 77, 80 & 81, Plaintiff's 3/22/99 Aff't, ¶¶ 1-2).  Accordingly, plaintiff has a protected property interest in his continued employment with defendant City of New Haven.  In his Second Amended

---

[15]A permanent employee is: "an employee holding a position in the classified service under a permanent appointment or an employee holding a position in unclassified service who has served in such a position for a period of more than six months."  CONN. GEN. STAT. § 5-196(20).

Complaint, plaintiff alleges that "[t]he acts or omissions of the agents, officer and/or employees of . . . defendant, City of New Haven, resulted in his constructive demotion from the position of Assistant Drillmaster at the Academy to a position with lesser pay and prestige in a local fire station." (Dkt. #67, ¶ 18). The day after the alleged incident, plaintiff requested an "alternate assignment pending the outcome of investigations" because he felt "threatened by [his] immediate supervisor"; however, plaintiff made clear that he is "in no way resigning or forfeiting [his] current position or civil service title of Assistant Drillmaster." (Dkts. ##70, 77 & 81, Plaintiff's 12/8/98 Memorandum). Because plaintiff voluntarily altered his position and did not alter or change his civil service placement, plaintiff was not deprived of a property interest in his employment as an Assistant Drillmaster. See Hardy v. Village of Piermont, 923 F. Supp. 604, 607-08 (S.D.N.Y. 1996)("Because . . . plaintiff was [not] terminated from employment, we hold as a matter of law that [the] plaintiff was not deprived of a property interest in [his] employment as a police officer. . . . "). Moreover, although plaintiff contends that he was constructively demoted, the facts alleged fail to substantiate such a charge.[16]

Plaintiff's claim of a violation of the Equal Protection Clause on grounds that plaintiff was treated differently from those similarly situated and there was "no rational basis for the difference in the treatment" must also fail. Olech, 528 U.S. at 564. Plaintiff contends that a member of the Fire Training Academy's class placed a photograph of a naked, African-American female in a book belonging to an instructor and that recruit was immediately disciplined with suspension and remedial training, thus causing plaintiff to "reasonably expect[ ] similar and prompt discipline for the persons he accused of similar conduct." (Dkt.

---

[16]Plaintiff also alleges a claim for deprivation of "wages and liberty interest in his job" against defendant Broadnax. (Dkt. #67, ¶ 26). For the reasons stated above, such claim against defendant Broadnax is also dismissed.

#81, at 23).  The individual plaintiff charged with displaying the photograph in this case was in fact disciplined for the December 7, 1998 incident.  (Dkts. ##80 & 81, Troche Reprimand).  Defendant Broadnax was not disciplined because, after a thorough investigation by Chief Investigator, Richard Bayer, including interviews of all involved individuals, Chief Investigator Bayer "could find nothing to incriminate [defendant] Broadnax in this matter."  (Dkts. ##80 & 81, Bayer Investigation Report; see also 1/20/99 Supplemental Report).

The incident at issue here occurred on December 7, 1998.  That same day, plaintiff filed a complaint with the Director of Training, Captain Seward.  (Dkts. ##70, 77, 80 & 81, Plaintiff's 12/7/98 Memorandum).  After being advised that a second complaint was necessary to obtain a formal investigation, plaintiff submitted an additional complaint on December 8, 1998, requesting an "alternate assignment" pending the outcome of the investigation and plaintiff filed a grievance. (Dkts. ##70, 77 & 81, Plaintiff's 12/8/98 Memorandum; Plaintiff's Grievance).  Thereafter, after a thorough investigation, Richard Bayer issued an investigation report on December 21, 1998, followed by a Supplemental Report on January 20, 1999. (Dkts. ##80 & 81, Bayer Investigation Report; 1/20/99 Supplemental Report). On January 13, 1999, defendant Broadnax was notified by Chief Daniels that the "allegation of sexual harassment filed against [her] proved to be unfounded . . . after an investigation was conducted by the Chief Investigator of the Office of Corporation Counsel for the City of New Haven."  (Dkt. #80, Broadnax Notification).

Additionally, plaintiff's complaints from February 8, 1999 through June 14, 1999 were also investigated as the City's Third Step Grievance Decision references the "thorough examination of the testimony presented at the June 15, 1999 3rd Step Hearing as well as information provided at prior hearings"; based on this information and the investigative report prepared by Corporation Counsel, the City of New Haven's Director of Labor Relations

concluded that plaintiff's Grievance was moot with respect to the public circulation of documents as neither the Chief nor the Office of Labor Relations circulated any documents, and denied with respect to assurances that the alleged harassment would cease and there would be no further repercussions, as the Union recognized the training division staff's difficulty in working as a harmonious unit and directed them to work in a professional atmosphere consistent with Standard Operating Procedures. (Dkts. ##80 & 81, Third Step Grievance Decision).    Accordingly, in light of the foregoing, plaintiff's assertion that defendant City of New Haven failed to investigate or take corrective action  in response to plaintiff's claim for sexual harassment and hostile work environment and that plaintiff and the parties involved were treated differently without any rational basis, is plainly unsupported by the evidence before the Court.    Moreover, as defendant City of New Haven correctly notes, plaintiff's general allegations of a "history of retaliatory practices" by defendant City of New Haven and a list of lawsuits in which Broadnax has been involved, without more, does not suffice to support plaintiff's claim that defendant City of New Haven maintained a scheme of retaliatory practices and political patronage. (Dkt. #81, at 25-26).

## 3. PENDENT JURISDICTION

In light of the dismissal of the federal question claims, the pendent state law claims must also be dismissed.  Spear v. Town of West Hartford, 771 F. Supp. 521, 529-30 (D. Conn. 1991)(citations omitted), aff'd on other grounds, 954 F.2d 63 (2d Cir.), cert denied, 506 U.S. 819 (1992). "[A]bsent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendent state law claims on the basis of a federal question claim" that has already been disposed. Id. at 530 (citations omitted).

## III. CONCLUSION

Accordingly, for the reasons stated above, defendant Broadnax's Motion for

Summary Judgment (Dkt. #70) and defendant City of New Haven's Motion for Summary

Judgment (Dkt. #72) are <u>granted</u>.

Dated at New Haven, Connecticut, this 2nd day of March, 2004.

_____/s/_____
Joan Glazer Margolis
U.S. Magistrate Judge